1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2
  - - - - - - - - - - - - - X
3                          :

4

5  IN RE:  JOHN DOE,
                              CV 98-1101
6

7                          :
                              United States Courthouse
8
                              Brooklyn, New York,
9

10             :
                              July 20, 2010
11  - - - - - - - - - - - - - X   10:30 o'clock a.m.

12              TRANSCRIPT OF ORAL ARGUMENT
           BEFORE THE HONORABLE I. LEO GLASSER
13            UNITED STATES DISTRICT JUDGE

14  APPEARANCES:

15  For the Plaintiff:     MORGAN LEWIS & BOCKIUS, LLP
                           101 Park Avenue
16                         New York, N. Y.
                           BY:  KELLY MOORE, ESQ.
17                         LESLIE R. CALDWELL, ESQ.
                           DAVID A. SNIDER, ESQ.
18                         BRIAN A. HERMAN, ESQ.

19  For the Defendant:     WILSON ELSER MOSKOWITZ EDELMAN
                           & DICKER, LLP
20                         150 East 42nd Street
                           New York, N. Y. 10017
21                         BY:  RICHARD LERNER, ESQ.
                           LAUREN J. ROCKLIN, ESQ.
22
    Court Reporter:        Henry R. Shapiro
23                         225 Cadman Plaza East
                           Brooklyn, New York
24                         718-613-2509

25  Proceedings recorded by mechanical stenography, transcript
    produced by computer.

1

2          THE CLERK:  Criminal cause for oral arguments, '98

3    CR 1101, United States versus John Doe.

4          State your names for the record

5          MS. MOORE:  Kelly Moore, Leslie Caldwell, Brian

6    Herman and David Snider for John Doe

7          MS. LERNER:  Richard Lerner of Wilson, Elser,

8    Moskowitz, Edelman & Dicker for respondent Frederick M.

9    Oberlander

10          MS. MOORE:  Your Honor, with respect to the relief

11    we seek, we rely on our brief, the arguments contained

12    therein and the authority contained therein.

13          Specifically Judge Jones' decision in the Visa case

14    and Judge Weinstein's decision in the Zyprexa case.

15          If anything, the facts of this case are more

16    compelling than those cases.  Visa and Zyprexa involved

17    sealed documents in civil litigation, which involved possible

18    commercial or economic harm to a business entity.

19          This case, as the Court is aware, involves potential

20    physical harm or death to an individual. With respect to the

21    First Amendment arguments, at the last court appearance the

22    Court did not ask us to specifically address that in our

23    briefs. We would like the opportunity to supplement our brief

24    with more detailed First Amendment analysis if that is okay

25    with the Court.

1      In the meantime, I would just note that the first

2  amendment is not absolute.  The facts of this case in no way

3  support the conduct of the respondent and the respondent's

4  First Amendment protection.  The respondents are not the

5  media, they are not a news gathering organization seeking to

6  write articles and publish them

7      Mr. Oberlander is an attorney.  As such, he has

8  additional ethical obligations to not disseminate or use

9  information that is secret, private and confidential, that

10  comes into his possession.

11      Moreover, in this case, the documents at issue were

12  clearly stolen and Mr. Oberlander, who represented the thief,

13  knew that they were stolen.

14      As the agent of a thief, receiving those stolen

15  documents, he doesn't deserve any greater protection-- First

16  Amendment protection-- than the thief himself would.

17      Additionally, the respondent knew that some of the

18  documents were sealed, as is clearly evident from paragraph

19  95 of the complaint in the Southern District.

20      As an attorney, once again, Mr. Oberlander knew what

21  that meant. He knew that documents don't seal themselves,

22  they are sealed only pursuant to court order.  And there are

23  also unsealed only pursuant to court order.

24      He was also aware of the Southern District

25  electronic filing rules, which compelled him to exercise

caution and care with respect to disseminating information about cooperators.  That rule applies to all cooperators, even those who testify publicly.  In this case the cooperation and the cooperation agreement were sealed.  Mr. Oberlander certainly should have exercised greater care.

The intended use of it in this case doesn't support compelling First Amendment interest. I don't know if the Court had the opportunity to review the Southern District Civil RICO complaint. But the information about my client's criminal case in no way supports any claims contained in that case, and it's clearly being used to harass, embarrass, intimidate and coerce my client.

Finally, as I mentioned before, this case unlike any of the cases cited by the respondents involving potential danger to human life.  Under the facts of this case the First Amendment simply possess no bar to the imposition of the relief we're seeking.

With respect to Mr. Oberlander's declaration filed last Friday, I would note that the respondents throughout this proceeding have engaged in a number of dubious litigation tactics, that are arranged in an intentional misinterpretation of the Court's order, without seeking clarification along the lines of claiming that they didn't know.  He contacted Mr. Bernstein for an affidavit that said they didn't know the lawyers could review the documents in

1    question in connection with representing the clients.

2           And a previous meritless allegation of misconduct

3    against me.  It was withdrawn, but nevertheless made and it

4    was intended clearly to get me to do something that would

5    have been unethical, to put my own interests ahead of my

6    client's by accepting a settlement that wouldn't have been

7    favorable to my client, just to get the unpleasant

8    allegations against myself withdrawn.

9           The declaration of Mr. Oberlander, in which he

10   accuses this Court of unconstitutional conduct and makes

11   application for recusal, is clearly in the same vain of that

12   litigation at that particular time.  It is clearly intended

13   to get the Court to do one of two things:  To either recuse

14   itself on the basis of a completely meritless application or

15   in the alternatively to get the Court to pull its punches, to

16   bend over backwards, to demonstrate a lack of bias, to issue

17   a ruling that would be favorable to the respondents than if

18   they had not made such a meritless unsupported application.

19          Those litigation tactics should be seen for what

20   they are and respondents and litigants engaging in them

21   should not be rewarded.

22          I thought long and hard about responding to some of

23   the other allegations and arguments contained in this

24   Oberlander declaration, the allegation that this Court has no

25   decency, that somehow it is beyond the authority of a federal

1   judge, upon application of United States Attorney's office,

2   to seal documents or files when doing so is in the interest

3   of protecting human life or national security, or that

4   somehow has a greater First Amendment right to put a man's

5   life in danger by publishing stolen and sealed confidential

6   documents then if he walked into a crowded theatre and

7   shouted fire.

8           In rereading Mr. Oberlander's declaration, however,

9   I was reminded of a comment that a former colleague of mine

10  used to make from time to time, which is that there really is

11  no percentage in arguing with crazy people, and so upon the

12  advise of another wise man I once got, I think, I will let

13  discretion be the greater part of valor and not dignify that

14  declaration or the rants contained therein with a response.

15          If the Court has no additional questions for us, we

16  will rest on our papers, but we would like to supplement them

17  with an additional First amendment analysis.

18          THE COURT:  I will come back to you.

19          Let me hear from Mr. Lerner.

20          MS. LERNER:  Your Honor has now had an opportunity

21  to read the case law --

22          THE COURT:  Before we get to that, I am not

23  altogether clear as to what Mr. Oberlander's notice of appeal

24  is all about. I do not quite understand what is it.

25          MS. LERNER:  It's a protective notice of appeal.  He

1    reserve his right to argue.  There is yet to be a formal

2    permanent injunction or that a TRO -- there is possibly a gap

3    period where it could be argued that the TRO lapsed and

4    became a permanent injunction.  It's merely protective.

5             THE COURT:  What does that mean, a protective notice

6    of appeal?

7             MS. LERNER:  If the TRO could be deemed converted to

8    a permanent injunction, we will appeal from that.

9             THE COURT:  Is not that kind of premature?  Is there

10   anything that prevents him from filing a notice of appeal

11   when that event occurs?

12            MS. LERNER:  If a permanent injunction is issued we

13   shall file a further notice of appeal.

14            THE COURT:  What's the purpose of a protective

15   notice of appeal?  Is that to preserve some limitation

16   period?

17            MS. LERNER:  Frankly, your Honor, the case law --

18            THE COURT:  To be perfectly candid --

19            MS. LERNER:  Candidly the TRO itself is appealable

20   because it restrains Mr. Oberlander's free speech rights.

21            THE COURT:  Then he could file a notice of appeal

22   with respect to what he believes is an order, which is

23   properly appealable.

24            MS. LERNER:  Yes.

25            THE COURT:  I don't understand what a protective

1  notice of appeal is.  I'm frank to say, I have never

2  encountered it before.

3         It may be that my knowledge of this process is a

4  little wanting, but I do not understand what it is.

5         MS. LERNER:  First of all, on June 21st your Honor

6  stated that there was a permanent injunction vis-a-vis the

7  PSR and ordered it returned. That is appealable.  The notice

8  of appeal refers to that.

9         But since your Honor stated further evidence would

10 be taken after it was stated that it's our position it could

11 fairly be argued that the Court did not actually render a

12 final determination as to that document.  If it did --

13        THE COURT:  The reason I am asking, Mr. Lerner, is

14 that it is very clearly established law that it may be that a

15 filing of a notice of appeal deprives this Court of

16 jurisdiction with respect to continuing in a matter.

17        I do not know whether a notice of appeal, if filed,

18 would have that effect here with respect to injunctive

19 relief.  I think that is something that is questionable.

20        But, in any event, it was that issue which caused me

21 to wonder what is this document about, is it in some way

22 affecting my continuing exercise of jurisdiction in this

23 matter?

24        MS. LERNER:  As we stated in the notice of appeal

25 itself, we reserve all of our rights.

1          THE COURT:  Neither here nor there.

2          Go ahead.

3          MS. LERNER:  Your Honor has read the case law, I

4     presume, that was cited in our papers and would perhaps now

5     agree that the arguments that we have been making are not

6     specious, which is the word that your Honor used at the first

7     hearing.  Perhaps your Honor having now read Bartnicki will

8     agree that the analogy to a misdirected check is inapt.

9          In Bartnicki the Court stated quite clearly that

10    while the interceptor of the phone call maybe guilty of a

11    crime, it by know means follows from that that punishing

12    disclosures lawfully obtained and in the public interest by

13    one not involved in the initial illegality is an acceptable

14    means of serving those ends.

15         You cannot punish someone who merely receives

16    allegedly stolen information.  It would be quite remarkable

17    if the United States Supreme Court continued to hold speech

18    by a law-abiding possessor of information can be suppressed

19    in order to deter conduct of a non-law-abiding third-party,

20    thus if Mr. Bernstein broke the law, you cannot punish

21    Mr. Oberlander for that.

22         Mr. Oberlander has independent free speak rights.

23    Your Honor, sealing the court file, I submit, was

24    unconstitutional in this case, because there is no signed

25    court order.

1        Hartford says there must be a court order. If your

2    Honor did sign an order, there is nothing in the docket

3    sheet, as far as we can tell, to indicate that prior notice

4    appearing was given prior to the sealing of the court file.

5        We have not had an opportunity to see that docket

6    sheet, therefore, we cannot note whether this case was

7    properly sealed.  If notice was given --

8        THE COURT:  Excuse me.

9        If you went to the docket you would find that this

10   case is under seal, correct?

11       MS. LERNER:  Yes.

12       THE COURT:  And in order to obtain documents, which

13   are part and parcel of that case, you would have to make an

14   application to a court to unseal that file.  That is what the

15   sealing order says.

16       MS. LERNER:  And if the sealing order was not signed

17   by your Honor and the requisite findings were not made, is

18   unconstitutional, and we have been deprived of the

19   opportunity to see the docket sheet and the United States

20   Supreme Court in Amidao held we cannot presume what is in the

21   docket sheet if we can't see it.  If notice was given, we

22   can't know that because the Court has declined to allow us to

23   see the docket sheet as stated in Hartford. We cannot make

24   any presumption about what it says.  The appellate court can

25   make no presumption and we cannot.  Therefore, we cannot

1   presume the documents were properly sealed, your Honor.

2           There was nothing on the record that the sealing --

3           THE COURT:  Excuse me.  Just a minute.  Is there

4   some presumption that an order -- assuming that there is an

5   order and you do not know whether the order was or was not

6   signed -- what you do know by looking at the docket sheet is

7   that this is a sealed file, sealed by order of the court.

8           Is there some presumption that the order is invalid

9   because it was not signed, is that what I'm hearing?

10          MS. LERNER:  I'm referring to the Hartford case--.

11          THE COURT:  Mr. Lerner, I am asking you what I am

12  understanding, is there is a presumption of the invalidity of

13  an order?

14          MS. LERNER:  I think, your Honor stated on the

15  record that this is just matter of factly and indicated as I

16  recall it wasn't even signed, it's docket said is sealed.  If

17  there is a signed order, let us see it, because without a

18  signed order this proceeding is unconstitutional.

19          THE COURT:  It may be, Mr. Lerner, that you are

20  correct.  You are not answering the question.

21          MS. LERNER:  I don't have to make any presumption.

22  The United States Supreme Court has held the appellate courts

23  do not have to presume there is a signed order in the file

24  when there is--.

25          THE COURT:  If there is an order or docket entry

1  that says this has been sealed by order of the court, any

2  person is free to ignore that order and if by some chance,

3  some document in that file becomes available to any person,

4  that person is free to assume that the order has no efficacy?

5       MS. LERNER:  First of all, the docket here is

6  sealed, therefore, Mr. Oberlander could not see any order in

7  the file and the answer to your question is, yes, anybody may

8  do it, whatever he wants with that document.  It is free to

9  be distributed, if it's a public of interest, criminal

10  proceeding are per se of public interest.

11       THE COURT:  It's true that criminal proceeding are a

12  matter of public interest.

13       Doesn't follow that every document that has been

14  created in the course of a criminal proceeding is a matter of

15  public interest available to the public upon request.

16       That is particularly true, as I'm sure you know --

17  Mr. Lerner --

18       MS. LERNER:  I apologize for that interruption.

19       THE COURT:  I understand your passion in connection

20  with this matter.

21       Let us talk one at a time.  Okay.

22       I take it you read Charmer Industries.

23       MS. LERNER:  Yes.

24       THE COURT:  And I take it that having read Charmer

25  Industries, you would agree that a presentence report is a

HENRY SHAPIRO     OFFICIAL COURT REPORTER

document which has some very specific confidentiality

concerns.

MS. LERNER:  Your Honor, of course, I agree with

that.  But the premise, you have asked whether a document

could be used for any purpose -- if it's from a criminal

trial -- criminal proceeding even if it's sealed, the

question is was it stolen from the court file.  Was it stolen

or inappropriately unauthorized taken from the Court file as

in Charmer?

The answer is, the Court can order its return.  If

it's obtained from other means, your Honor, has no

jurisdiction to stop it. You can not issue a prior restraint

order.

If I may continue?

THE COURT:  Please.

MS. LERNER:  There is nothing in the record, that we

are aware of, because we cannot see the docket sheet or the

sealing order.  There is nothing on the order finding a more

fundamental interest in the First Amendment would be served

by sealing this court file.  There is nothing on the record

finding this was the least restrictive alternative.

Your Honor, granting -- now we turn to the TRO

itself, as the Court granted a TRO, which constitutes a prior

restraint on speech without conducting any inquiry as to

whether the respondent's First Amendment rights would be

infringed.

Now, your Honor, ordered -- the order itself signed by your Honor incorporates Ms. Moore's arguments and it says for the reasons stated, but that is constitutionally insufficient according to Amadao, you must make independent findings to support a prior restraint.

It must be the order itself. The TRO is a nullity. Failing to make the requisite findings in the order to show cause, in as much it constitutes a prior restraint, renders that prior restraint unconstitutional.

Your Honor failed to disclose to us on the docket sheet that we requested, we cannot know whether these documents are properly sealed --

THE COURT: Have you made application to the Court?

MS. LERNER: We requested it.

THE COURT: Have you made application to me to unseal whatever document you wanted? That docket sheet indicated there were, I think, four or five numbered dockets -- docket entries which were sealed which were unsealed and, I think, made available to you.

MS. LERNER: They were not. They were not. Having a dual docket sheet, your Honor stated at the second appearance that there were thirteen items on the docket sheet and six were sealed.

Your Honor, that is improper.

1      THE COURT:  What was improper?

2      MS. LERNER:  Your Honor, you sealed the entire

3 docket, yet you indicated there are thirteen items in the

4 docket, six of which are sealed, which means there are others

5 which are not sealed and yet the entire file has been sealed.

6      Your Honor, if the Court goes beyond the relief

7 sought in the order to show cause there will be a further

8 violation of Mr. Oberlander's constitutional rights for the

9 order to show cause did not seek permanent injunction, did

10 not seek a gag order, there is no basis for such leave.  He

11 cannot be gagged.

12      He returned, your honor, the original document that

13 he obtained from Mr. Bernstein.

14      Now, it may not be so clear in the record that he --

15 those were actually the originals obtained from Mr.

16 Bernstein.  If the Court would like a representation from Mr.

17 Oberlander to that effect, I would ask that he give it. But

18 those were the originals.

19      Your Honor can do nothing to stop the dissemination

20 of photocopies or electronic copies and the selective

21 enforcement or selective gag order directed only at Mr.

22 Oberlander and not, for example, Business Week, which as we

23 noted in our papers, has on its website an article which

24 states that it has a copy of the criminal -- the sealed

25 criminal complaint in this matter.

1        Your Honor, cannot selectively enforce a gag order

2   against Mr. Oberlander.  You cannot gag him and not gag

3   Business Week.

4        If you're going to take on a little guy you have to

5   take on a big guy. He'll not sit here and accept that,

6   neither will I.  We will fight this to the end.  A permanent

7   injunction cannot be granted.

8        Thank you, your Honor.

9        THE COURT:  Do you want to respond?

10       MS. MOORE:  Yes, your Honor.

11       I would note we'd like to sort of supplement our

12   brief with an additional Fifth Amendment analysis.

13       THE COURT:  Your application is granted to file a

14   supplemental brief.

15       There are a number of things, which are troublesome

16   in this case.  Going back to the original order to show

17   cause, that document was troublesome because it just said

18   that there was a significant breach in the processes of this

19   Court with respect to criminal dockets.

20       There was, as I think, indicated on that occasion, I

21   was very concerned about the integrity of the record of this

22   Court and that file.  It turns out that the first document on

23   that docket sheet is a notification by an assistant United

24   States attorney of the filing of an information, which

25   eventually evolved into an indictment.

1    There is no indication, that is docket number one,

2  which I obtained or had the clerk obtain from Kansas City or

3  wherever these files are shipped, because it was no longer

4  available in the courthouse.  There is not any indication in

5  that document or in a subsequent document that an application

6  was made or request was made in that document to seal that

7  file.  Nor have I been able to find any order signed by me,

8  which directed that this file be sealed.

9    Criminal cases such as the John Doe case and cases

10  in which by virtue of cooperation agreements and variety of

11  other matters either national interest, security interest, or

12  significant interest that one may have in his own safety,

13  which may be at risk.  Criminal files are sealed where that

14  is a significant consideration.

15    Let us assume for the moment that an order was

16  signed by me somewhere along the line, as it may have been,

17  directing that the file in this case be sealed.  That order

18  is directed to whom?  Who is bound by it?  That order, it

19  would appear, is directed to the clerk of the court who is

20  informed that this document or this file is sealed and is not

21  to be made available, except upon an order of the Court

22  unsealing it.

23    When the order to show cause was first brought into

24  this Court, it was a very serious concern as to whether

25  somebody in this courthouse unsealed that file or made

1    document which were sealed available to third parties.   That

2    was a very significant concern.

3         A hearing, which we held some weeks ago, makes it

4    plain and, I think, it is beyond dispute that these documents

5    were not removed by John Doe, he properly had them. The

6    cooperation agreement was a document which was in the

7    possession of his then attorney.  His attorney had a perfect

8    right, as did John Doe, to have a copy of that cooperation

9    agreement, had a perfect right to have whatever document

10   pertained to his case, which may have been part of the file.

11        Assume that John Doe decided to make the cooperation

12   agreement, the proffer agreement available to a third-party,

13   would an order have been violated?  The answer is clearly,

14   no.  John Doe had these documents, so the testimony has thus

15   far revealed, Mr. Bernstein has not submitted an affidavit

16   nor has he testified.  You cannot find him for the purpose of

17   serving the subpoena.

18        What we have on the record is the testimony by John

19   Doe that he did not give those documents to Mr. Bernstein,

20   which gives rise to the legitimate inference that Mr.

21   Bernstein may have stolen them, may have improperly obtained

22   those documents.

23        What order of the Court was violated by that event?

24   Those documents then came into the hands of Mr. Oberlander.

25   Mr. Oberlander knew that those documents were sealed

1   documents, contained very, very serious information and his

2   assertion or testimony that, well, it wasn't his words, it

3   was his client's words, is remarkable for it's disingenuous.

4   To say that I am not a criminal lawyer and I don't know what

5   it meant, I have a sealed document, is preposterous.

6   Particularly, since he had the electronic filing information

7   from the Southern District that said if it's a cooperation

8   agreement, be very, very careful before you use it.

9          Now, what happened, assuming that the documents were

10  in John Doe's cabinet or in his desk, as they had a perfect

11  right to be, they were his documents, and the documents were

12  then wrongfully taken by Mr. Bernstein.  Mr. Bernstein is a

13  converter, Mr. Bernstein has no title to those documents, no

14  legal right to those documents, to that tangible document

15  whether it would be a piece of paper, whether it be a gold

16  ring or whatever it is, it was a tangible item which was

17  converted, given the testimony that I have by Mr.

18  Bernstein --

19          MS. LERNER:  John Doe, I believe.  Bernstein did not

20  testify.

21          THE COURT:  I am saying based on the testimony.  Mr.

22  Bernstein then analogizing these events to the fundamental

23  principle of conversion, or larceny, if you will, past it

24  onto Mr. Oberlander.

25          Mr. Oberlander had no better right to those

HENRY SHAPIRO        OFFICIAL COURT REPORTER

documents than Mr. Bernstein had. If we were to describe this change of events in terms of property rights, title, Mr. Bernstein had no title and he had no title to give to Mr. Oberlander.

Mr. Oberlander even if he were an innocent purchaser for value, would not have acquired title to those documents, because Mr. Bernstein had no title to give him. If requests were made of Mr. Oberlander to return those documents and Mr. Oberlander refused, it may be that an action for conversion may be available against Mr. Oberlander.

It may be that there is some disciplinary rule, which might be applicable to Mr. Oberlander, who had documents which he knew or perhaps should have known may have been improperly obtained by Bernstein and passed onto him.

It may be that there is some ethical principle, which should have precluded Mr. Oberlander from using those documents. Because the sensitivity of those documents would have been apparent to any reasonable person, particularly one who is trained in the law ostensibly.

So the question is, yes, something bad was done, something very bad and perhaps despicable was done by the use of those documents annexed to a complaint in the Southern District, in a civil case, but the question is what order was violated?

You can certainty submit briefs on the First

1   Amendment issue.  I have some question about whether the

2   First Amendment is applicable here.  There was an opinion by

3   Judge Kahn in the Western District-- I did not bring my file

4   down. I thought this was on for 11:30.  What is the name of

5   the town -- I will be more than happy to give it to you.

6           LAW CLERK:  It was a Northern district case.

7           THE COURT:  Yes, it was by Judge Kahn, in which he

8   has a very interesting discussion in a case, which is not

9   this, but analogous in the sense that it involved a

10  confidentiality order that was part of a potential settlement

11  stipulation and that the documents in that confidentiality

12  agreement became available or was sought to be made available

13  to a newspaper upstate by the reporter of that newspaper and

14  the First Amendment argument was made in that case as well.

15          Judge Kahn didn't think it was applicable for a

16  variety of reasons.  I think, his reasoning might be quite

17  persuasive when dealing with a presentence report and

18  certainly Charmer, I think, leaves very little doubt that a

19  presentence report has a very, very special status.  So there

20  we are.

21          You want an opportunity to submit the supplemental

22  brief and I will give you that opportunity. I just received

23  Mr. Lerner's document this morning.  It was FAX'D or ECF'd at

24  four something last night. You don't request an adjournment

25  at 4:00 o'clock on the eve of a hearing.  If you look at my

1    local rules it require 48 hours notice for purposes of

2    adjourning a schedule hearing or a conference.

3            So I didn't get around to reading it because I left

4    before that document arrived and I looked at it this morning.

5            Ms. Moore called, I think, shortly after that

6    document was received, so my law clerk tells me, and asked

7    for an adjournment to respond to that letter.  I was not able

8    to respond to that because I was not here.  But I did call

9    her this morning and I asked her if she wanted to adjourn.

10   You indicated that you saw no purpose for this conference as

11   well, but she preferred to go ahead and make application for

12   a supplemental brief.

13           What I have just declared is not to be understood at

14   this moment as a determination that injunctive relief may not

15   be appropriate, but I am troubled by the issues as I have

16   outlined them as to whether an order signed by a judge on one

17   of those sealing envelopes, which says, not to be unsealed

18   except by order of the Court, is binding upon any third-party

19   person, is binding or is the procedure, which is intended by

20   that procedure, which informs any third-party who has notice

21   or will have notice by looking at a docket sheet, looking at

22   the ECF, this is a case under seal -- under sealed or filed

23   under seal-- make application to the Court to unseal the

24   document.

25           Whether having knowledge that the case was one,

1  which has been filed under seal, whether an order was issued

2  or not, it is a case which is filed under seal, and clearly

3  indicates the content of that sealed file is not to be

4  disclosed, except upon order of the Court, whether that can

5  be ignored, whether that is presumptively meaningless and has

6  no binding effect upon anybody.

7        It is an interesting question, Mr. Lerner.  Judge

8  Kennedy who I think you were quoting with all due respect,

9  may not have faced this specific issue at any given time, but

10  it is obviously an issue which is quite troublesome.  It is

11  quite troublesome in so far as Mr. Oberlander's use of that

12  document, which he knew was sealed, knew contained very

13  sensitive information.  It may be some other relief may be

14  available against Mr. Oberlander.  I am not sure.

15        In so far as injunctions are concerned, there is an

16  interesting observation in Charmer as well, if you read it

17  carefully, Mr. Lerner, and I'm sure that you have.  Normally

18  was is required, and Ms. Moore indicates what is normally

19  required before injunctive relief is obtained-- and by the

20  way in so far as the TRO is concerned-- I do not recall there

21  was any objection ever raised by you to the issuance of the

22  TRO.

23        It is my sense that you were consenting to it at

24  every stage of the TRO as it was initially issued and

25  renewed. We will leave that go for the moment.

1          MS. LERNER:  I can respond --

2          THE COURT:  I said, leave that go for the moment.

3   But normally, before a TRO-- injunctive relief, more

4   specifically should be issued, there are three prerequisites.

5   The leading case in this circuit is Jackson Dairy versus H.B.

6   Hood, I think, it is 570 2d or there abouts.  You have to

7   show irreparable alarm, likelihood of irreparable harm,

8   likelihood of success on the merits, or reasonable issues

9   going to the merits with the balance of hardships tipping in

10  favor of the movant.

11         In Charmer, you may recall-- it may be Judge Kearse

12  who said that the burden should not be on the person seeking

13  the injunctive relief, where the presentence report is the

14  document at issue, the burden should be upon the Attorney

15  General, the person who has that presentence report to

16  establish an overriding need for the use or possession of

17  that document.

18         The burden should be on the other side, not on the

19  movant, but the person seeking to be enjoined.

20         Having said all of that I will await further

21  briefing.  I do not think there is anything further that you

22  want to submit, Mr. Lerner.

23         MS. LERNER:  There are two cases I would like to

24  cite and just --

25         THE COURT:  Why don't you submit them to me.

HENRY SHAPIRO          OFFICIAL COURT REPORTER

1          MS. LERNER:  I don't have copies for --

2          THE COURT:  When I say submit them, submit the

3    citations to them.

4          MR. LERNER:  DiPietro against the United States of

5    America.

6          THE COURT:  I'm sorry --

7          MS. LERNER:  D I P I E T R O.

8          It is a Lexus cite, 2009, U.S. District --

9          THE COURT:  What are the names of the parties?

10         MS. LERNER:  DiPietro against the United States of

11   America.

12         THE COURT:  DiPietro is the plaintiff?

13         MS. LERNER:  Petitioner for the unsealing of the

14   Court file.  2009, US District, Lexus 30010.

15         THE COURT:  What court was it.

16         MS. LERNER:  Southern District.

17         And the second case is Nycomeds against Glen Parker

18   Generics, 2110 U.S. district, Lexus 20788.

19         It is a magistrate decision , Eastern District of

20   New York, Magistrate Mann.

21         THE COURT:  You want a week?

22         MS. MOORE:  Yes, your Honor.

23         THE COURT:  You are responding to Mr. Lerner's last

24   submission and I don't think any further submissions are

25   necessary.

1          MS. MOORE:  Your Honor, in light of Mr. Lerner's

2     last submission, I would seek clarification with respect to

3     the PSR that it's clear --

4          THE COURT:  Before you get to that.  Am I correct

5     that the documents, at least Mr. Lerner's last submission

6     says this whole proceeding now is moot because the documents

7     have been surrendered, turned over to you, is that correct?

8          MS. MOORE:  Not that I know of.  I think, as I

9     understand his position, which I don't agree with, he's

10    entitled to keep all copies of the documents, as long as he

11    returned the originals, so, I believe, in his letter he

12    states that if at the court proceeding he marked as exhibits

13    the original versions of those documents, but his client has

14    maintained both electronic and hard copies, so clearly the

15    intent was not to give back, as Judge Jones ordered in Visa,

16    all copies as well.  It doesn't get the originals back and

17    are free to disseminating copies.

18         THE COURT:  I think, I indicated Mr. Oberlander

19    should not do that. I think it was in the form of an order

20    and that order, I believe, if I have not done so, I am doing

21    it now and if you want it in writing until I resolve this

22    issue.

23         MR. LERNER:  You are issuing a further TRO?

24         THE COURT:  Yes, I am.

25         I'm issuing a further TRO for the reasons that I

have indicated.

I think there is irreparable harm, which is imminent to Mr. John Doe, those documents contained information which is highly, highly sensitive and if disseminated it is discriminatively to a person that should not get the information.

I think, it would put Mr. John Doe's safety at risk. The likelihood of success is or is not present. Again, if Charmer Industies is being read correctly by me and, I think, it is, I think, the burden with respect to whether or not there is some need to maintain those documents or to keep them should be shifted to you. Until next week, okay.

I do not think we need any further hearing. You will submit the briefs and I will make my determination. The TRO is continued for another ten days.

Is there anything further?

MS. MOORE:  No, your Honor.

THE COURT:  Thank you.

MS. MOORE:  I do have one last application. With respect to the transcript to have my client's name replaced with John Doe.

THE COURT:  Yes.

MS. MOORE:  Thank you.

* * * * * *

**'**

'98 [1] - 2:2

**1**

10017 [1] - 1:20
101 [1] - 1:15
10:30 [1] - 1:11
1101 [1] - 2:3
11:30 [1] - 21:4
150 [1] - 1:20

**2**

20 [1] - 1:10
2009 [2] - 25:8, 25:14
2010 [1] - 1:10
20788 [1] - 25:18
2110 [1] - 25:18
21st [1] - 8:5
225 [1] - 1:23
2d [1] - 24:6

**3**

30010 [1] - 25:14

**4**

42nd [1] - 1:20
48 [1] - 22:1
4:00 [1] - 21:25

**5**

570 [1] - 24:6

**7**

718-613-2509 [1] - 1:24

**9**

95 [1] - 3:19
98-1101 [1] - 1:5

**A**

a.m [1] - 1:11
abiding [2] - 9:18, 9:19
able [2] - 17:7, 22:7
abouts [1] - 24:6
absolute [1] - 3:2

accept [1] - 16:5
acceptable [1] - 9:13
accepting [1] - 5:6
according [1] - 14:5
accuses [1] - 5:10
acquired [1] - 20:6
action [1] - 20:9
additional [4] - 3:8, 6:15, 6:17, 16:12
additionally [1] - 3:17
address [1] - 2:22
adjourn [1] - 22:9
adjourning [1] - 22:2
adjournment [2] - 21:24, 22:7
advise [1] - 6:12
affecting [1] - 8:22
affidavit [2] - 4:24, 18:15
agent [1] - 3:14
ago [1] - 18:3
agree [5] - 9:5, 9:8, 12:25, 13:3, 26:9
agreement [7] - 4:4, 18:6, 18:9, 18:12, 19:8, 21:12
agreements [1] - 17:10
ahead [3] - 5:5, 9:2, 22:11
alarm [1] - 24:7
allegation [2] - 5:2, 5:24
allegations [2] - 5:8, 5:23
allegedly [1] - 9:16
allow [1] - 10:22
alternative [1] - 13:21
alternatively [1] - 5:15
altogether [1] - 6:23
Amadao [1] - 14:5
Amendment [13] - 2:21, 2:24, 3:4, 3:16, 4:7, 4:16, 6:4, 13:19, 13:25, 16:12, 21:1, 21:2, 21:14
amendment [2] - 3:2, 6:17
America [2] - 25:5, 25:11
Amidao [1] - 10:20
analogizing [1] - 19:22
analogous [1] - 21:9
analogy [1] - 9:8
analysis [3] - 2:24, 6:17, 16:12
annexed [1] - 20:22
answer [3] - 12:7, 13:10, 18:13
answering [1] - 11:20
apologize [1] - 12:18
apparent [1] - 20:18
appeal [13] - 6:23, 6:25, 7:6, 7:8, 7:10, 7:13, 7:15, 7:21, 8:1, 8:8, 8:15, 8:17, 8:24
appealable [3] - 7:19, 7:23, 8:7
appear [1] - 17:19
appearance [2] - 2:21, 14:23
APPEARANCES [1] - 1:14
appearing [1] - 10:4
appellate [2] - 10:24, 11:22
applicable [3] - 20:12, 21:2, 21:15
application [12] - 5:11, 5:14, 5:18, 6:1, 10:14, 14:14, 14:16, 16:13, 17:5,

22:11, 22:23, 27:19
applies [1] - 4:2
appropriate [1] - 22:15
argue [1] - 7:1
argued [2] - 7:3, 8:11
arguing [1] - 6:11
argument [1] - 21:14
ARGUMENT [1] - 1:12
arguments [6] - 2:2, 2:11, 2:21, 5:23, 9:5, 14:3
arranged [1] - 4:21
arrived [1] - 22:4
article [1] - 15:23
articles [1] - 3:6
assertion [1] - 19:2
assistant [1] - 16:23
assume [2] - 12:4, 17:15, 18:11
assuming [2] - 11:4, 19:9
Attorney [1] - 24:14
attorney [5] - 3:7, 3:20, 16:24, 18:7
Attorney's [1] - 6:1
authority [2] - 2:12, 5:25
available [11] - 12:3, 12:15, 14:20, 17:4, 17:21, 18:1, 18:12, 20:10, 21:12, 23:14
Avenue [1] - 1:15
await [1] - 24:20
aware [3] - 2:19, 3:24, 13:17

**B**

backwards [1] - 5:16
bad [2] - 20:20, 20:21
balance [1] - 24:9
bar [1] - 4:16
Bartnicki [2] - 9:7, 9:9
based [1] - 19:21
basis [2] - 5:14, 15:10
became [2] - 7:4, 21:12
becomes [1] - 12:3
BEFORE [1] - 1:12
believes [1] - 7:22
bend [1] - 5:16
Bernstein [17] - 4:24, 9:20, 15:13, 15:16, 18:15, 18:19, 18:21, 19:12, 19:13, 19:18, 19:19, 19:22, 20:1, 20:3, 20:7, 20:14
better [1] - 19:25
beyond [3] - 5:25, 15:6, 18:4
bias [1] - 5:16
big [1] - 16:5
binding [3] - 22:18, 22:19, 23:6
BOCKIUS [1] - 1:15
bound [1] - 17:18
breach [1] - 16:18
BRIAN [1] - 1:18
Brian [1] - 2:5
brief [6] - 2:11, 2:23, 16:12, 16:14, 21:22, 22:12

briefing [1] - 24:21
briefs [3] - 2:23, 20:25, 27:14
bring [1] - 21:3
broke [1] - 9:20
Brooklyn [2] - 1:8, 1:23
brought [1] - 17:23
burden [4] - 24:12, 24:14, 24:18, 27:10
business [1] - 2:18
Business [2] - 15:22, 16:3
BY [2] - 1:16, 1:21

**C**

cabinet [1] - 19:10
Cadman [1] - 1:23
CALDWELL [1] - 1:17
Caldwell [1] - 2:5
candid [1] - 7:18
candidly [1] - 7:19
cannot [14] - 9:15, 9:20, 10:6, 10:20, 10:23, 10:25, 13:17, 14:12, 15:11, 16:1, 16:2, 16:7, 18:16
care [2] - 4:1, 4:5
careful [1] - 19:8
carefully [1] - 23:17
case [33] - 2:13, 2:14, 2:15, 2:19, 3:2, 3:11, 4:3, 4:6, 4:10, 4:11, 4:13, 4:15, 6:21, 7:17, 9:3, 9:24, 10:6, 10:10, 10:13, 11:10, 16:16, 17:9, 17:17, 18:10, 20:23, 21:6, 21:8, 21:14, 22:22, 22:25, 23:2, 24:5, 25:17
cases [5] - 2:16, 4:14, 17:9, 24:23
caused [1] - 8:20
caution [1] - 4:1
certainly [2] - 4:5, 21:18
certainty [1] - 20:25
chance [1] - 12:2
change [1] - 20:2
Charmer [7] - 12:22, 12:24, 13:9, 21:18, 23:16, 24:11, 27:9
check [1] - 9:8
circuit [1] - 24:5
citations [1] - 25:3
cite [2] - 24:24, 25:8
cited [2] - 4:14, 9:4
City [1] - 17:2
civil [2] - 2:17, 20:23
Civil [1] - 4:9
claiming [1] - 4:23
claims [1] - 4:10
clarification [2] - 4:23, 26:2
clear [3] - 6:23, 15:14, 26:3
clearly [11] - 3:12, 3:18, 4:11, 5:4, 5:11, 5:12, 8:14, 9:9, 18:13, 23:2, 26:14
CLERK [2] - 2:2, 21:6
clerk [3] - 17:2, 17:19, 22:6
client [3] - 5:7, 26:13
client's [4] - 4:9, 5:6, 19:3, 27:20
clients [1] - 5:1

coerce [1] - 4:12
colleague [1] - 6:9
comment [1] - 6:9
commercial [1] - 2:18
compelled [1] - 3:25
compelling [2] - 2:16, 4:7
complaint [4] - 3:19, 4:9, 15:25, 20:22
completely [1] - 5:14
computer [1] - 1:25
concern [2] - 17:24, 18:2
concerned [3] - 16:21, 23:15, 23:20
concerns [1] - 13:2
conduct [3] - 3:3, 5:10, 9:19
conducting [1] - 13:24
conference [2] - 22:2, 22:10
confidential [2] - 3:9, 6:5
confidentiality [3] - 13:1, 21:10, 21:11
connection [2] - 5:1, 12:19
consenting [1] - 23:23
consideration [1] - 17:14
constitutes [2] - 13:23, 14:9
constitutional [1] - 15:8
constitutionally [1] - 14:4
contacted [1] - 4:24
contained [8] - 2:11, 2:12, 4:10, 5:23, 6:14, 19:1, 23:12, 27:3
content [1] - 23:3
continue [1] - 13:14
continued [2] - 9:17, 27:15
continuing [2] - 8:16, 8:22
conversion [2] - 19:23, 20:9
converted [2] - 7:7, 19:17
converter [1] - 19:13
cooperation [7] - 4:4, 17:10, 18:6, 18:8, 18:11, 19:7
cooperators [2] - 4:2
copies [6] - 15:20, 25:1, 26:10, 26:14, 26:16, 26:17
copy [2] - 15:24, 18:8
correct [4] - 10:10, 11:20, 26:4, 26:7
correctly [1] - 27:9
course [2] - 12:14, 13:3
COURT [42] - 1:1, 6:18, 6:22, 7:5, 7:9, 7:14, 7:18, 7:21, 7:25, 8:13, 9:1, 10:8, 10:12, 11:3, 11:11, 11:19, 11:25, 12:11, 12:19, 12:24, 13:15, 14:14, 14:16, 15:1, 16:9, 16:13, 19:21, 21:7, 24:2, 24:25, 25:2, 25:6, 25:9, 25:12, 25:15, 25:21, 25:23, 26:4, 26:18, 26:24, 27:18, 27:22
Court [32] - 1:22, 2:19, 2:22, 2:25, 4:8, 5:10, 5:13, 5:15, 5:24, 6:15, 8:11, 8:15, 9:9, 9:17, 10:20, 10:22, 11:22, 13:8, 13:10, 13:23, 14:14, 15:6, 15:16, 16:19, 16:22, 17:21, 17:24, 18:23, 22:18, 22:23, 23:4, 25:14
court [16] - 2:21, 3:22, 3:23, 9:23, 9:25, 10:1, 10:4, 10:14, 10:24, 11:7, 12:1, 13:7, 13:20, 17:19, 25:15, 26:12

Court's [1] - 4:22
courthouse [2] - 17:4, 17:25
Courthouse [1] - 1:7
courts [1] - 11:22
CR [1] - 2:3
crazy [1] - 6:11
created [2] - 12:14
crime [1] - 9:11
criminal [13] - 2:2, 4:10, 12:9, 12:11, 12:14, 13:5, 13:6, 15:24, 15:25, 16:19, 17:9, 17:13, 19:4
crowded [1] - 6:6
CV [1] - 1:5

**D**

Dairy [1] - 24:5
danger [2] - 4:15, 6:5
David [1] - 2:6
DAVID [1] - 1:17
days [1] - 27:15
dealing [1] - 21:17
death [1] - 2:20
decency [1] - 5:25
decided [1] - 18:11
decision [3] - 2:13, 2:14, 25:19
declaration [5] - 4:18, 5:9, 5:24, 6:8, 6:14
declared [1] - 22:13
declined [1] - 10:22
deemed [1] - 7:7
Defendant [1] - 1:19
demonstrate [1] - 5:16
deprived [1] - 10:18
deprives [1] - 8:15
describe [1] - 20:1
deserve [1] - 3:15
desk [1] - 19:10
despicable [1] - 20:21
detailed [1] - 2:24
deter [1] - 9:19
determination [3] - 8:12, 22:14, 27:14
Dicker [1] - 2:8
DICKER [1] - 1:19
dignify [1] - 6:13
DiPietro [3] - 25:4, 25:10, 25:12
directed [4] - 15:21, 17:8, 17:18, 17:19
directing [1] - 17:17
disciplinary [1] - 20:11
disclose [1] - 14:11
disclosed [1] - 23:4
disclosures [1] - 9:12
discretion [1] - 6:13
discriminatively [1] - 27:5
discussion [1] - 21:8
disingenuous [1] - 19:3
dispute [1] - 18:4
disseminate [1] - 3:8

**disseminated** [1] - 27:4
**disseminating** [2] - 4:1, 26:17
**dissemination** [1] - 15:19
**distributed** [1] - 12:9
**DISTRICT** [3] - 1:1, 1:1, 1:13
**district** [2] - 21:6, 25:18
**District** [10] - 3:19, 3:24, 4:8, 19:7, 20:23, 21:3, 25:8, 25:14, 25:16, 25:19
**docket** [21] - 10:2, 10:5, 10:9, 10:19, 10:21, 10:23, 11:6, 11:16, 11:25, 12:5, 13:17, 14:11, 14:17, 14:19, 14:22, 14:23, 15:3, 15:4, 16:23, 17:1, 22:21
**dockets** [2] - 14:19, 16:19
**document** [27] - 8:12, 8:21, 12:3, 12:8, 12:13, 13:1, 13:4, 14:17, 15:12, 16:17, 16:22, 17:5, 17:6, 17:20, 18:1, 18:6, 18:9, 19:5, 19:14, 21:23, 22:4, 22:6, 22:24, 23:12, 24:14, 24:17
**documents** [37] - 2:17, 3:11, 3:15, 3:18, 3:21, 4:25, 6:2, 6:6, 10:12, 11:1, 14:13, 18:4, 18:14, 18:19, 18:22, 18:24, 18:25, 19:1, 19:9, 19:11, 19:13, 19:14, 20:1, 20:6, 20:8, 20:13, 20:17, 20:22, 21:11, 26:5, 26:6, 26:10, 26:13, 27:3, 27:11
**DOE** [1] - 1:5
**Doe** [11] - 2:3, 2:6, 17:9, 18:5, 18:8, 18:11, 18:14, 18:19, 19:19, 27:3, 27:21
**Doe's** [2] - 19:10, 27:7
**done** [3] - 20:20, 20:21, 26:20
**doubt** [1] - 21:18
**down** [1] - 21:4
**dual** [1] - 14:22
**dubious** [1] - 4:20
**due** [1] - 23:8

## E

**East** [2] - 1:20, 1:23
**Eastern** [1] - 25:19
**EASTERN** [1] - 1:1
**ECF** [1] - 22:22
**ECF'd** [1] - 21:23
**economic** [1] - 2:18
**Edelman** [1] - 2:8
**EDELMAN** [1] - 1:19
**effect** [3] - 8:18, 15:17, 23:6
**efficacy** [1] - 12:4
**either** [2] - 5:13, 17:11
**electronic** [4] - 3:25, 15:20, 19:6, 26:14
**ELSER** [1] - 1:19
**Elser** [1] - 2:7
**embarrass** [1] - 4:11
**encountered** [1] - 8:2
**end** [1] - 16:6
**ends** [1] - 9:14
**enforce** [1] - 16:1
**enforcement** [1] - 15:21
**engaged** [1] - 4:20
**engaging** [1] - 5:20
**enjoined** [1] - 24:19
**entire** [2] - 15:2, 15:5
**entitled** [1] - 26:10
**entity** [1] - 2:18
**entries** [1] - 14:19
**entry** [1] - 11:25
**envelopes** [1] - 22:17
**ESQ** [6] - 1:16, 1:17, 1:17, 1:18, 1:21, 1:21
**establish** [1] - 24:16
**established** [1] - 8:14
**ethical** [2] - 3:8, 20:15
**eve** [1] - 21:25
**event** [3] - 7:11, 8:20, 18:23
**events** [2] - 19:22, 20:2
**eventually** [1] - 16:25
**evidence** [1] - 8:9
**evident** [1] - 3:18
**evolved** [1] - 16:25
**example** [1] - 15:22
**except** [3] - 17:21, 22:18, 23:4
**excuse** [2] - 10:8, 11:3
**exercise** [2] - 3:25, 8:22
**exercised** [1] - 4:5
**exhibits** [1] - 26:12

## F

**faced** [1] - 23:9
**factly** [1] - 11:15
**facts** [3] - 2:15, 3:2, 4:15
**failed** [1] - 14:11
**failing** [1] - 14:8
**fairly** [1] - 8:11
**far** [5] - 10:3, 18:15, 23:11, 23:15, 23:20
**favor** [1] - 24:10
**favorable** [2] - 5:7, 5:17
**FAX'D** [1] - 21:23
**federal** [1] - 5:25
**Fifth** [1] - 16:12
**fight** [1] - 16:6
**file** [24] - 7:13, 7:21, 9:23, 10:4, 10:14, 11:7, 11:23, 12:3, 12:7, 13:7, 13:8, 13:20, 15:5, 16:13, 16:22, 17:7, 17:8, 17:17, 17:20, 17:25, 18:10, 21:3, 23:3, 25:14
**filed** [5] - 4:18, 8:17, 22:22, 23:1, 23:2
**files** [3] - 6:2, 17:3, 17:13
**filing** [5] - 3:25, 7:10, 8:15, 16:24, 19:6
**final** [1] - 8:12
**finally** [1] - 4:13
**findings** [3] - 10:17, 14:6, 14:8
**fire** [1] - 6:7
**First** [13] - 2:21, 2:24, 3:4, 3:15, 4:7, 4:15, 6:4, 6:17, 13:19, 13:25, 20:25, 21:2, 21:14
**first** [6] - 3:1, 8:5, 9:6, 12:5, 16:22, 17:23
**five** [1] - 14:18
**follow** [1] - 12:13
**follows** [1] - 9:11
**form** [1] - 26:19
**formal** [1] - 7:1
**former** [1] - 6:9
**four** [2] - 14:18, 21:24
**frank** [1] - 8:1
**frankly** [1] - 7:17
**Frederick** [1] - 2:8
**free** [6] - 7:20, 9:22, 12:2, 12:4, 12:8, 26:17
**Friday** [1] - 4:19
**fundamental** [2] - 13:19, 19:22

## G

**gag** [5] - 15:10, 15:21, 16:1, 16:2
**gagged** [1] - 15:11
**gap** [1] - 7:2
**gathering** [1] - 3:5
**General** [1] - 24:15
**Generics** [1] - 25:18
**given** [5] - 10:4, 10:7, 10:21, 19:17, 23:9
**GLASSER** [1] - 1:12
**Glen** [1] - 25:17
**gold** [1] - 19:15
**granted** [3] - 13:23, 16:7, 16:13
**granting** [1] - 13:22
**greater** [4] - 3:15, 4:5, 6:4, 6:13
**guilty** [1] - 9:10
**guy** [2] - 16:4, 16:5

## H

**H.B** [1] - 24:5
**hands** [1] - 18:24
**happy** [1] - 21:5
**harass** [1] - 4:11
**hard** [2] - 5:22, 26:14
**hardships** [1] - 24:9
**harm** [4] - 2:18, 2:20, 24:7, 27:2
**Hartford** [3] - 10:1, 10:23, 11:10
**hear** [1] - 6:19
**hearing** [6] - 9:7, 11:9, 18:3, 21:25, 22:2, 27:13
**held** [3] - 10:20, 11:22, 18:3
**Henry** [1] - 1:22
**HERMAN** [1] - 1:18
**Herman** [1] - 2:6
**highly** [2] - 27:4
**himself** [1] - 3:16
**hold** [1] - 9:17
**honor** [1] - 15:12
**Honor** [30] - 2:10, 6:20, 7:17, 8:5, 8:9, 9:3, 9:6, 9:7, 9:23, 10:2, 10:17, 11:1, 11:14, 13:3, 13:11, 13:22, 14:2, 14:3,

14:11, 14:22, 14:25, 15:2, 15:6, 15:19, 16:1, 16:8, 16:10, 25:22, 26:1, 27:17
**HONORABLE** [1] - 1:12
**Hood** [1] - 24:6
**hours** [1] - 22:1
**human** [2] - 4:15, 6:3

# I

**ignore** [1] - 12:2
**ignored** [1] - 23:5
**illegality** [1] - 9:13
**imminent** [1] - 27:2
**imposition** [1] - 4:16
**improper** [2] - 14:25, 15:1
**improperly** [2] - 18:21, 20:14
**IN** [1] - 1:5
**inappropriately** [1] - 13:8
**inapt** [1] - 9:8
**incorporates** [1] - 14:3
**independent** [2] - 9:22, 14:5
**indicate** [1] - 10:3
**indicated** [7] - 11:15, 14:18, 15:3, 16:20, 22:10, 26:18, 27:1
**indicates** [2] - 23:3, 23:18
**indication** [2] - 17:1, 17:4
**indictment** [1] - 16:25
**individual** [1] - 2:20
**Industies** [1] - 27:9
**Industries** [2] - 12:22, 12:25
**inference** [1] - 18:20
**information** [11] - 3:9, 4:1, 4:9, 9:16, 9:18, 16:24, 19:1, 19:6, 23:13, 27:3, 27:6
**informed** [1] - 17:20
**informs** [1] - 22:20
**infringed** [1] - 14:1
**initial** [1] - 9:13
**injunction** [7] - 7:2, 7:4, 7:8, 7:12, 8:6, 15:9, 16:7
**injunctions** [1] - 23:15
**injunctive** [5] - 8:18, 22:14, 23:19, 24:3, 24:13
**innocent** [1] - 20:5
**inquiry** [1] - 13:24
**insufficient** [1] - 14:5
**integrity** [1] - 16:21
**intended** [4] - 4:6, 5:4, 5:12, 22:19
**intent** [1] - 26:15
**intentional** [1] - 4:21
**interceptor** [1] - 9:10
**interest** [11] - 4:7, 6:2, 9:12, 12:9, 12:10, 12:12, 12:15, 13:19, 17:11, 17:12
**interesting** [3] - 21:8, 23:7, 23:16
**interests** [1] - 5:5
**interruption** [1] - 12:18
**intimidate** [1] - 4:12
**invalid** [1] - 11:8
**invalidity** [1] - 11:12

**involved** [4] - 2:16, 2:17, 9:13, 21:9
**involves** [1] - 2:19
**involving** [1] - 4:14
**irreparable** [3] - 24:7, 27:2
**issuance** [1] - 23:21
**issue** [9] - 3:11, 5:16, 8:20, 13:12, 21:1, 23:9, 23:10, 24:14, 26:22
**issued** [4] - 7:12, 23:1, 23:24, 24:4
**issues** [2] - 22:15, 24:8
**issuing** [2] - 26:23, 26:25
**item** [1] - 19:16
**items** [2] - 14:23, 15:3
**itself** [6] - 5:14, 7:19, 8:25, 13:23, 14:2, 14:7

# J

**Jackson** [1] - 24:5
**JOHN** [1] - 1:5
**John** [13] - 2:3, 2:6, 17:9, 18:5, 18:8, 18:11, 18:14, 18:18, 19:10, 19:19, 27:3, 27:7, 27:21
**Jones** [1] - 26:15
**Jones'** [1] - 2:13
**judge** [3] - 6:1, 21:15, 22:16
**Judge** [7] - 2:13, 2:14, 21:3, 21:7, 23:7, 24:11, 26:15
**JUDGE** [1] - 1:13
**July** [1] - 1:10
**June** [1] - 8:5
**jurisdiction** [3] - 8:16, 8:22, 13:12

# K

**Kahn** [3] - 21:3, 21:7, 21:15
**Kansas** [1] - 17:2
**Kearse** [1] - 24:11
**keep** [2] - 26:10, 27:11
**KELLY** [1] - 1:16
**Kelly** [1] - 2:5
**Kennedy** [1] - 23:8
**kind** [1] - 7:9
**knowledge** [2] - 8:3, 22:25
**known** [1] - 20:13

# L

**lack** [1] - 5:16
**lapsed** [1] - 7:3
**larceny** [1] - 19:23
**last** [7] - 2:21, 4:19, 21:24, 25:23, 26:2, 26:5, 27:19
**LAUREN** [1] - 1:21
**law** [9] - 6:21, 7:17, 8:14, 9:3, 9:18, 9:19, 9:20, 20:19, 22:6
**LAW** [1] - 21:6
**law-abiding** [1] - 9:18

**lawfully** [1] - 9:12
**lawyer** [1] - 19:4
**lawyers** [1] - 4:25
**leading** [1] - 24:5
**least** [2] - 13:21, 26:5
**leave** [3] - 15:10, 23:25, 24:2
**leaves** [1] - 21:18
**left** [1] - 22:3
**legal** [1] - 19:14
**legitimate** [1] - 18:20
**LEO** [1] - 1:12
**LERNER** [35] - 1:21, 2:7, 6:20, 6:25, 7:7, 7:12, 7:17, 7:19, 7:24, 8:5, 8:24, 9:3, 10:11, 10:16, 11:10, 11:14, 11:21, 12:5, 12:18, 12:23, 13:3, 13:16, 14:15, 14:21, 15:2, 19:19, 24:1, 24:23, 25:1, 25:4, 25:7, 25:10, 25:13, 25:16, 26:23
**lerner** [2] - 11:19, 23:17
**Lerner** [7] - 2:7, 6:19, 8:13, 11:11, 12:17, 23:7, 24:22
**lerner's** [4] - 21:23, 25:23, 26:1, 26:5
**LESLIE** [1] - 1:17
**Leslie** [1] - 2:5
**letter** [2] - 22:7, 26:11
**LEWIS** [1] - 1:15
**Lexus** [3] - 25:8, 25:14, 25:18
**life** [3] - 4:15, 6:3, 6:5
**light** [1] - 26:1
**likelihood** [3] - 24:7, 24:8, 27:8
**limitation** [1] - 7:15
**line** [1] - 17:16
**lines** [1] - 4:23
**litigants** [1] - 5:20
**litigation** [4] - 2:17, 4:21, 5:12, 5:19
**LLP** [2] - 1:15, 1:19
**local** [1] - 22:1
**look** [1] - 21:25
**looked** [1] - 22:4
**looking** [3] - 11:6, 22:21

# M

**magistrate** [1] - 25:19
**Magistrate** [1] - 25:20
**maintain** [1] - 27:11
**maintained** [1] - 26:14
**man** [1] - 6:12
**man's** [1] - 6:4
**Mann** [1] - 25:20
**marked** [1] - 26:12
**matter** [7] - 8:16, 8:23, 11:15, 12:12, 12:14, 12:20, 15:25
**matters** [1] - 17:11
**mean** [1] - 7:5
**meaningless** [1] - 23:5
**means** [4] - 9:11, 9:14, 13:11, 15:4
**meant** [2] - 3:21, 19:5
**meantime** [1] - 3:1
**mechanical** [1] - 1:25

media [1] - 3:5
mentioned [1] - 4:13
merely [2] - 7:4, 9:15
meritless [3] - 5:2, 5:14, 5:18
merits [2] - 24:8, 24:9
might [2] - 20:12, 21:16
mine [1] - 6:9
minute [1] - 11:3
misconduct [1] - 5:2
misdirected [1] - 9:8
misinterpretation [1] - 4:22
moment [4] - 17:15, 22:14, 23:25, 24:2
MOORE [10] - 1:16, 2:5, 2:10, 16:10, 25:22, 26:1, 26:8, 27:17, 27:19, 27:23
Moore [1] - 2:5
moore [2] - 22:5, 23:18
Moore's [1] - 14:3
moot [1] - 26:6
moreover [1] - 3:11
MORGAN [1] - 1:15
morning [3] - 21:23, 22:4, 22:9
Moskowitz [1] - 2:8
MOSKOWITZ [1] - 1:19
movant [2] - 24:10, 24:19
must [3] - 10:1, 14:5, 14:7

**N**

name [2] - 21:4, 27:20
names [2] - 2:4, 25:9
national [2] - 6:3, 17:11
necessary [1] - 25:25
need [3] - 24:16, 27:11, 27:13
never [1] - 8:1
nevertheless [1] - 5:3
NEW [1] - 1:1
New [5] - 1:8, 1:16, 1:20, 1:23, 25:20
news [1] - 3:5
newspaper [1] - 21:13
next [1] - 27:12
night [1] - 21:24
non [1] - 9:19
non-law-abiding [1] - 9:19
normally [3] - 23:17, 23:18, 24:3
Northern [1] - 21:6
note [4] - 3:1, 4:19, 10:6, 16:11
noted [1] - 15:23
nothing [6] - 10:2, 11:2, 13:16, 13:18, 13:20, 15:19
notice [18] - 6:23, 6:25, 7:5, 7:10, 7:13, 7:15, 7:21, 8:1, 8:7, 8:15, 8:17, 8:24, 10:3, 10:7, 10:21, 22:1, 22:20, 22:21
notification [1] - 16:23
nullity [1] - 14:7
number [3] - 4:20, 16:15, 17:1
numbered [1] - 14:18
Nycomeds [1] - 25:17

**O**

o'clock [2] - 1:11, 21:25
Oberlander [26] - 2:9, 3:7, 3:12, 3:20, 4:5, 5:9, 5:24, 9:21, 9:22, 12:6, 15:17, 15:22, 16:2, 18:24, 18:25, 19:24, 19:25, 20:4, 20:5, 20:8, 20:9, 20:10, 20:12, 20:16, 23:14, 26:18
oberlander's [6] - 4:18, 6:8, 6:23, 7:20, 15:8, 23:11
objection [1] - 23:21
obligations [1] - 3:8
observation [1] - 23:16
obtain [2] - 10:12, 17:2
obtained [8] - 9:12, 13:11, 15:13, 15:15, 17:2, 18:21, 20:14, 23:19
obviously [1] - 23:10
occasion [1] - 16:20
occurs [1] - 7:11
OF [2] - 1:1, 1:12
office [1] - 6:1
once [2] - 3:20, 6:12
one [9] - 5:13, 9:13, 12:21, 17:1, 17:12, 20:18, 22:16, 22:25, 27:19
opinion [1] - 21:2
opportunity [7] - 2:23, 4:8, 6:20, 10:5, 10:19, 21:21, 21:22
ORAL [1] - 1:12
oral [1] - 2:2
order [54] - 3:22, 3:23, 4:22, 7:22, 9:19, 9:25, 10:1, 10:2, 10:12, 10:15, 10:16, 11:4, 11:5, 11:7, 11:8, 11:13, 11:17, 11:18, 11:23, 11:25, 12:1, 12:2, 12:4, 12:6, 13:10, 13:13, 13:18, 14:2, 14:7, 14:8, 15:7, 15:9, 15:10, 15:21, 16:1, 16:16, 17:7, 17:15, 17:17, 17:17, 17:18, 17:21, 17:23, 18:13, 18:23, 20:23, 21:10, 22:16, 22:18, 23:1, 23:4, 26:19, 26:20
ordered [3] - 8:7, 14:2, 26:15
organization [1] - 3:5
original [3] - 15:12, 16:16, 26:13
originals [4] - 15:15, 15:18, 26:11, 26:16
ostensibly [1] - 20:19
outlined [1] - 22:16
overriding [1] - 24:16
own [2] - 5:5, 17:12

**P**

paper [1] - 19:15
papers [3] - 6:16, 9:4, 15:23
paragraph [1] - 3:18
parcel [1] - 10:13
Park [1] - 1:15
Parker [1] - 25:17
part [4] - 6:13, 10:13, 18:10, 21:10

particular [1] - 5:12
particularly [3] - 12:16, 19:6, 20:18
parties [2] - 18:1, 25:9
party [4] - 9:19, 18:12, 22:18, 22:20
passed [1] - 20:14
passion [1] - 12:19
past [1] - 19:23
people [1] - 6:11
per [1] - 12:10
percentage [1] - 6:11
perfect [3] - 18:7, 18:9, 19:10
perfectly [1] - 7:18
perhaps [4] - 9:4, 9:7, 20:13, 20:21
period [2] - 7:3, 7:16
permanent [7] - 7:2, 7:4, 7:8, 7:12, 8:6, 15:9, 16:6
person [9] - 12:2, 12:3, 12:4, 20:18, 22:19, 24:12, 24:15, 24:19, 27:5
persuasive [1] - 21:17
pertained [1] - 18:10
petitioner [1] - 25:13
phone [1] - 9:10
photocopies [1] - 15:20
physical [1] - 2:20
piece [1] - 19:15
plain [1] - 18:4
Plaintiff [1] - 1:15
plaintiff [1] - 25:12
Plaza [1] - 1:23
position [2] - 8:10, 26:9
possess [1] - 4:16
possession [3] - 3:10, 18:7, 24:16
possessor [1] - 9:18
possible [1] - 2:17
possibly [1] - 7:2
potential [3] - 2:19, 4:14, 21:10
precluded [1] - 20:16
preferred [1] - 22:11
premature [1] - 7:9
premise [1] - 13:4
preposterous [1] - 19:5
prerequisites [1] - 24:4
present [1] - 27:8
presentence [5] - 12:25, 21:17, 21:19, 24:13, 24:15
preserve [1] - 7:15
presume [4] - 9:4, 10:20, 11:1, 11:23
presumption [6] - 10:24, 10:25, 11:4, 11:8, 11:12, 11:21
presumptively [1] - 23:5
prevents [1] - 7:10
previous [1] - 5:2
principle [2] - 19:23, 20:15
private [1] - 3:9
procedure [2] - 22:19, 22:20
proceeding [6] - 4:20, 11:18, 12:10, 12:11, 12:14, 13:6, 26:6, 26:12
Proceedings [1] - 1:25
process [1] - 8:3

processes [1] - 16:18
produced [1] - 1:25
proffer [1] - 18:12
properly [5] - 7:23, 10:7, 11:1, 14:13, 18:5
property [1] - 20:2
protecting [1] - 6:3
protection [3] - 3:4, 3:15, 3:16
protective [5] - 6:25, 7:4, 7:5, 7:14, 7:25
PSR [2] - 8:7, 26:3
public [6] - 9:12, 12:9, 12:10, 12:12, 12:15
publicly [1] - 4:3
publish [1] - 3:6
publishing [1] - 6:5
pull [1] - 5:15
punches [1] - 5:15
punish [2] - 9:15, 9:20
punishing [1] - 9:11
purchaser [1] - 20:5
purpose [4] - 7:14, 13:5, 18:16, 22:10
purposes [1] - 22:1
pursuant [2] - 3:22, 3:23
put [3] - 5:5, 6:4, 27:7

**Q**

questionable [1] - 8:19
questions [1] - 6:15
quite [6] - 6:24, 9:9, 9:16, 21:16, 23:10, 23:11
quoting [1] - 23:8

**R**

raised [1] - 23:21
rants [1] - 6:14
RE [1] - 1:5
read [7] - 6:21, 9:3, 9:7, 12:22, 12:24, 23:16, 27:9
reading [1] - 22:3
really [1] - 6:10
reason [1] - 8:13
reasonable [2] - 20:18, 24:8
reasoning [1] - 21:16
reasons [3] - 14:4, 21:16, 26:25
received [2] - 21:22, 22:6
receives [1] - 9:15
receiving [1] - 3:14
record [8] - 2:4, 11:2, 11:15, 13:16, 13:20, 15:14, 16:21, 18:18
recorded [1] - 1:25
recusal [1] - 5:11
recuse [1] - 5:13
referring [1] - 11:10
refers [1] - 8:8
refused [1] - 20:9
relief [9] - 2:10, 4:17, 8:19, 15:6, 22:14,

23:13, 23:19, 24:3, 24:13
rely [1] - 2:11
remarkable [2] - 9:16, 19:3
reminded [1] - 6:9
removed [1] - 18:5
render [1] - 8:11
renders [1] - 14:9
renewed [1] - 23:25
replaced [1] - 27:20
report [2] - 12:25, 21:17, 21:19, 24:13, 24:15
reporter [1] - 21:13
Reporter [1] - 1:22
representation [1] - 15:16
represented [1] - 3:12
representing [1] - 5:1
request [3] - 12:15, 17:6, 21:24
requested [2] - 14:12, 14:15
requests [1] - 20:7
require [1] - 22:1
required [2] - 23:18, 23:19
requisite [2] - 10:17, 14:8
rereading [1] - 6:8
reserve [2] - 7:1, 8:25
resolve [1] - 26:21
respect [12] - 2:10, 2:20, 4:1, 4:18, 7:22, 8:16, 8:18, 16:19, 23:8, 26:2, 27:10, 27:20
respond [4] - 16:9, 22:7, 22:8, 24:1
respondent [3] - 2:8, 3:3, 3:17
respondent's [2] - 3:3, 13:25
respondents [5] - 3:4, 4:14, 4:19, 5:17, 5:20
responding [2] - 5:22, 25:23
response [1] - 6:14
rest [1] - 6:16
restrains [1] - 7:20
restraint [5] - 13:12, 13:24, 14:6, 14:9, 14:10
restrictive [1] - 13:21
return [2] - 13:10, 20:8
returned [3] - 8:7, 15:12, 26:11
revealed [1] - 18:15
review [2] - 4:8, 4:25
rewarded [1] - 5:21
RICHARD [1] - 1:21
Richard [1] - 2:7
RICO [1] - 4:9
rights [6] - 7:20, 8:25, 9:22, 13:25, 15:8, 20:2
ring [1] - 19:16
rise [1] - 18:20
risk [2] - 17:13, 27:7
ROCKLIN [1] - 1:21
rule [2] - 4:2, 20:11
rules [2] - 3:25, 22:1
ruling [1] - 5:17

**S**

safety [2] - 17:12, 27:7
saw [1] - 22:10
schedule [1] - 22:2
se [1] - 12:10
seal [8] - 3:21, 6:2, 10:10, 17:6, 22:22, 22:23, 23:1, 23:2
sealed [31] - 2:17, 3:18, 3:22, 4:4, 6:5, 10:7, 11:1, 11:7, 11:16, 12:1, 12:6, 13:6, 14:13, 14:19, 14:24, 15:2, 15:4, 15:5, 15:24, 17:8, 17:13, 17:17, 17:20, 18:1, 18:25, 19:5, 22:22, 23:3, 23:12
sealing [8] - 9:23, 10:4, 10:15, 10:16, 11:2, 13:18, 13:20, 22:17
second [2] - 14:22, 25:17
secret [1] - 3:9
security [2] - 6:3, 17:11
see [7] - 10:5, 10:19, 10:21, 10:23, 11:17, 12:6, 13:17
seek [4] - 2:11, 15:9, 15:10, 26:2
seeking [5] - 3:5, 4:17, 4:22, 24:12, 24:19
selective [2] - 15:20, 15:21
selectively [1] - 16:1
sense [2] - 21:9, 23:23
sensitive [2] - 23:13, 27:4
sensitivity [1] - 20:17
serious [2] - 17:24, 19:1
served [1] - 13:19
serving [2] - 9:14, 18:17
settlement [2] - 5:6, 21:10
shall [1] - 7:13
Shapiro [1] - 1:22
sheet [13] - 10:3, 10:6, 10:19, 10:21, 10:23, 11:6, 13:17, 14:12, 14:17, 14:22, 14:23, 16:23, 22:21
shifted [1] - 27:12
shipped [1] - 17:3
shortly [1] - 22:5
shouted [1] - 6:7
show [6] - 14:8, 15:7, 15:9, 16:16, 17:23, 24:7
side [1] - 24:18
sign [1] - 10:2
signed [9] - 9:24, 10:16, 11:6, 11:9, 11:16, 11:17, 11:18, 11:23, 14:2, 17:7, 17:16, 22:16
significant [4] - 16:18, 17:12, 17:14, 18:2
simply [1] - 4:16
sit [1] - 16:5
six [2] - 14:24, 15:4
Snider [1] - 2:6
SNIDER [1] - 1:17
someone [1] - 9:15
somewhere [1] - 17:16
sorry [1] - 25:6
sort [1] - 16:11

sought [2] - 15:7, 21:12
Southern [6] - 3:19, 3:24, 4:8, 19:7, 20:22, 25:16
special [1] - 21:19
specific [2] - 13:1, 23:9
specifically [3] - 2:13, 2:22, 24:4
specious [1] - 9:6
speech [3] - 7:20, 9:17, 13:24
stage [1] - 23:24
state [1] - 2:4
states [2] - 15:24, 26:12
STATES [2] - 1:1, 1:13
States [9] - 1:7, 2:3, 6:1, 9:17, 10:19, 11:22, 16:24, 25:4, 25:10
status [1] - 21:19
stenography [1] - 1:25
stipulation [1] - 21:11
stolen [8] - 3:12, 3:13, 3:14, 6:5, 9:16, 13:7, 18:21
stop [1] - 13:12, 15:19
Street [1] - 1:20
submission [3] - 25:24, 26:2, 26:5
submissions [1] - 25:24
submit [8] - 9:23, 20:25, 21:21, 24:22, 24:25, 25:2, 27:14
submitted [1] - 18:15
subpoena [1] - 18:17
subsequent [1] - 17:5
success [2] - 24:8, 27:8
supplement [3] - 2:23, 6:16, 16:11
supplemental [3] - 16:14, 21:21, 22:12
support [3] - 3:3, 4:6, 14:6
supports [1] - 4:10
suppressed [1] - 9:18
Supreme [3] - 9:17, 10:20, 11:22
surrendered [1] - 26:7

## T

tactics [2] - 4:21, 5:19
tangible [2] - 19:14, 19:16
ten [1] - 27:15
terms [1] - 20:2
testified [1] - 18:16
testify [2] - 4:3, 19:20
testimony [5] - 18:14, 18:18, 19:2, 19:17, 19:21
THE [43] - 1:12, 2:2, 6:18, 6:22, 7:5, 7:9, 7:14, 7:18, 7:21, 7:25, 8:13, 9:1, 10:8, 10:12, 11:3, 11:11, 11:19, 11:25, 12:11, 12:19, 12:24, 13:15, 14:14, 14:16, 15:1, 16:9, 16:13, 19:21, 21:7, 24:2, 24:25, 25:2, 25:6, 25:9, 25:12, 25:15, 25:21, 25:23, 26:4, 26:18, 26:24, 27:18, 27:22
theatre [1] - 6:6
themselves [1] - 3:21
therefore [3] - 10:6, 10:25, 12:6
therein [3] - 2:12, 6:14

thief [3] - 3:12, 3:14, 3:16
third [5] - 9:19, 18:1, 18:12, 22:18, 22:20
third-party [4] - 9:19, 18:12, 22:18, 22:20
thirteen [1] - 14:23, 15:3
three [1] - 24:4
throughout [1] - 4:19
tipping [1] - 24:9
title [6] - 19:13, 20:2, 20:3, 20:6, 20:7
town [1] - 21:5
trained [1] - 20:19
TRANSCRIPT [1] - 1:12
transcript [2] - 1:25, 27:20
trial [1] - 13:6
TRO [14] - 7:2, 7:3, 7:7, 7:19, 13:22, 13:23, 14:7, 23:20, 23:22, 23:24, 24:3, 26:23, 26:25, 27:14
troubled [1] - 22:15
troublesome [4] - 16:15, 16:17, 23:10, 23:11
true [2] - 12:11, 12:16
turn [1] - 13:22
turned [1] - 26:7
turns [1] - 16:22
two [2] - 5:13, 24:23

## U

U.S [2] - 25:8, 25:18
unauthorized [1] - 13:8
unconstitutional [5] - 5:10, 9:24, 10:18, 11:18, 14:10
under [4] - 4:15, 10:10, 22:22, 22:23, 23:1, 23:2
understood [1] - 22:13
unethical [1] - 5:5
UNITED [2] - 1:1, 1:13
United [9] - 1:7, 2:3, 6:1, 9:17, 10:19, 11:22, 16:23, 25:4, 25:10
unlike [1] - 4:13
unpleasant [1] - 5:7
unseal [2] - 10:14, 14:17, 22:23
unsealed [4] - 3:23, 14:20, 17:25, 22:17
unsealing [2] - 17:22, 25:13
unsupported [1] - 5:18
upstate [1] - 21:13
US [1] - 25:14

## V

vain [1] - 5:11
valor [1] - 6:13
value [1] - 20:6
variety [2] - 17:10, 21:16
versions [1] - 26:13
versus [2] - 2:3, 24:5
violated [3] - 18:13, 18:23, 20:24

violation [1] - 15:8
virtue [1] - 17:10
vis [2] - 8:6
vis-a-vis [1] - 8:6
Visa [3] - 2:13, 2:16, 26:15

## W

walked [1] - 6:6
wants [1] - 12:8
website [1] - 15:23
week [2] - 25:21, 27:12
Week [2] - 15:22, 16:3
weeks [1] - 18:3
Weinstein's [1] - 2:14
Western [1] - 21:3
whole [1] - 26:6
WILSON [1] - 1:19
Wilson [1] - 2:7
wise [1] - 6:12
withdrawn [2] - 5:3, 5:8
wonder [1] - 8:21
word [1] - 9:6
words [2] - 19:2, 19:3
write [1] - 3:6
writing [1] - 26:21
wrongfully [1] - 19:12

## Y

YORK [1] - 1:1
York [5] - 1:8, 1:16, 1:20, 1:23, 25:20

## Z

Zyprexa [2] - 2:14, 2:16