1

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

------------------------------x

UNITED STATES OF AMERICA,

                    Petitioner,          New York, N.Y.

          v.                             10-2095-cr


JOHN DOE.

                    Respondent.

------------------------------x

                                         February 14, 2011
                                         1:30 p.m.

Before:

               HON. JOSE A. CABRANES, Presiding
               HON. ROSEMARY S. POOLER
               HON. DENNY CHIN


                                         Circuit Judges

                         APPEARANCES

TODD KAMINSKY
PETER A. NORLING
MARSHALL MILLER
ELIZABETH KRAMER
     Attorneys for Petitioner

RICHARD E. LERNER
     Attorney for Respondent

KELLY ANN MOORE
     Attorney for John Doe


SOUTHERN DISTRICT REPORTERS, P.C.
          (212) 805-0300

1

2

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

3     ----------------------------x

4     UNITED STATES OF AMERICA,

5                     Petitioner,        New York, N.Y.

6          v.                            10-2095-cr

7

8     JOHN DOE.

9                     Respondent.

10    ----------------------------x

11                                       February 14, 2011
                                         1:30 p.m.
12
      Before:
13

14               HON. JOSE A. CABRANES, Presiding
                 HON. ROSEMARY S. POOLER
15               HON. DENNY CHIN

16
                                           Circuit Judges
17
                          APPEARANCES
18
      TODD KAMINSKY
19    PETER A. NORLING
      MARSHALL MILLER
20    ELIZABETH KRAMER
           Attorneys  for Petitioner
21
      RICHARD E. LERNER
22         Attorney for Respondent

23    KELLY ANN MOORE
           Attorney for John Doe
24

25

                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

X12endoen                    SEALED

1

2                    APPEARANCES (Continued)

3    ALSO PRESENT:

4    RICHARD ROE
     JUDY SELMECI
5    DAVID SNYDER
     NADER MOBARGHA
6    MICHAEL BEYS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

X12endoen                           SEALED

1              JUDGE CABRANES:  Good afternoon.  This is United

2   States of America v. John Doe.  It has many captions.  I will

3   call the roll of counsel and the parties in two appeals that

4   have been consolidated for purposes of argument and that at

5   least for now bear the following captions:  Richard Roe v. USA

6   and John Doe, Docket No. 10-2905, and Richard Roe, Petitioner

7   v. USA, Respondent and John Doe 1, John Doe 2, Defendants,

8   Docket No. 11-479.  I ask each of the persons whose names I

9   call out to simply answer my confirming his or her presence.

10              This is not the time for anything more than the word

11   "present" and an indication of whether you are admitted to the

12   bar of this court.  You will each have time to express your

13   views after this roll call and after I make a brief

14   introductory statement.

15              Richard Roe, also known as Frederick Oberlander.

16              MR. ROE:  Present, and I am not admitted in this

17   court.

18              JUDGE CABRANES:  We usually stand.

19              MR. ROE:  I'm sorry.

20              JUDGE CABRANES:  Are you admitted to any federal

21   court?

22              MR. ROE:  Southern District.

23              JUDGE CABRANES:  Counsel for Richard Roe is Richard

24   Lerner.

25              MR. LERNER:  Yes.  I am present and admitted to

X12endoen                    SEALED

1   practice before this court.

2            JUDGE CABRANES:  Thomas W. Hyland.

3            MR. LERNER:  He was unable to make it here today.

4            JUDGE CABRANES:  Unable to make it today.  Judy

5   Selmeci.

6            MS. SELMECI:  I am admitted to practice in this Court.

7            JUDGE CABRANES:  You are admitted to the bar of this

8   court.  Thank you.

9            Counsel for the United States, Todd Kaminsky.

10           MR. KAMINSKY:  Present, your Honor, and admitted.

11           JUDGE CABRANES:  Elizabeth Kramer.

12           MS. KRAMER:  Present, your Honor, and admitted.

13           JUDGE CABRANES:  Marshall Miller.

14           MR. MILLER:  Present your Honor add admitted.

15           JUDGE CABRANES:  Peter Norling.

16           MR. NORLING:  Present and admitted.

17           JUDGE CABRANES:  Counsel for John Doe, Kelly Anne

18   Moore of Morgan Lewis & Bockius.

19           MS. MOORE:  Present and admitted your Honor.

20           THE COURT:  David Snyder of Morgan Lewis & Bockius?

21           MR. SNYDER:  Present, your Honor, and not admitted.

22           JUDGE CABRANES:  Are you admitted to any federal bar?

23           MR. SNYDER:  No, your Honor.

24           JUDGE CABRANES:  You are admitted to what bar?

25           MR. SNYDER:  State of New York.

X12endoen                    SEALED

1       JUDGE CABRANES:  Nader Mobargha of Beys Stein &
2   Mobargha.
3       MR. MOBARGHA:  Present and not admitted to this Court.
4       JUDGE CABRANES:  To what court are you admitted?
5       MR. MOBARGHA:  The Southern and Eastern Districts of
6   New York.
7       JUDGE CABRANES:  And the State of New York?
8       MR. MOBARGHA:  Yes.
9       JUDGE CABRANES:  Is there anyone else whose name I
10  have not called?
11      MR. BEYS:  Yes, your Honor.  Michael Beys of Beys,
12  Stein & Mobargha for defendant-appellee Doe, present and
13  admitted.
14      JUDGE CABRANES:  Thank you.
15      We are here for oral argument in two related matters.
16  As I indicated, they bear captions that at least temporarily
17  employ the coined names of "John Doe" and "Richard Roe" -- the
18  cases that, as I noted, are docketed in the Court of Appeals as
19  No. 10-2905-cr. and No. 11-479-cr.  Both arrived from
20  long-lived proceedings in the United States District Court for
21  the Eastern District of New York before Judge I. Leo Glasser.
22  The record will reflect that, pursuant to an order of the
23  Court, we are here in a closed courtroom.  The proceedings here
24  are being recorded by an official court reporter as well as by
25  electronic means.  The record in these cases shall remain under

1   seal until further order of the Court.

2           These matters came before this Court on an expedited
3   and emergency basis. In documents placed before us, the
4   government and the district court asserted serious concerns
5   about the public dissemination of certain documents, in and out
6   of state and federal court proceedings. These disclosures
7   allegedly are in violation of court orders and allegedly could
8   risk life-threatening injury to identifiable persons, including
9   the person identified in our cases as John Doe.

10          As a result of the way in which these emergency
11  matters were presented to the Court, and in order to try to
12  maintain the status quo in volatile and confused circumstances
13  until this expedited hearing could be held, this Court has
14  entered a series of temporary sealing orders and/or injunctive
15  orders.

16          Because these orders were entered in response to
17  fast-breaking developments, the captions and references to
18  petitioner and respondent are sometimes the victim of
19  typographical errors. The captions will be adjusted in the
20  course of this hearing or immediately thereafter. Suffice it
21  to say for now that, regardless of any obvious typographical
22  errors in the orders, we are all well aware that the sealing
23  orders and temporary injunctions of the Court of Appeals have
24  all been aimed at Richard Roe, an attorney at law, and at his
25  attorneys. It is not John Doe or the government who have

X12endoen                    SEALED

1   sought to disseminate any of the material at issue here.  The

2   only parties who have indicated on the record an intention to

3   disseminate the documents at issue here are Richard Roe and his

4   attorneys.  That much the court knows and that much all of you

5   here know.

6             Accordingly, to avoid caption issues that may cause

7   confusion on the record, let us speak today of Richard Roe and

8   John Doe, not of petitioner or respondent, nor of appellant and

9   appellees.  It is clear from the record, of course, that it is

10  Richard Roe and his lawyers who vigorously and openly wish to

11  disseminate these materials, and thus it is the government and

12  John Doe who wish to prevent Roe and his lawyers from doing so.

13            The first Court of Appeals order of consequence was an

14  order of Judge Livingston sealing the record of this case and

15  referring the emergency motions of the government to a

16  regularly-convened motions panel.

17            We are that panel.

18            After this matter was referred to this motions panel,

19  the Court entered a number of orders that re-affirmed the

20  sealing order of Judge Livingston and otherwise sought to

21  maintain the status quo until this hearing could be held.

22            We have taken precautions to assure that all counsel

23  of record and the party known as Richard Roe receive timely

24  notice of these orders promptly upon entry of the order by

25  e-mail and/or fax and/or phone calls from the clerk's office.

X12endoen                SEALED

1   Unless informed otherwise, we will assume that notice of these

2   several orders was effected.

3            You may wish to take notes of the Court orders to

4   which I refer.  In order to assist you in this regard, the

5   Court asked the Deputy Clerk of Court to provide each of you

6   with copies of these orders before we convened here.  I am

7   informed that sets of these copies were provided to all counsel

8   of record and that each of you has copies of these orders

9   before you at this time.

10           They include:

11           (1) An order of February 8, 2011 granting the

12  government's motion to temporarily seal the docket here and

13  seeking to prevent any public dissemination of matters subject

14  to existing sealing orders;

15           (2) An order of February 9, 2011 denying a motion to,

16  among other things, vacate the court's earlier so-called sua

17  sponte order closing the courtroom for today's hearing;

18           (3) An order of February 10, 2011 that, among other

19  things, consolidated these two docketed appeals until further

20  order of the Court.  It also responded to reports or apparent

21  threats by Richard Roe and/or his counsel to disseminate sealed

22  materials at issue here in other court proceedings or public

23  forums.  The Court responded to these reports or apparent

24  threats in the order of February 10 by, among other things,

25  temporarily enjoining "all parties . . . from disseminating or

1   distributing in any manner and in any court, proceeding, or

2   forum any documents filed in th[ese appeals] or in related

3   proceedings in the Eastern and Southern Districts of New York

4   or the contents thereof, to any member of the public or media

5   except to those persons directly involved in the parties' legal

6   representation, who shall be bound by this order of

7   confidentiality and sealing."

8              The February 10, 2011 order also affirmatively

9   enjoined Richard Roe, who is a member of the bar, to submit in

10  writing by 5 p.m. on Friday, February 11, "a list of any public

11  or media persons . . . to whom he or his counsel have revealed

12  or distributed in any manner the filings in these proceedings

13  or the contents thereof."

14             This February 10 order also affirmatively enjoined

15  Richard Roe to identify with specificity the documents or

16  contents that were revealed or distributed to each such person.

17  This, too, was to have been done by Friday, February 11 at 5:00

18  p.m.

19             I understand that we have a letter that was indeed

20  filed on Friday but that has come to our attention only this

21  morning and which apparently was not conveyed to opposing

22  counsel.  We will deal with that matter in a moment.

23             I think we all know what "under seal" means -- but

24  perhaps not, so I wish to make it clear that for the time being

25  and until this Court is able to sort out the claims of a breach

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

1   of court sealing orders, these proceedings are confidential and

2   the record is subject to a sealing order of this Court, the

3   violation of which will subject any violator of our sealing

4   orders to punishment for civil and/or criminal contempt of

5   court.

6           It should likewise be clear that the parties hereto

7   are always free to seek review of our orders from the Supreme

8   Court of the United States.  That said, while our sealing

9   orders remain in effect, as they may be supplemented by

10  additional orders today or in the near future, any and all

11  papers filed in the Supreme Court referring to matters or

12  documents subject to extant sealing orders shall be filed in

13  the Supreme Court under seal.

14          I have also been informed today that there is a copy

15  of a purported petition for certiorari that was filed or was to

16  be filed in the Supreme Court.  Apparently, it was not filed

17  under seal.  We will expect that counsel of record will take

18  all the necessary precautions to seek to place that material

19  under seal until further order of this Court or of the Supreme

20  Court.

21          These preliminary matters having been completed, I

22  will ask the representative of the U.S. Attorney's Office for

23  the Eastern District of New York to come forward and provide a

24  general status report on the proceedings to date and to provide

25  a brief statement of what relief, if any, the government seeks

X12endoen                SEALED

1   today.

2              We will then hear from counsel for Richard Roe, from

3   whom we likewise will seek a statement of the relief he seeks

4   from this Court.

5              MR. KAMINSKY: Good afternoon. May it please the

6   Court, I'm Todd Kaminsky. And I represent the appellee, the

7   United States. And the government is here today to argue for a

8   continued sealing of the appellate docket and now what is the

9   consolidated dockets before this court.

10             The government, as laid out in its brief, believes

11  that an unsealing of the docket at this time and a public

12  filing and release of the documents that opposing counsel would

13  like to, and Roe and his attorney would like to release at this

14  time pose a substantial probability of prejudice to Doe's

15  safety in this case.

16             JUDGE CABRANES: Could you tell us whether at the

17  moment all the documents in Doe's criminal proceeding and in

18  the Southern District of New York civil matter, are they all

19  now under seal as far as you know?

20             MR. KAMINSKY: The Southern District, your Honor, they

21  are not all under seal. Although I am not a party to that

22  civil proceeding, I've gone on to the electronic PACER system

23  and several documents can be accessed. The main document at

24  issue in that case, the complaint filed by Mr. Roe that

25  contains all of the damaging information about Mr. Doe, that

X12endoen                    SEALED

1   cannot be accessed publicly at this time.

2            The Eastern District docket, currently being presided

3   over by the Honorable Judge Glasser, is completely under seal.

4   There are no accessible documents at this time.

5            JUDGE CABRANES:  Can you describe in general terms why

6   these documents are so sensitive, particularly since some of

7   them seem to be somewhat antique, and there have been in the

8   past some news accounts of the activities or purported

9   activities of John Doe?

10           MR. KAMINSKY:  Yes, your Honor.

11           Mr. Doe's cooperation was of an extraordinary depth

12   and breadth, almost unseen, at least in this United States

13   Attorney's Office.

14           He cooperated, unlike some cooperators who cooperate

15   within one type of organized crime family or over one type of

16   crime, Mr. Doe's cooperation runs a gamut that is seldom seen.

17   It involves violent organizations such as Al Qaeda, it involves

18   foreign governments, it involves Russian organized crime.  And,

19   most particularly, it involves various families of La Cosa

20   Nostra.  By that specifically I mean an individual on the

21   ruling board of the Genovese crime family, a captain in the

22   Bonanno crime family, a soldier in the Gambino crime family,

23   the list goes on and on.

24           The reason why I bring that up, your Honor, is that

25   all of the documents that are currently within the 1998 docket

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

X12endoen          SEALED

1  in front of Judge Glasser mention Mr. Doe's name or refer to

2  his cooperation.

3          Now, at the time of the sealing in 1998 and through

4  the beginning of 2008, Mr. Doe worked in a proactive capacity

5  actively aiding grand jury investigations that involved

6  surreptitious recordings of individuals as well as other

7  undercover actions.

8          JUDGE POOLER:  Counsel, are you satisfied that he's

9  told the truth in all cases?

10         MR. KAMINSKY:  Your Honor, from the record that I have

11 seen, and it was my job for his sentencing to review all of his

12 statements to the FBI, I was not the individual that worked

13 with him, but I have no information that he has been untruthful

14 for any purpose or to any extent.

15         JUDGE POOLER:  You are relying on his information in

16 other cases?

17         MR. KAMINSKY:  Yes.

18         There are no current prosecutions that involve the

19 necessary testimony or information from Doe at this time.  But

20 there got to be a situation where ten years of constant

21 undercover work and arrests and indictments as well as

22 convictions, some very extensive, made as a result of his

23 actions got to a point where it became too dangerous to allow a

24 confirmation of his cooperation to be known.

25         There have been public accounts.  They have been

X12endoen                    SEALED

1    extensive in terms of their allegations, but they have been

2    lacking in terms of their corroboration and the government seal

3    of approval, if you will. The government feels that is an

4    important difference.

5         JUDGE CABRANES: At this particular proceeding I take

6    it that the government is seeking a temporary injunction, that

7    is, for the time being, during the pendency of the appeal,

8    which presumably would sort out all of these issues.

9         MR. KAMINSKY: That's correct. The government

10   certainly envisions a time when part of this docket will be

11   unsealed, and I note to the Court that the actual filing

12   occurred in May, meaning the Southern District complaint that

13   started this whole incident. But only on February 3 and 4 did

14   Mr. Roe or counsel for Mr. Roe finally make a motion, it was

15   actually a demand below to unseal the docket. And I do not

16   know what procedures the district court intends to employ. As

17   U.S. v. Doe from 1995 states, there are numerous ways for a

18   district court to go about determining --

19        JUDGE CABRANES: How many cases are there, as far as

20   you know, in the Southern District of New York that are

21   arguably related to these matters?

22        MR. KAMINSKY: Only one, your Honor.

23        JUDGE CABRANES: Only one?

24        MR. KAMINSKY: Yes.

25        JUDGE CABRANES: This is the one before Judge

                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

X12endoen                 SEALED

1  Buchwald?

2            MR. KAMINSKY:  Correct.

3            JUDGE CHIN:  Judge Buchwald never sealed that case,

4  right?  She just sealed the complaint as opposed to the entire

5  case?

6            MR. KAMINSKY:  That's correct.  Your Honor, I stand

7  corrected.  I have not been involved in the civil matters.  I

8  turned to Mr. Doe's counsel.  I have been informed the answer

9  is three, three related matters.

10           JUDGE POOLER:  Counsel, I read an article in the New

11  York Times that seems to have vital information about John Doe.

12  How can you keep it secret when it's been in the New York

13  Times?

14           MR. KAMINSKY:  Your Honor, there are a number of

15  things, a number of responses to that.

16           JUDGE POOLER:  That was submitted to me I didn't go

17  searching for it.  It was submitted with one filing.  I guess

18  must be from Richard Roe.

19           MR. KAMINSKY:  The government alerted the Court to

20  that.

21           JUDGE POOLER:  OK.

22           MR. KAMINSKY:  In that filing, your Honor, there were

23  three individuals who pleaded guilty together as part of the

24  underlying crime who became cooperators together and then who

25  worked for the government.  One of those cooperators became

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

X12endoen                    SEALED

1  disgruntled, spoke to the New York Times and said, I was there
2  I saw it happen. But the Times itself couldn't find any
3  confirmation of that.

4          It may be that during a future determination of how
5  much could be unsealed that article will play a role. But the
6  government feels that opposing counsel's actions in this case
7  of unilaterally deciding to out the cooperator within the
8  context of a current litigation is just not an acceptable way
9  of doing that.

10          However, your Honor, the government also feels that it
11  is a world of difference between the Times speculating about
12  something and it being enough of a government stamp of approval
13  to warrant retaliatory action against somebody. The government
14  feels at this time that the threats are still extensive enough
15  that even with that article it would be extremely dangerous to
16  have Mr. Doe's cooperation revealed.

17          JUDGE CABRANES: To the extent that we may be
18  restraining dissemination of these materials to the press or to
19  other media, I have a number of questions for you. These
20  questions will be a little specific. They might seem a bit
21  redundant, but I want to make sure that we have everything set
22  forth very clearly on this record.

23          And now I'm turning to the famous question of prior
24  restraint. One way of evaluating a prior restraint is to
25  examine the gravity of the evil discounted by the impossibility

                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

X12endoen                  SEALED

1    that it will occur.

2             What exactly is the danger you fear here if the

3    information in these documents becomes public?

4             MR. KAMINSKY: Your Honor, it's twofold: I'll start

5    with the, if you will, less grave one first.

6             As this Court stated in Amedeo II, the knowledge that

7    someone who is a cooperator and has gone to the extent that

8    Mr. Doe has will be an outed individual who will have to live

9    his or her life in fear I think is something that will dissuade

10   such cooperation in the future. As that Court said, if such

11   informants in the present or future cases anticipate that their

12   cooperation will likely become a matter of public knowledge,

13   valuable cooperation might cease.

14            Second of all, I think it's a very real harm that

15   could come to Mr. Doe himself. The very families that Mr. Doe

16   cooperated against have killed witnesses in the past. That's

17   been recorded. And his cooperation --

18            JUDGE CABRANES: You are speaking of organized crime

19   families?

20            MR. KAMINSKY: That's correct. And his cooperation

21   was not just the type of cooperation not to be noticed. It

22   shut down an enterprise that shut off the valve to tens of

23   millions of dollars.

24            JUDGE POOLER: Do they know who the cooperator is?

25            MR. KAMINSKY: Your Honor, there are a number of

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

X12endoen          SEALED

1  different individuals whom they may suspect. But Mr. Doe was,

2  depending how one looks at it, fortunate to not have to testify

3  over his 11-year career as a cooperator and none of the

4  individuals in organized crime had ever received any, as far as

5  the government knows, any official acknowledgement of that

6  cooperation.

7           JUDGE POOLER:  Has he been sentenced for his

8  conviction?

9           MR. KAMINSKY:  Yes.

10          JUDGE CABRANES:  So I take it that in your experience

11 you are telling us that the danger here can be characterized as

12 great and certain?

13          MR. KAMINSKY:  Your Honor, the government certainly

14 affirms the word "great." "Certain" is something the

15 government is a little bit less comfortable with.  I'm

16 comfortable with the words in Doe of a substantial probability.

17 I believe that probability is substantial.

18          JUDGE CABRANES:  So, if I understand you correctly,

19 you're saying that the critical government interest here is

20 protecting the life of the cooperating witness, among other

21 things?

22          MR. KAMINSKY:  Yes, your Honor.

23          JUDGE CABRANES:  Are there any less intrusive measures

24 other than sealing that would be adequate to prevent the danger

25 we are talking about?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1       MR. KAMINSKY:  The government thinks not, your Honor.

2       The extent of what sealing would be left on this

3   record is still something that is to be worked out.  But the

4   government advocates for a sealing that does not release the

5   real name of Mr. Doe and does not reveal facts that would alert

6   other individuals to his cooperation or conviction.

7       JUDGE CABRANES:  Is it the case that various orders

8   entered by the district court and the Court of Appeals involve

9   no prior restraints on the press or media?

10      MR. KAMINSKY:  That's correct.

11      JUDGE CABRANES:  That is, we are not talking about

12  preventing a news organization from publishing a matter of

13  public concern or impinging on editorial discretion.

14      MR. KAMINSKY:  No, your Honor, and the government

15  feels that's particularly salient in this case.  The Supreme

16  Court in Gentile v. State of Nevada has laid out a clear

17  distinction between attorney speech, especially that in the

18  context of ongoing litigation, meaning not an attorney as a

19  private citizen but as an attorney acting as a hired legal

20  representative and that of the press.  It is regulated by an

21  entirely different standard, and the Supreme Court has said

22  that an attorney's First Amendment rights do not give him a

23  blanket opportunity to commit what are clearly unethical acts.

24      JUDGE POOLER:  Indeed, as we discussed a moment ago,

25  this has been published information about this case has been

                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

X12endoen                    SEALED

1   published.

2                MR. KAMINSKY:  That's correct, your Honor.

3                JUDGE CABRANES:  Let me understand something about the

4   proceedings before Judge Glasser.

5                Do I understand correctly that Judge Glasser only

6   issued a permanent injunction with respect to the presentence

7   report?

8                MR. KAMINSKY:  Correct.

9                JUDGE CABRANES:  And the cooperation agreement, the

10  proffer agreement, and the sealed indictment, what's their

11  status, and do they remain in the possession of Richard Roe?

12               MR. KAMINSKY:  They remain in the possession of

13  Richard Roe.  I believe the copies of these documents remain in

14  the possession of Mr. Roe and other individuals to whom he

15  originally sent them when he filed the complaint.

16               But Judge Glasser has currently not reviewed them, has

17  not resolved that issue.  It was clear to Judge Glasser that

18  the PSR, according to Charmer was a clear issue of law where

19  the document had to be returned by Mr. Roe, but he asked for

20  briefing on what powers he had to ask for documents to be

21  returned that were taken.

22               The issue there was, your Honor, who did the original

23  sealing order apply to, and if Mr. Roe was not a party to that

24  original proceeding did Judge Glasser have the authority to

25  enjoin him.  The government has written on that matter and has

X12endoen                    SEALED

1   briefed the issue that, according to the all writs act, Judge

2   Glasser does have such power.

3          JUDGE CABRANES:  And that matter is still before Judge

4   Glasser?

5          MR. KAMINSKY:  That's correct.

6          I would just like to remind the Court that there was I

7   standstill agreement between Roe and Doe for about four months

8   where nothing happened at all, and then in the fall the

9   litigation resumed again.  And that's when the government filed

10  a letter in furtherance of another injunction.

11         JUDGE POOLER:  Does the government have a theory as to

12  how Roe got ahold of these documents?

13         MR. KAMINSKY:  We do, your Honor.  Judge Glasser held

14  a day of hearings where he called Roe to testify, and Mr. Roe

15  stated that it was a client of his --

16         JUDGE POOLER:  Not John Doe?

17         MR. KAMINSKY:  No.  A client of his had given them to

18  him.  Mr. Doe testified that he kept them in his office, and

19  Judge Glasser came to the conclusion at the end of the hearings

20  that a client of Mr. Roe had stolen them from Mr. Doe, from his

21  office, and had provided them to Mr. Roe.  Judge Glasser said

22  on the record that it was clear that they were taken under

23  less-than-legal circumstances.

24         JUDGE POOLER:  And Mr. Roe still has them?  Attorney

25  Roe still has them.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

X12endoen                    SEALED

1        MR. KAMINSKY: Yes, and copies.

2             JUDGE POOLER: And copies of them?

3        MR. KAMINSKY: Yes.

4             JUDGE POOLER: Have you asked for them back?

5        MR. KAMINSKY: I don't know if we specifically have

6    spoken on a one-to-one basis with them, but we have certainly

7    made clear our position that they are not entitled to them.

8             JUDGE POOLER: You have never requested them to be

9    turned in to the U.S. Attorney's Office.

10        MR. KAMINSKY: Your Honor, Judge Glasser directed

11   Mr. Roe to return the PSR to the U.S. Attorney's Office, and

12   we've never received his copy, so we did not.

13             JUDGE CABRANES: Did that happen as far as you know?

14        MR. KAMINSKY: No, we haven't been given anything.

15             JUDGE CABRANES: You don't know of any reason to

16   believe that the presentence report was returned.

17        MR. KAMINSKY: At this time the government is positive

18   that Mr. Roe has copies of the PSR that he says that he is

19   under no obligation to return to anyone.

20             JUDGE CABRANES: But there is an order directing him

21   to return his copies of the PSR?

22        MR. KAMINSKY: Yes, and he appealed that.

23             JUDGE CABRANES: But we don't know whether he has

24   obeyed that order.

25        MR. KAMINSKY: He has clearly not obeyed that order,

X12endoen                    SEALED

1  your Honor.

2           JUDGE CABRANES: I see. Are you aware whether any

3  authorities in the federal or state governments are

4  investigating or considering criminal prosecution of the people

5  who apparently stole these documents in the first place?

6           MR. KAMINSKY: I have. I recently been in contact or

7  received a call from assistant district attorneys in Manhattan

8  where Mr. Doe's office was. I guess that would be the

9  jurisdiction for the theft. But I am not involved in that and

10  don't know how far it's gone.

11          JUDGE CABRANES: Thank you.

12          Let's hear from -- unless my colleagues have any other

13  questions?

14          JUDGE POOLER: No.

15          JUDGE CABRANES: We'll turn to counsel for Roe.

16          MR. KAMINSKY: Thank you, your Honor.

17          MR. LERNER: Good afternoon, your Honors. I would

18  first like to correct the record. The PSR which Mr. Roe

19  received directly from the former client at the company, who I

20  shall not name, that was handed up to the Court as an exhibit

21  during the proceedings. That original is in the Court's

22  possession.

23          There was further briefing --

24          JUDGE CABRANES: In possession of Judge Glasser?

25          MR. LERNER: Yes.

X12endoen                    SEALED

1    JUDGE CABRANES: Do you or your client continue to

2  have copies of the presentence report?

3    MR. LERNER: Yes, electronic copies.

4    Now, there's affidavits -- I don't know whether your

5  Honors have seen the affidavit from the company's general

6  counsel. He states that when he received the complaint in the

7  Southern District action from Mr. Roe, and this was before

8  there was any injunctive relief or a sealing order issued, that

9  attorney, Mr. Schwartz, disseminated it to many people.

10    JUDGE CABRANES: Who is Mr. Schwartz?

11    MR. LERNER: He was the general counsel of the company

12  who I think I am -- shall I name the company here?

13    JUDGE CABRANES: Yes, I think so.

14    MR. LERNER: Bay Rock. He was the general counsel of

15  Bay Rock. He disseminated when it was received, when that

16  complaint was received from the attorney for Bay Rock. The

17  firm was Akerman Senterfitt. Akerman Senterfitt, a Miami firm,

18  represented Bay Rock. That complaint was provided as a

19  courtesy to the Akerman Senterfitt firm with all of the

20  exhibits.

21    That e-mail was then forwarded to Bay Rock's general

22  counsel who disseminated it.

23    JUDGE CABRANES: Those exhibits of court documents

24  included the presentence report?

25    MR. LERNER: Included the presentence report.

X12endoen                    SEALED

1    JUDGE CABRANES:  Anything else?  Any of these other

2    documents?  Cooperation agreement?

3    MR. LERNER:  The complaint, the cooperation agreement,

4    and the criminal information.

5    So what's before the Court below --

6    JUDGE CABRANES:  Well, you've submitted today a letter

7    dated February 11 which I have not been able to fully digest

8    shall we say.  You know the letter I'm referring to.

9    MR. LERNER:  Yes, if I may summarize it, simply

10   indicating the attorneys with whom Mr. Roe has consulted with

11   regard to various issues that are connected with this.

12   JUDGE CABRANES:  Does the list of persons or the

13   number of persons to whom you just referred as having received,

14   electronically or otherwise, these documents, are they listed

15   in your filing?

16   MR. LERNER:  I don't think we mentioned Mr. Schwartz.

17   JUDGE CABRANES:  Are you going to be able to give us

18   that information in another letter?

19   MR. LERNER:  I think we can supplement that.  I

20   indicated that it was to the best of our abilities at the time.

21   JUDGE CABRANES:  But you think you will be able to do

22   that, to supplement it as best you can?

23   MR. LERNER:  I know that I provided full information

24   as to who I personally disclosed it to.

25   And that included --

X12endoen          SEALED

1    JUDGE CABRANES: What about your client Richard Roe?

2    MR. LERNER: Mr. Roe, as he indicated in his

3    declaration, to the best of his knowledge he has disclosed

4    that.

5    JUDGE CABRANES: This letter to which I have just

6    referred was submitted to the Court. Was it submitted under

7    seal?

8    MR. LERNER: It was not.

9    JUDGE CABRANES: It was not. Was a copy conveyed to

10   counsel for the government?

11   MR. LERNER: No. I indicated in the letter that I am

12   providing privileged information, however, if the Court wishes

13   to disclose it --

14   JUDGE CABRANES: I am a little confused. You didn't

15   file it under seal. You didn't feel it was necessary to keep

16   it from the world. You felt it was only necessary to keep it

17   from the government. But, of course, they can go on the

18   electronic site and print it out. So you don't mind if this is

19   copied and given to the government?

20   MR. LERNER: I would not strongly object.

21   JUDGE CHIN: Was it filed electronically?

22   MR. LERNER: Actually, I did not know that it would be

23   filed in the docket. I was asked by the calendar clerk to

24   provide the letter by 5:00 p.m., and I faxed it directly to the

25   calendar clerk.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

X12endoen                    SEALED

1    JUDGE POOLER: Attached to your letter is the

2    declaration of Richard Roe using his real name?

3        MR. LERNER: Yes.

4        JUDGE POOLER: Wasn't that a violation of previous

5    orders?

6        MR. LERNER: I don't know that Roe could sign a

7    declaration in the name of Roe. I don't know. As I indicated

8    in my letter, I didn't know how to deal with that from a

9    technical perspective.

10       JUDGE CABRANES: Inasmuch as you have no objection to

11   sharing this letter of February 11 with the government, for the

12   sake of expedition, I am going to give my copy to the clerk to

13   pass it to the government, since we can get our own copy off

14   the computer.

15       MR. LERNER: I would like to correct another statement

16   that was made earlier, and then I would like to proceed with

17   the argument.

18       The Court directly asked the government whether any of

19   these documents are out in the public domain. The answer, and

20   now that I can, I think I can fairly -- well, may I state a

21   publication on the record as to where -- OK. Business Week

22   published an article in 1998. That article is called, The Case

23   of the Gym Bag that Squealed. That article indicates that

24   Business Week has a copy of the complaint. That article is

25   still up on the website.

X12endoen                    SEALED

1           I submit that if Business Week has the right, as they
2    obviously do, to disseminate that complaint and to discuss that
3    complaint, so too --
4           JUDGE CHIN:  Did you say 1998?
5           MR. LERNER:  Yes.  And that article is still up.
6           JUDGE CHIN:  And the complaint, which complaint are
7    you talking about?
8           MR. LERNER:  The complaint in the Eastern District
9    action.
10          JUDGE CHIN:  In the criminal case, OK.
11          MR. LERNER:  The Eastern District action, the criminal
12   case, yes.  That article, which remains on the website,
13   indicates that Business Week has a copy of the criminal
14   complaint, which means that they got it from the government or
15   they got it from the FBI.  OK.  So it is not --
16          JUDGE POOLER:  Why does it naturally follow that they
17   got it from the government or the FBI?
18          MR. LERNER:  Well, one would presume that Mr. Doe did
19   not give it to Business Week.
20          JUDGE POOLER:  And Mr. Roe was not involved at that
21   point?
22          MR. LERNER:  No.  Mr. Roe wasn't involved in anything
23   related to Bay Rock until I believe he was retained to
24   represent the aforementioned person or assist in prepping an
25   individual for a deposition.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1       JUDGE POOLER:  When was that?  When did he come in

2  contact with the facts of this case?

3       MR. LERNER:  Well, he's been involved with the facts

4  of the Bay Rock matter for about two years.  He's been

5  preparing a RICO complaint.  It was only in March of 2010 that

6  the employee at Bay Rock who Mr. Roe was assisting to prepare

7  for a deposition said, I know you are working on this case,

8  these documents might be of use to you.

9       JUDGE CABRANES:  Can you set forth precisely how your

10  client obtained the sealed presentence report, the cooperation

11  agreement, and the other documents from those criminal cases?

12       MR. LERNER:  Yes.  There was testimony on the record

13  that Mr. Row obtained them from that individual who he was

14  assisting to prep for a deposition.

15       We supplemented that with e-mails that we submitted to

16  the judge below.  That indicated that these documents were

17  maintained on the Bay Rock company's website -- I'm sorry,

18  internal computer system.

19       Mr. Doe had directed that witness who I'm referring

20  to, the deponent, as part of his job --

21       JUDGE CABRANES:  Who was that witness?

22       MR. LERNER:  May I state his name?

23       JUDGE CABRANES:  Yes.

24       MR. LERNER:  Bernstein, Joshua Bernstein.

25       -- had instructed Joshua Bernstein to keep backup

                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

X12endoen                SEALED

1   copies of all documents, all important documents.

2          So, these documents were on the Bay Rock server.  Now,

3   Mr. Doe testified below that he wasn't a partner in the

4   company.  He was a mere employee.  There's nothing in the

5   record to indicate that he had an expectation of privacy as to

6   e-mails, e-mail documents maintained on the company server.

7   But these documents were -- downloading these documents and

8   archiving them and reviewing them was part of Mr. Bernstein's

9   job.

10         JUDGE POOLER:  Is that a public website or --

11         MR. LERNER:  No, it is a private internal company

12  website.

13         JUDGE POOLER:  Right.

14         MR. LERNER:  So it was obtained lawfully.  And I will

15  not point out that under the Pentagon papers case it is

16  irrelevant whether the documents were obtained lawfully or

17  unlawfully.  They may be used and published as --

18         JUDGE POOLER:  The PSR's have their own sealing

19  regimen that does not relate to any order of the court.

20         JUDGE CABRANES:  We are not dealing here with prior

21  restraint of the press or the media.  That's what the Pentagon

22  papers case was about.

23         MR. LERNER:  Well, your Honors, I would respectfully

24  submit that petitioning the government for redress of

25  grievances by filing a complaint in an action --

31

1    JUDGE CHIN: Do you acknowledge, right or wrong,

2  whether the sealing order was correctly issued or not correctly

3  issued, do you acknowledge that your client has to comply,

4  subject to his right to appeal?

5    MR. LERNER: Your Honor, I am not certain which

6  sealing order you're referring to.

7    JUDGE CHIN: Any order. If there is an order in place

8  prohibiting him from disclosing certain things, do you

9  acknowledge that he must comply with that order subject to his

10  ability to appeal and get relief from a higher court?

11    MR. LERNER: May I read directly from the transcript

12  below with respect to that issue?

13    JUDGE CHIN: I would like it if you would answer my

14  question.

15    MR. LERNER: The answer to the question was answered

16  on the record by Mr. Roe. He said, My understanding is that a

17  sealing order is directed to court personnel and it is not an

18  in personam -- it is not an order against other individuals.

19    JUDGE CABRANES: Judge Chin directed his question to

20  you.

21    MR. LERNER: My answer is no, a sealing order is

22  directed to court personnel. It is not directed to

23  individuals. A sealing order may be accompanied by an

24  injunctive order prohibiting speech.

25    JUDGE CHIN: What is the point of a sealing order if a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

32

1   party could freely disseminate the document? It would

2   completely undermine the point of the sealing order.

3         MR. LERNER: Judge Glasser stated on the record that

4   there is no sealing order in the case, so he could not have

5   violated a sealing order. Moreover, in the testimony, Mr. Roe

6   stated, My understanding is that a sealing order is not an

7   injunction, and he cited in his testimony a case called Roman

8   Catholic Diocese, a Kentucky case, the Supreme Court. And

9   Judge Glasser stated, Your understanding is correct.

10        JUDGE CABRANES: When Roe obtained these documents,

11  were any of them marked in any way that suggested that they

12  were under seal?

13        MR. LERNER: Not the criminal information, not the

14  complaint, not the cooperation agreement. There were markings

15  on the PSR. I don't recall the exact language of the PSR, but

16  it is not a 65(d) injunction, which must be directed to

17  specific individuals. It must state the basis for the

18  injunction. It is not a court order directed to

19  Mr. Oberland -- Mr. Roe.

20        JUDGE CABRANES: You can refer to him by name here.

21  It's all right. We are all under seal here. But, of course,

22  you may not believe in sealing orders. But you can feel free

23  to refer to anyone here by the correct name or the code name,

24  as you wish.

25        MR. LERNER: Well, the PSR doesn't have injunctive

X12endoen                    SEALED

1   language in accordance with Rule 65(d). Therefore, it is not

2   subject to -- it is not an injunction. It could not bar the

3   dissemination by Mr. Roe.

4          JUDGE CABRANES:  Take 60 seconds and wrap up your

5   argument.

6          MR. LERNER:  Your Honors, we are here before the Court

7   on a motion to seal the docket. There has been no record

8   finding in support of the sealing of the docket. There's no

9   evidence that has been submitted, there's argument, but no

10  evidence to support the sealing of the docket. And in order to

11  seal a docket, there must be on-the-record findings

12  demonstrating its propriety.  I would also like to state --

13         JUDGE POOLER:  Don't we have an admission from Mr. Roe

14  that he has these documents?  Isn't that per se evidence?

15  Isn't that enough?

16         MR. LERNER:  To seal the appellate docket?

17         JUDGE POOLER:  Yes.  He has records that the judges

18  thought were under seal already.  He has them and admitted he

19  has them.

20         MR. LERNER:  Yes, he has them.

21         JUDGE POOLER:  Why isn't that enough evidence to seal

22  the record until further order of this court?

23         MR. LERNER:  Because in Hartford Courant this court

24  said it is inappropriate to seal an entire court docket.

25         JUDGE POOLER:  But that is also a newspaper case.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

X12endoen                    SEALED

1    MR. LERNER: I would submit, your Honors, that under

2    Citizens United all individuals have the same First Amendment

3    rights. The Supreme Court stated it expressly. We no longer

4    distinguish between newspapers and individuals.

5    JUDGE POOLER: But newspapers have a special charge in

6    publishing information for citizens. Mr. Roe doesn't have any

7    charge in making this information available to citizens.

8    MR. LERNER: Mr. Roe has the charge to represent his

9    clients, who have the charge to represent, as they are acting

10   in a fiduciary role, they represent they are acting

11   derivatively and representing many investors. So he has a

12   First Amendment right to use and publish these documents as he

13   will.

14   Now I will state very directly, your Honor, the fact

15   that this is not out in the public proves Mr. Roe's good faith.

16   He has never circulated this publicly. He asserts his absolute

17   right to do so, but he has not done so.

18   We ask that the Court abide by U.S. Supreme Court

19   precedent, and if it is to hold that this proceeding is to be

20   closed, that the docket is to be closed, that record findings

21   be made on evidence, and there is no evidence here to support

22   the burden of proof that is on the government.

23   JUDGE CABRANES: Let me ask you directly, you have

24   filed a petition for certiorari with the Supreme Court?

25   MR. LERNER: We have filed a petition to stay this

X12endoen                    SEALED

1    proceeding. Every name that could give anyone notice as to

2    what is going on here was redacted. I provided that to this

3    Court in advance before filing it. I provided it to counsel in

4    advance before filing it.

5              JUDGE POOLER: Did you file it at noon as you said you

6    were going to do?

7              MR. LERNER: It was filed precisely at noon.

8              JUDGE CABRANES: Today?

9              MR. LERNER: No, it was filed at noon on Friday.

10             JUDGE CABRANES: Noon on Friday.

11             MR. LERNER: It was denied.

12             JUDGE CABRANES: It was denied already?

13             MR. LERNER: Yes.

14             JUDGE CABRANES: So there's nothing pending before the

15   Supreme Court at this point?

16             MR. LERNER: That is correct.

17             JUDGE CABRANES: Lest there be any confusion, we think

18   that you should make whatever arrangements are appropriate with

19   the Clerk of the Supreme Court to make sure that this

20   now-defunct proceeding remains under seal for the time being.

21   That is for you to apply, and you can indicate to them on

22   notice to the government that you are doing so at the request

23   of the Court.

24             In any event, any further appeals to the Supreme Court

25   should be, unless you hear otherwise from this Court, properly

X12endoen                    SEALED

1   denominated as under seal.  Is that understood?

2            MR. LERNER:  Yes, absolutely, your Honor.

3            JUDGE CABRANES:  It is so ordered.

4            JUDGE CHIN:  Is it understood that it applies not just

5   to Court personnel but to anyone with notice of it, including

6   your client, without prejudice to your position, but otherwise

7   we are going to be right back to square one.

8            MR. LERNER:  I think we will understand it to mean

9   that any petition will not be widely disseminated.  It will go

10  from my hands --

11           JUDGE CABRANES:  Will not be disseminated, period.

12           MR. LERNER:  Will not be disseminated, period.  It

13  will be in my hands, Mr. Roe's hands, counsel's hands.

14           JUDGE CABRANES:  We will recess, and we may have

15  something for you.  We would like you to stand by, and we are

16  going to consult with the Clerk of Court and others and we hope

17  to have something for you promptly.

18           Thank you.

19           (Recess)

20           JUDGE CABRANES:  It is 2:53 p.m.  I have asked the

21  clerk to enter an order that was entered formally at 2:45 p.m.,

22  copies of which are being delivered at this very moment to

23  those counsel who are present.

24           We will take a moment or two to review the order.

25           Page 2 of course is a description of past proceedings.

X12endoen                    SEALED

1          Page 3 deals with the petition information, the writ

2     of mandamus, which you will note has been denied, and the

3     docket in that proceeding and all documents referenced therein

4     shall remain sealed until further order of the Court.

5          On page 4 we turn to the request by the government for

6     injunctive relief.  There will be a remand to the district

7     court for the limited purpose of enforcing this Court's orders

8     and the related district court orders while the appeal goes

9     forward on the merits.  And the appeal will be expedited.

10         There is a briefing schedule on page 5.  This is a

11    remand under U.S. v. Jacobson.  This panel shall retain

12    jurisdiction over the pending appeal both for the disposition

13    of the appeal on the merits as well as with respect to any

14    further motions practice.

15         Any other appeals from the district court's order

16    granting the permanent and temporary injunctions at issue and

17    any appeals arising from any further proceedings in the

18    district court, including any further petitions for

19    extraordinary writs, including the writ of mandamus.  It is so

20    ordered.

21         Is there anything else anyone wishes to.

22         Why don't you come to the microphone so we can have

23    the benefit of your comments?

24         MR. LERNER:  The matter in the Southern District is

25    presently stayed with an order to Mr. Roe to file a

                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

X12endoen                    SEALED

1  supplemental complaint upon the completion of the proceedings

2  before Judge Glasser.

3        We understand that he's been enjoined from making any

4  further applications. However, he would like to submit

5  application to Judge Buchwald to request further --

6        JUDGE CABRANES: He has not been enjoined from making

7  any further applications. You have misread this order. He has

8  been enjoined from making any dissemination of any of these

9  documents.

10        You can appear before Judge Buchwald at any time you

11  think appropriate, and the only condition that I would place on

12  that would be that you should, in making any presentation to

13  Judge Buchwald, attach to any filing a copy of this order.

14        MR. LERNER: Thank you, your Honor.

15        JUDGE CABRANES: It is so ordered.

16        Yes? Any further applications or comments?

17        MS. MOORE: Your Honor, my name is Kelly Moore. I'm

18  with the form of Morgan Lewis & Bockius. We have been

19  representing Mr. Doe for sometime now. Unfortunately our legal

20  fees have gone through the roof on this matter, and a couple of

21  months ago he retained a former colleague of mine, Mr. Beys, to

22  represent him in connection with the Southern District.

23        JUDGE CABRANES: That's fine.

24        Let me just say I handled your application as a

25  one-judge application, but frankly, not knowing what was going

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

X12endoen                    SEALED

 1 || on at the time that your application arrived, I denied it
 2 || without prejudice. I gather that you are now renewing your
 3 || application to withdraw and to be substituted?
 4 ||         MS. MOORE: Yes, your Honor.
 5 ||         JUDGE CABRANES: The application is granted.
 6 ||         MS. MOORE: Thank you.
 7 ||         MR. BEYS: Thank you.
 8 ||         JUDGE CABRANES: Anything else?
 9 ||         Does the government need any comment or application?
10 ||         MR. KAMINSKY: Very briefly, your Honor.
11 ||         The government during the brief recess had an
12 || opportunity to first look at opposition's letter in terms of
13 || which further counsel they've spoken to and submitted the filed
14 || documents. The government is very concerned generally, but
15 || particularly concerned about one specific attorney who
16 || represents a large amount of individuals accused of being part
17 || of organized crime families.
18 ||         JUDGE CABRANES: I don't mean to minimize the
19 || importance of what you are saying, but I think my colleagues
20 || will agree that your concerns should now be addressed to the
21 || district court. I think you will wish to contact Chief Judge
22 || Dearie to determine who exactly is going to handle the
23 || implementation of the court's mandate. And that judge can hear
24 || any concern or application by you with respect to that.
25 ||         On the other hand, you may wish to complete the record

 1  before our Court and state whatever you think appropriate. You
 2  may wish to include some of that in the briefing on the merits,
 3  but I think if you're asking for relief or you want to apply
 4  for relief in that regard, you should take it up in the Eastern
 5  District of New York.

 6      Is that agreeable?

 7      MR. KAMINSKY: Absolutely, your Honor. There was just
 8  more of a technical question of whether today's sealed
 9  proceeding would bar the government from speaking with one of
10  those attorneys and asking for the documents back.

11      JUDGE CABRANES: No.

12      MR. KAMINSKY: Thank you.

13      JUDGE POOLER: Counsel, before you sit down, this
14  matter before us was triggered by your motion for a temporary
15  stay of the unsealing.

16      MR. KAMINSKY: Yes.

17      JUDGE POOLER: Do you have reason to believe that the
18  documents were about to be unsealed?

19      MR. KAMINSKY: Yes.

20      JUDGE POOLER: What is the basis for that?

21      MR. KAMINSKY: We spoke to the Clerk of the Court here
22  and we were informed that, unless someone makes a motion, it's
23  going to be unsealed. It was sealed as a matter of course when
24  the appeal was filed.

25      JUDGE POOLER: That is, the appeal in this Court?

X12endoen                    SEALED

1    MR. KAMINSKY:  Yes.  Correct.  That was sealed pro

2  forma, and when we called to inquire about it they said not for

3  long, so we made this motion.

4    JUDGE POOLER:  Thank you.  Thank you for clearing that

5  up.

6    JUDGE CABRANES:  Thanks very much.  We are in recess.

7    (Adjourned)