1              UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF NEW YORK
2
- - - - - - - - - - - - - - - X
3
UNITED STATES OF AMERICA      :    98-CR-1101
4
     -against-                     U.S. Courthouse
5                              :    Brooklyn, New York
JOHN DOE,
6
          DEFENDANT,          :
7                                  April 1, 2011
- - - - - - - - - - - - - - - X    11:00 o'clock a.m.
8
          TRANSCRIPT OF HEARING
9         BEFORE THE HONORABLE BRIAN M. COGAN
          UNITED STATES DISTRICT JUDGE
10

11
APPEARANCES:
12
For the Government:      LORETTA LYNCH
13                       United States Attorney
                         147 Pierrepont Street
14                       Brooklyn, New York  11201
                         BY:  TODD KAMINSKY
15                       Assistant U.S. Attorney

16
For John Doe:            MICHAEL BEYS, ESQ.
17                       NADER MOBARGHA, ESQ.

18 For Mr. Roe:           RICHARD LERNER, ESQ.
                         DAVID SCHULZ, ESQ.
19

20

21 Court Reporter:        SHELDON SILVERMAN
                         Official Court Reporter
22                       225 Cadman Plaza East
                         Brooklyn, New York 11201
23                       (718) 613-2537

24

25 Proceedings recorded by mechanical stenography. Transcript
Produced By Computer Aided Transcription.

          SS      OCR     CM     CRR     CSR

1          THE CLERK:  United States versus John Doe.

2          (Appearances noted).

3          THE COURT:  Good morning.

4          THE COURT:  Who is in the back?

5          MR. KAMINSKY:  Kevin Lee, an intern in the Columbia

6  Law School, intern law program assisting with this case.

7          THE COURT:  I'll note the record of these

8  proceedings will remain sealed, although depending on what's

9  discussed, I or the circuit may choose to unseal it after.

10          I've reviewed all the papers.

11          Does anyone have anything they want to add to the

12  papers?

13          MR. BEYS:  Yes, your Honor.  There are two matters,

14  one of which the court may already have on behalf of John Doe.

15  Judge Glasser's scheduling order dated March 23rdrd, I'll pass

16  a copy to your Honor's deputy and also a case we did not cite

17  but is virtually tracking the language of Judge Glasser's

18  order.  It's In Re criminal contempt proceedings against

19  Gerald Crawford, Second Circuit 2003 case; the cite, 329 F.3d

20  131, stands for the proposition under the collateral bar

21  doctrine, a party may not challenge a district court's order

22  by violating it, which is closely related to what Judge

23  Glasser stated in his order.  I pass that to your Honor's

24  deputy as well.

25          THE COURT:  Anything else?

SS       OCR       CM       CRR       CSR

1          MR. LERNER:    This decision was just handed up.

2          THE COURT:    I haven't read it anymore than you

3    have.   You dispute the fact that he cannot challenge a sealing

4    order by violating it?

5          MR. LERNER:    I denied the premise there is a

6    sealing order --

7          THE COURT:    I didn't ask you that, sir.   If there

8    is a sealing order, do you think you can challenge it by

9    violating it?

10          MR. LERNER:    A sealing order is binding on the

11    court staff.

12          THE COURT:    You're just not going to answer my

13    question, are you?

14          Is it your position a sealing order can be

15    challenged by the party who is enjoined from violating it to

16    violate?

17          MR. LERNER:    As stated, the answer is no.

18    However --

19          THE COURT:    That's all I'm asking you.

20          MR. LERNER:    I would like to ask your Honor if

21    you've seen the government's letter of March 17th that was

22    directed to Judge Glasser which moves for the unsealing of the

23    docket.

24          THE COURT:    That's the one with the grid that

25    refers to certain documents, a chart or grid?

SS       OCR       CM       CRR       CSR

1          MR. KAMINSKY:   Yes, two letters that Mr. Roe did

2    not receive the grid that actually reveals what they are, but

3    received the overall argument in terms of what would be in the

4    grid.

5          THE COURT:   Yes, I've seen that.

6          Let me start with that.  I don't think you can do

7    that.  The circuit has entered an order.  It's on appeal.

8    Judge Glasser's decision is on appeal.  I don't think he has

9    jurisdiction to go ahead, modify now.  I'm sure if you want to

10   unseal certain documents and you have the agreement of

11   Mr. Doe's counsel and, Mr. Learner, I can't imagine why he

12   objects to any unsealing, do a consent motion to the circuit,

13   refer to me --  they may decide it themselves but the notion

14   suggested in a footnote in your letter Judge Glasser still has

15   jurisdiction to modify his orders that are on appeal, he'll

16   determine that ultimately.

17         MR. KAMINSKY:   That's fine.  It was important to

18   the government that it alert --

19         THE COURT:   Appear reasonable in saying certain

20   things don't have to be sealed?

21         MR. KAMINSKY:   Yes.

22         THE COURT:   I understand that.  You have to do it

23   the right way.

24         MR. KAMINSKY:   We appreciate that, your Honor.

25   It's certainly we take what you say to heart, also let you

1  know we did not cavalierly send the letter to whatever judge

2  was closest.  We talked about it and after our understanding

3  of how the case unfolded, we did think it was appropriate,

4  although certainly after speaking with Mr. Doe's counsel, we

5  understand there are arguments against that.

6          One of the reasons we forwarded to your Honor

7  yesterday our letter to the Second Circuit was a bit more of

8  an explanation as to why we did what we did.  Of course,

9  hopefully, now the Second Circuit and we would be happy if it

10  were the case, would tell us, the government to hold your

11  horses, you'll get to the unsealing when we say you do.

12          THE COURT:  As I say, I suspect without knowing if

13  everyone is consenting, the circuit will allow modification of

14  its order or Judge Glasser's order.  You're divested by the

15  notice of appeal if Judge Glasser's injunction and interim

16  injunction from the circuit.  I don't think there's power of

17  the district court to go ahead and decide that.

18          The other point I will dispose of quickly.  With

19  regard to Mr. Beys's argument, one of the things the circuit

20  intended me to do was to remedy or conduct hearings on prior

21  violations.  I don't see that at all.  That is not part of the

22  implementation directive I see from the circuit.  That I think

23  is not going to happen as to past violations until the circuit

24  resolves the appeal.  If you feel differently, you want my

25  mandate to be expanded, you could make a motion to the circuit

1 to do that and the circuit will determine that how far it

2 thinks best.

3          Mr. Beys?

4          MR. BEYS:   Nothing, thank you.

5          THE COURT:   With regard to Mr. Lerner's

6 application, there are two problems.  Number one, still much

7 too amorphous to lead me to any other conclusion you're

8 looking advisory opinions that could be used to gradually wear

9 away at the injunctive orders in place.  No need to bother to

10 deny that.  I will tell you it is sufficiently vague that I'm

11 unable to give you the advice you're looking for.

12          Mr. Roe says he's going to commence a lawsuit.  I

13 won't know whether it violates the injunction the circuit has

14 entered until he goes ahead and commences that lawsuit.  I

15 think there's a very good chance, depending on what he puts in

16 there, that it will.

17          There are numerous, very vague references to matters

18 in the public record.  Some of the public record, you tell me

19 matters are discussed.  They're not discussed.  The press

20 release, for example that was issued in 2000, at least the

21 copy I've been given does not refer by name to Mr. Doe at all,

22 anyone.

23          MR. LERNER:   It does.

24          THE COURT:   My copy doesn't.  I'll tell you, I've

25 been through it with a fine-toothed comb.  Maybe I have a

1   redacted copy.

2           MR. LERNER:   Footnote, if you're looking at the

3   press release, JA1153, footnote number 2 on the bottom of that

4   page.

5           THE COURT:   The press release had footnotes?

6           MR. KAMINSKY:   The government can concur with that

7   fact.

8           MR. BEYS:   As does Doe, your Honor.

9           MR. LERNER:   Doe's counsel agreed in their letter

10  that Roe has the knowledge in his letter that Roe may

11  disseminate documents that are already in the public domain.

12  Therefore, we would like a declaration by this court that he

13  may do so.

14          MR. BEYS:   We would object, Judge.

15          THE COURT:   I'm not doing that.  What you can do,

16  if you want me to make a ruling, to give me specifically the

17  documents that you say are in the public domain and then we'll

18  have a hearing as to whether everyone agrees those are in the

19  public domain.

20          MR. LERNER:   Your Honor, I provided the court with

21  the joint appendix with tabbed documents that we contend are

22  already in the public domain.

23          THE COURT:   Your request was not phrased just in

24  terms of distributing those documents.  It was phrased in

25  terms of extrapolating from it, allowed that possibility.  I'm

1  not going to allow you to extrapolate from that.  What you're

2  going to have to do, if you want any kind of advisory opinion

3  from me, is to get preclearance of exactly what it is you're

4  going to say.

5          What I suggest to you, you submit a chart.  The

6  chart has a left column of single-sentenced statements.  It

7  has a right column of where those statements are in the public

8  domain.  If that's the case, then I may approve that.

9          Mr. Beys, why would I not approve that?

10         MR. BEYS:   We would like the opportunity to speak

11 to the question of inadvertent disclosure.  What we said in

12 our papers, we don't think we can stop Mr. Roe from talking

13 about or disseminating what's already out there.  We could be

14 wrong.  The Second Circuit could have a different view of it

15 and, moreover, we would like the opportunity to brief the

16 issue of whether the government did it inadvertently 11 years

17 ago when it spent 13 years trying to conceal that fact.

18         THE COURT:   But if it's in the public domain, isn't

19 it already out there?

20         MR. BEYS:   Like I said, your Honor, we think that's

21 the case.  We wrote that.  We could be wrong.  But yes, it's

22 already out there, names Mr. Sater by name in one line.

23         THE COURT:   Right.  That's what I'm concerned about

24 the tone and nature of Mr. Learner's paper, that you will take

25 one small reference, combine it with other things you know

1  from documents that were not in the public domain and give

2  that public domain statement of a minor nature a whole new

3  life and that you will not be permitted to do.

4  I'll be glad to consider specific statements that

5  you wanted to make with sources and then I'll determine if you

6  can make those statements.

7  I also have to tell you, Mr. Learner, I thought your

8  papers were absurd.  It was like a comic book characterization

9  of what legal papers are supposed to look like.  When you have

10  Mr. Roe talking about engineering decompensation, I just can't

11  imagine any federal judge finding that the least bit

12  persuasive.  I'm looking for facts in here.  I've got an

13  affidavit, reads similarly to some of the pro se affidavits I

14  get.  I don't understand what you're trying to achieve.

15  Is this the way you write in all your cases?

16  MR. LERNER:   This is not an ordinary case.  We felt

17  it was warranted.

18  THE COURT:   I think it's not.  No case is ordinary.

19  Every case is entitled to particular special attention and

20  effective advocacy is effective advocacy no matter what the

21  context is.  If you want to get to me, at least, or any other

22  judge that's going to touch this case, let's do legal papers

23  the way legal papers are normally done, not like a comic book.

24  Anything further?

25  MR. BEYS:   One question.  This is what I meant to

1  ask before, your Honor.  Regarding our contempt motion, in

2  addition to writing to the Second Circuit for clarification,

3  would your Honor have a problem with us bringing an order to

4  show cause to Judge Glasser who does still retain jurisdiction

5  over the underlying case?  We believe, as we've written --

6         THE COURT:  Don't you want to wait for the circuit

7  to affirm or reject those injunctions?

8         Why do you need to do that now?

9         MR. BEYS:  For one reason, your Honor.  There is a

10  statement that he's going to file a lawsuit in state court.

11         THE COURT:  That won't be addressed.  If he does

12  that and he has to be put in jail because he does something

13  like that, that will not be addressed by your order to show

14  cause for past violations.

15         MR. BEYS:  That's true.  That is our one concern.

16         THE COURT:  As I said, I'm not advisory opinions.

17  The next thing Mr. Roe may hear from me is why he shouldn't be

18  put in the MDC for violating the Second Circuit's injunction.

19  That's all there is to it.  There's nothing more that we can

20  do at this point.

21         MR. BEYS:  Thank you.

22         THE COURT:  I will tell you, Mr. Learner, the

23  threats, they fall on deaf ears.  I have no investment in this

24  case.  If Mr. Roe doesn't violate the injunction, I don't have

25  anything to do.  If he does, I have something to do.  That's

1   it.

2          Anything else?

3          MR. BEYS:   No, your Honor, thank you.

4          THE COURT:   Mr. Kaminsky?

5          MR. KAMINSKY:   Very briefly.  The Second Circuit

6   mandate does specifically entrust your Honor with enforcing

7   the district court's orders.  One such order that still has

8   not been complied with -- it is baffling -- they still

9   maintain the very orders that are subject to the injunction

10  and the TRO.  The case that was handed up to your Honor

11  earlier before by Mr. Beys, the in re contempt proceedings of

12  Gerald Crawford, specifically state that a litigant does not

13  have the ability to say "I'm going to violate the order, hold

14  on to this stuff and wait for the circuit to prove I'm right."

15  He must hand over and/or place those documents in some type of

16  transitory place and wait for the circuit to rule, but he

17  still has them, in direct contravention of the court's order

18  saying give them back, give them to the U.S. Attorney's

19  Office.  No one gave anything.

20         THE COURT:   The directive to give them back is in

21  Judge Glasser's order, not the circuit, right?

22         MR. KAMINSKY:   Right.

23         MR. LERNER:   I would like to object to that

24  statement, your Honor.  There is no order directing the

25  destruction of electronic copies or return of photocopies.

1  The original that was provided to Mr. Roe by Mr. Bernstein,

2  lawfully, at that, was handed up to court.  It is in the

3  court's possession.  It was stated at the hearings that the

4  original has been returned.  Therefore, there is no further

5  original to be returned and there are only electronic copies.

6          THE COURT:  Mr. Kaminsky, quote for me the portion

7  of the order upon which you are relying.  Direct me to that.

8          MR. KAMINSKY:  The Second Circuit mandate of yours

9  or Judge Glasser's order to them?

10         THE COURT:  I assume you will agree with me the

11 Second Circuit's order in and of itself does not require the

12 return of either originals or copies, right?  It incorporates

13 Judge Glasser's orders?

14         MR. KAMINSKY:  That's correct.  It says you have

15 the limited mandate of implementing and overseeing compliance

16 with our orders and the previous orders entered by Judge

17 Glasser.  That's a quote.  One of those orders, your Honor,

18 because I'm currently immersed in drafting the appeal, I have

19 two hearings singed into my head and at the end of the

20 July 20th proceeding, Mr. Doe's counsel at the time,

21 Ms. Moore, says specifically to Judge Glasser we would like

22 you to include in the TRO copies of the documents because

23 although Mr. Roe is telling you he's given them back to you,

24 what good is that if he has the copies?  The judge said I

25 agree.  Mr. Learner's response is are you issuing a further

1  TRO?  The judge says I am.

2             THE COURT:   I need to see that.  I'm sure you're

3  not misrepresenting that but I need to see it.

4             MR. LERNER:   There's no specific directive by the

5  court --

6             THE COURT:   I'll look at it and then I'll see.

7             MR. BEYS:   If the government doesn't submit it,

8  we'll gladly submit it to your Honor.

9             THE COURT:   Does anybody have it here?

10             MR. BEYS:   We don't have the transcript here.  We

11  have a joint appendix.

12             MR. KAMINSKY:   I point you to, beginning on line 4

13  of page 706 of the transcript.

14             THE COURT:   Mr. Learner, you want to respond to

15  what the transcript says?

16             MR. LERNER:   May I take my copy?

17             THE COURT:   Sure.  That's our copy but you can look

18  at ours or we can trade, whichever you prefer.

19             (Pause.)

20             MR. LERNER:   Page 706 of the joint appendix?

21             THE COURT:   Correct, line 4.

22             (Pause.)

23             MR. LERNER:   There's no specific directive by Judge

24  Glasser to destroy the electronic copies of the document and

25  there's been no dissemination of the document.  Therefore,

1  there's been no violation of any TRO and we would request

2  further briefing before you wish to entertain this issue.

3            THE COURT:   No, it's absolutely clear on its face

4  Judge Glasser intended you to destroy electronic copies and to

5  return any photocopies.  If that is not done by the end of

6  Monday, I will hold your client in contempt.

7            MR. LERNER:   We would need to brief that.  I would

8  like the court to be aware it is actually impossible to purge

9  electronic files.

10           THE COURT:   I understand.  They can always be dug

11  up by a technician, that the most you can do is overwrite

12  them.  You can also remove from the first level of the

13  recording media those documents so that they cannot be

14  accessed by anyone but a technician.  That's fairly easy to

15  do.

16           Mr. Learner, are you playing games with me?

17           MR. LERNER:   No.

18           THE COURT:   You think I don't know how these things

19  work?

20           MR. LERNER:   No, I don't know what your Honor

21  knows.

22           THE COURT:   They're stored on files, on the

23  C drive.  You find the copies, you delete them.  I understand

24  that doesn't mean a technician couldn't unpeel the layers of

25  data written over them and find them at some point.  I'm not

1  requiring you to do that at this point but I am requiring you

2  to delete them.  Don't tell me that can't be done, sir.

3           MR. LERNER:   Your Honor, these files are backed up

4  every night on the computers.  They're on an off-site service.

5  That is the problem.

6           THE COURT:   The backups?

7           MR. LERNER:   Yes.

8           THE COURT:   Mr. Kaminsky, what's your view as to

9  backup tapes?

10          MR. KAMINSKY:   Your Honor, I'm actually trying to

11  process this.  I think, programs -- the best thing to do is to

12  possibly get an affirmation from someone that works at the

13  company that that backup will be kept in a certain place by a

14  certain proprietor, will not be able to be accessed.

15          There is the possibility the circuit will disagree

16  with Judge Glasser and then that document may need to be

17  accessed.  We just don't think they should have access to it

18  at this time.

19          THE COURT:   I think, for that reason, it's good

20  enough for now to have no accessible copies from any desktop

21  computer.  The fact that they're in backup tapes, we might

22  require a purging of those later, but we will not require it

23  now.  If they're on backup tapes, that's fine.  I don't want

24  anyone with access to the network that your client uses to be

25  able to get into that network from a desktop or laptop

1  computer and access those documents, but solely resident on

2  the backup tapes.

3         Anything else?

4         (No response.)

5         THE COURT:    Thank you all.

6          This transcript is available to both sides if they

7  wish to order it.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25