UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------)
*IN RE* UNSEALING THE DOCKET AND CONTENTS                          12-MC-150 (ILG)
THEREOF OF U.S. v. SATER, 98-CR-1101 (EDNY)
----------------------------------------------------------------)

## OMNIBUS MOTION

1.  **For disqualification of Federal Judge I. Leo Glasser pursuant to 28 U.S.C. §455;**

2.  **For immediate disclosure of all *ex parte* communications in this and related matters;**

3.  **For referral to the United States Attorney, NDNY, for the criminal investigation of the following attorneys for their participation in racketeering enterprise corruption and criminal conspiracy in connection with this and underlying and related matters;**

| *At Mobargha, Stein, Beys* | *At Morgan Lewis Bockius* | *At the U.S. Attorney* |
|---|---|---|
| Nader Mobargha | Kelly Moore | Todd Kaminsky |
| Michael Beys | Leslie Caldwell | |
| | Brian Herman | |

4.  **For the disqualification of Mobargha, Beys, and Kaminsky, for their participation in the aforesaid racketeering enterprise corruption and criminal conspiracy;**

5.  **For expedited discovery and subsequent full due process adversarial hearing in connection with the above requests, for the determination, *inter alia*, whether the aforesaid racketeering enterprise corruption and conspiracy so infect the Eastern District that its disqualification in the entirety is required in the interests of justice;**

6.  **For the immediate disclosure of Sater's 2004 and later PSRs in the interests of justice;**

7.  **For the immediate disclosure of all documents and transcripts in this and all related matters within this court's jurisdiction on account of the constitutionally insurmountable public interest in knowing all that has gone on in such matters.**

8.  **For stay *sine die* of the Rule 11 order to show cause pending resolution of the above.**

Frederick M. Oberlander
Counsel for Lorienton Palmer
28 Sycamore Lane (PO Box 1870)
Montauk, NY 11954
212-826-0357 phone
212-202-7624 fax
fred55@aol.com

## PRELIMINARY STATEMENT

The accumulation of events now makes inarguable the conclusion that AUSAs, defense attorneys, and probation officers have committed and conspired to commit multiple, related crimes, engaging in enterprise corruption in common, coordinated zeal to bring about and cover up Sater's illegally concealed racketeering conviction, his use of that concealment to commit further crime, and their roles in its misprision, aid, and abettance. They have forfeited the right to continue in this and related proceedings, and, we aver, to practice law, for that matter to remain at large in society without being called upon to stand and deliver, to answer for their crimes.

The same accumulation of events also makes inarguable that your honor presides over this and related matters in violation of 28 U.S.C. §455(a) and (b)(1), having failed to disqualify yourself despite Congressional mandate you do so because of, respectively, your appearance of bias and lack of impartiality, palpably obvious to, let alone reasonably questioned by, an objective, informed observer; and (2) your knowledge of disputed evidentiary facts you obtained outside this proceeding, or *ex parte*, *a fortiori* facts which you have wrongfully withheld from us.

**Now, given what must appear to that objective observer to be intentionally chilling, retributive, *in terrorem* threats to sanction us for exercising our First and Fifth Amendment rights - rights no court may deny - to introduce relevant evidence in support of meritorious argument, <u>and in particular in light of the documentary evidence we now proffer</u>, that observer cannot rationally conclude but that your honor appears to be in criminal conspiracy with *at least* Nader Mobargha and Michael Beys, Sater's lawyers, to deprive us and our clients of our rights. Our and our clients' interests thus align with those of Sater's apparently still uninformed victims (many of whose identities we now know are known or available to you) in respectfully demanding you leave the bench in these matters forthwith.**

3

## ARGUMENT

On September 10, 2012, the Second Circuit upheld a sentence of 8 years and $25,000,000 in fines given Myron Gushlak for his conviction, on plea, for securities fraud. The court expressly held that Judge Garaufis committed no error in fixing such a huge fine and refusing to credit for acceptance of responsibility because Gushlak, who had, like Sater, cooperated in return for keeping his conviction secret for years, just as this court kept Sater's conviction secret for years[1], spent most of the "secrecy years" defrauding others, starting with his own business partners, from whom he illegally, fraudulently, concealed his secret plea to securities fraud, and from new victims to whom they sold securities but, again, from whom he illegally withheld the fact of his secret conviction, the court finding no error in the trial court's conclusion that this denial of reality, this concealment fraud especially in the presence of a duty to disclose, marked Gushlak as a recidivist fraudfeasor who deserved to have the book thrown at him. This is from Judge Garaufis's comments during Gushlak's sentencing proceeding 03-CR-00833:

> [D]efendant was far from a model cooperator. There are substantial and troubling indications that defendant regarded the secrecy of his cooperation not as a necessary protection of his future usefulness to the government but as a license to continue to deceive those with whom he conducted business.
>
> * * *
>
> The court can only infer from this behavior that defendant was less concerned with this court's sentencing decision than he was with presenting himself from being outed as a convicted felon and fraudster because of the obvious negative impact that information would have on his business activities.
>
> While defendant argues that he lied to [his business partner] because he believed he was obligated to do so by his cooperation agreement, **he freely admits that he did not at any time seek the government's advice on how to handle the inquiry which prompted his lie.**

---

[1] There is no way to know whether keeping Gushlak's conviction secret was plausibly legal, because Judge Garaufis still has not docketed the transcript of his plea hearing even after almost a decade now. We can reasonably conclude it was illegal given that it would have to have been a secret blanket sealing order and as we have argued in our underlying motion to unseal and as is currently before the Supreme Court, even a real (as in actually existing) blanket sealing order is facially unconstitutional, as it eliminates the court's obligation to continue to make individual closure decisions. Note again this is another EDNY case where way after sentencing things are still hidden.

Indeed, defendant's sentencing submissions indicate that keeping secret the fraudulent schemes that are the basis for this conviction has always been a central goal of defendant's cooperation.

\* \* \*

[D]efendant earned a fortune speculating on penny energy stocks mere months after telling the government that he lacked the means to pay a relatively small forfeiture judgment, but failed to tell the government this until after he funneled what now amounts to $50 million into an irrevocable trust he established for the benefit of his children.

**Defendant admitted to the court that even though he knew he would be subject to a fine and an order of restitution as a result of a guilty plea, defendant did not consult with the government before placing these substantial assets into a trust which is potentially beyond the reach of this court's legal process. Defendant never approached the government to ask how he might use his sudden wealth to pay restitution to the victims of his criminal conduct.**

The Second Circuit and Judge Garaufis know a serial securities fraudfeasor and mobster who corruptly takes advantage of "sealing orders" to defraud people when they see one. They saw one. We presume this court does as well; for example, it had one in the witness box on June 21, 2010 when Sater testified before it, and was looking right at him.

The Second Circuit didn't think that Gushlak was justified in committing these concealment frauds[2] and hiding his money from what he knew would be an inevitable fine and order of restitution. Perhaps Gushlak's cooperation agreement required him to turn over all his assets to fulfill any restitution order[3].

After all, Sater, like Gushlak, hid wealth from what he knew would be inevitable orders of restitution, including hiding $8,000,000 in partnership distributions from Bayrock by

---

[2] Perhaps they would have if Gushlak had argued his safety was at risk if he didn't steal the money? You know, like Sater argues, "I had to commit all these concealment frauds at Bayrock by hiding my conviction or my life would be in danger, really, I only participated in hundreds of millions of dollars of notional concealment fraud to protect my family, I swear, I had to do it..."

[3] For that matter, perhaps Sater's cooperation agreement requires the same and Sater and those protecting him and their culpability in the coverup would do anything to avoid revealing that. Of course, this court can't unseal what isn't on its docket to begin with, **which is why counsels, knowing cooperation and plea agreements are not kept in judicial files, requested the court take notice of the absence from its own docket of the cooperation,** upon which notice we would move for an explanation why court papers have been filed left and right for years claiming Sater's plea agreement and cooperation are "sealed" when they aren't even in court.

pretending they were "loans" (if correctly accounted for as distributions they would have been subject to charging order liens in favor of any victim with a restitution order) and lied to his probation officer that he had no money, which the officer duly reported in his PSR, notwithstanding Sater was living in an $11,000/month rental mansion, about to buy a $1,800,000 home, and skimming nearly $1,000,000 a year from the firm.

Of course, we can only make public that all that and more are revealed in Sater's 2004 PSR because the Supreme Court of the United States gave us the right to do so. **If it had been up to this court, no one would ever know of the criminal corruption of the probation officer and DOJ (but see *infra* for yet more), at least not from us, because this court gagged us from telling anyone without even hearing any argument as to prior restraint, core speech or anything else. The First Amendment simply didn't exist in Brooklyn for this court[4].**

And of course because we can make public that those admissions against penal interest (as to the probation officer), of his knowing participation in what Judge Garaufis and the Second Circuit have confirmed is aggravated felony fraud, it follows we can make public the inescapable conclusion that this court knew perfectly well what was going on with Sater, or was willfully blind to it, unless this court would have us believe it doesn't read PSR's, even when it's issuing prior restraints it doesn't read them, or at least didn't read Sater's, and didn't read the allegations in the RICO complaint it has had for almost three years now.

And still this court did nothing to unseal anything for years, ignoring all our requests to do so, ignoring everything until the accident that let it out.

---

[4] Charmer industries never reached the First Amendment issue, presumably because no court has ever held that state law enforcement agencies enjoy the same First Amendment rights as do Mr. Oberlander, Mr. Kriss, Mr. Ejekam, and everyone else this court ordered not to tell of its apparemt involvement in this corruption.

Nor is this just Gushlak. We call the court's attention to the Ageloff restitution matter, just argued weeks ago before the Second Circuit. One issue there is whether Judge Dearie properly ordered Ageloff, a fellow fraudfeasor who often worked in cooperation with Sater, Ageloff at Genovese-controlled Hanover Sterling and Sater at Genovese-controlled White Rock, properly ordered Ageloff to pay some $200,000,000 in restitution in 2011, fully 13 years after he pleaded guilty, roughly at the same time Sater did to substantially similar underlying facts.

One thing we do know is that Ageloff wasn't in the court that day to hear argument, because he's serving time in federal prison in Florida. His crime? Hiding his wealth, including in trusts he set up for his wife and children, to evade what he knew would be inevitable fines and restitution (and presumably extrinsic civil liability, though that itself wasn't charged).

So let's see:

When Gushlak takes advantage of his "sealed" secret fraud conviction to perpetrate concealment fraud against his business partners and new victims, and hides the millions he earned to keep such from his victims, including by family trusts, he gets slammed with 8 years in federal prison for securities fraud and a total of $42,000,000 in restitution and fines.

When Ageloff hides his millions to keep it from his victims, including by family tursts, he gets five years in federal prison for money laundering and a $200,000,000 restitution order.

When Sater hides his millions (if the court look carefully it will find – wait for it – that in 2008, Sater funded what we'll call an "EDNY Special" family trust for, you guessed it, his wife and children by transferring his membership interests in Bayrock to the trust, which then flipped it right back to Bayrock for approximately $1,500,000; why be surprised, hiding wealth in trusts is the "thing to do" among EDNY felons who want to evade all responsibility to their victims)…

**When Sater hides his millions – <u>including the millions he received for surrendering</u> <u>the membership interest in Bayrock by trust which proves his felony perjury when he</u> <u>testified before this court on June 21, 2010 that he was never a member, perjury for which</u> <u>his probation could have been revoked and he resentenced to nearly 20 years in prison on</u> <u>the RICO charges</u> – the only thing that happens is that those who find out about it are threatened with imprisonment if they tell anyone on a claim that it's necessary "to protect his safety" yet are barred from introducing any evidence anywhere that such claims are at least now, and for years have been, utterly false, fraudulent and pretextual, *infra*.**

(Parenthetically, given the request of Sater's lawyers this morning that the court rule the RICO complaint utterly without merit [of course it has no jurisdiction to rule anyway, as the complaint is not before it, but before Judge Engelmayer of Southern District[5]], the court should consider itself hopelessly conflicted as a ruling that the complaint, which as the whole world now knows contains such or similar allegations of Sater's concealment frauds, nevertheless states no cause of action under any plausible theory of existing or even new law, it's open season for cooperators now, even more than usual in the Eastern District, claims by the Gushlak victims [we understand there are quite a few in Germany alleging he defrauded them of huge sums while hiding his conviction] must fail. In the alternative, if the court finds the complaint states meritorious claims, it will – and ought to – have much to answer for in gagging this up for years. No court can credibly rule in such a situation in which it effectively indicts itself if it finds – as it must – that somewhere inside a 168-page 800 paragraph complaint written with the benefit of the finest legal thought in the country in the substantive law is not devoid of merit.

---

[5] Mr. Sater and Bayrock Group Inc., a money laundering artifice he created to hide still more money he took from Bayrock, have waived service of the complaint and as to them issue has been joined. They are certainly free to move before Judge Engelmayer for whatever relief they can get.

Back to Gushlak. Recall that Judge Garaufis said,

> While defendant argues that he lied to [his business partner] because he believed he was obligated
> to do so by his cooperation agreement, **he freely admits that he did not at any time seek the
> government's advice on how to handle the inquiry which prompted his lie.**

Now, anyone with an IQ above wood would know that, just as it's been said that "One may have a First Amendment right to free speech, but one doesn't have a First Amendment right to be a postman," even a cooperation agreement doesn't mean you can put yourself in harm's way by, you know, taking a partnership in a firm issuing securities and borrowing billions of dollars and having to report about and disclose its principals' prior fraud convictions. There are plenty of other jobs one can take that don't require stealing money from new victims and defrauding your partners in breach of fiduciary duty.

(If Sater/Gushlak had been a lawyer, would this court have minded if he continued to argue before it after his conviction, hiding it from the bar? We're curious. Doctors hiding their convictions from medical licensing boards? Teaches hiding convictions from schools?)

But all this pales behind certain events which occurred in April and May 2011, which began what now with this court's order to show cause force our hand and compel we move to recuse for the appearance of bias based on collusion and criminal conspiracy.

In late April 2011 Mobargha and Beys approached Richard Lerner and said that the EDNY United States Attorneys Office was twisting their arm to force a settlement because, they said, the AUSA's were terrified that the Second Circuit would uphold our First Amendment right to reveal what we knew from the PSR and other documents as to all this apparent corruption.

Attached hereto is the settlement proposal they came up with. It is notable for several things, but most notable for the fact that, first, we would have to withdraw our First Amendment

arguments and never make such again; second, Sater would admit the truth, but only in secret, sealed RICO proceedings before Judge Buchwald, apparently again the hell with his victims; and third, and most important, Sater would testify (and so presumably not perjure himself) that the government told him to hide his conviction, even from Bayrock

The government told him to do what Judge Garaufis and the Second Circuit deem serial recidivist crime and repetitive criminal fraud.

**For the sake of those involved, they had better hope they have and will produce upon subpoena a very high-level DOJ authorization for that, specifically noting that Sater was authorized to participate in multi-billion dollar notional frauds as a top echelon level informant – and as concealment fraud and conspiracy are ongoing crimes they had better hope that's open-ended, as it should be self-evident that if it's a crime to hide your conviction and misuse the sealing to facilitate it, it's a crime to conspire to do so or to aid and abet it or act to conceal it (ask the Mayer Brown partner just convicted of securities fraud for helping REFCO hide its corrupt books) and operation of an association in fact pursuant to a scheme to do so, a single scheme, let alone the others we're uncovering in the Eastern District, see supplement, creates a cause of action in enterprise corruption).**

But this court doesn't belong to the executive. This court has no luxury to refuse to enforce the laws as written. Not. Once. Not. Ever. Not. Ever. *Ex Parte United States* (1916).

Admittedly, were we to base a motion for recusal on grounds of this court's apparent bias, stating the above and more, listing every ruling devoid of legal merit, claiming the appearance of bias in the court's desire to facilitate and participate in this cover-up, we would be subject to counter-argument that all this was just a (improbably consistently one-sided) series of appealable error, that we had made a merits-based argument, though this court well knows that

merits based arguments in egregious cases like this can satisfy the appearance standard of §455(a). No, something else happened that put this over the top, viz. the Rule 11 motion.

**Attached hereto is the email cover letter from Mobargha and Beys which says, in a nutshell, Mr. Oberlander, Mr. Lerner, take this offer, because this is rigged, don't you know if Judge Glasser ever does hold a hearing to decide whether to unseal any of the documents, he will ignore all your arguments, appeals, and evidence.**

You're doing exactly that, aren't you. **Aren't you.**

Now ask yourself how it is that they knew you would do it and warned us you would do it over a year and a half ago and, mirabile dictum, you're doing it.

Perhaps they reached such an agreement with you to throw the case against us in one of the many secret ex parte proceedings we've just found out about. Perhaps they didn't. It doesn't matter, because if you wish to testify they did not, you are a fact witness and off the bench; and in any event, no sane person, let alone objective, informed person, would believe anything other than the *apparent* possibility of this court's active, collusive, criminal participation in what our coming amendment hereto will detail more fully is enterprise corruption, including its cover-up, the only question how far and to what extent it suffuses the Eastern District and the former AUSA's there now in private practice.

That's the test, whether there is apparent corruption based bias.

Fail on that.

Pending amendment and supplementation, we briefly outline the legal basis for our conclusion that this court has, *de facto, in terrorem*, and *de jure*, decided to ignore all our arguments just as Mobargha and Beys warned you would.

## DENIAL OF FUNDAMENTAL RIGHTS

*Semble* that it is among the inalienable, fundamental rights of every citizen to participate in court proceedings free of not only actual bias, prejudice, and corruption but also free of the appearance thereof, and to have the opportunity to present legal argument and proffer factual evidence in support thereof. These are fundamental rights, rights not created by the Constitution but by natural law, rights the protection of which we the people have delegated to the government for so long as we choose to allow that government to exist and serve at our pleasure.

As stated, these are our inalienable, fundamental rights. Apparently just not in this court[6].

No other conclusion is possible. Movants have requested Article III relief, *viz.* the "unsealing" of those documents which are (or at least are supposed to be) listed on the docket of *U.S. v. Sater*, 98-CR-1101 EDNY (Glasser, J.). What is the applicable legal standard?

**Right of Access.** As to the 20% or so of the roughly 200 documents the contents of which are unknown to movants, the standard is one of a right of access.

Where the right of access is founded in the First Amendment, for example where access would be had to transcripts of plea and sentencing proceedings, access may only be denied in the presence of a compelling interest threatening immediate, irreparable near certain harm of

---

[6] As stated in the main text, the court is *apparently* predisposed to engage in mind-reading and ascribe to counsels pretextual, nefarious motives to our legal arguments. We respectfully alert the court that we are scrupulously adhering to the standards of §455(a) and requesting you step down because of the *appearance* of bias and prejudice founded in corruption and criminal conspiracy. We are not here accusing the court of actually engaging in corruption and criminal conspiracy; indeed, *whether, when, where, why, or how, and if so to what degree the court has or has not done so are properly by our choice matters of indifference to this motion.* We may, depending on what is revealed in the disclosure of the *ex parte* communications and disclosure demanded, move pursuant to §455(b) or §144 and claim actual bias, in the latter case with party affidavits in support thereof, and we reserve our right to do so, but we do not do so now. We understand the court's likely displeasure at being shown to have *apparently* engaged in despicable acts. We can only suggest the court take up with Mobargha and Beys, perhaps in one of those *ex parte* meetings, but preferably by referral to the United States Attorney for investigation (but not, of course, the United States Attorney for the Eastern District), exactly why they thought it was a good idea to write that letter.

nationally significant consequence, and only where there are no less restrictive means available to protect against that harm, and only to the least degree of restriction necessary. *Press Enterprise, In re Herald.*Where the right of access is founded in the common law, then access may only be denied upon a substantially similar balancing test depending in part on the nature of the document. *Amodeo I, II.*

Procedurally, in either case factual findings must be met and in this circuit whether the access claim be in First Amendment or common law the burden of proof (thus obviously of production) is on the person who would maintain the closure, sealing, or, in this case, "sealing."

And where the right of access claim is founded in the First Amendment, as the Second Circuit has just affirmed in *Gupta*[7], there must be an evidentiary hearing and record factual findings capable of *de novo* appellate factual review. No case has ever held that such hearing may be held and findings made in the involuntary, court-ordered absence of the movant.

No case could ever hold that. It is antithetical to any concept of due process that a party to a case may have his rights adjudicated in secret without participation by him or his counsel. We are unable to find any example of such reported anywhere, going back to the Star Chambers. There is no precedent, and no Article III authority, by which a court can purport to resolve a case or controversy minus the participation of one party to the case or controversy, let alone when he

---

[7] November 8, 2012. The 2nd Circuit held it presumptive structural error where a court closed a *voir dire*, access to which is founded in the First Amendment (thus access to transcripts of which are founded in the First Amendment, *Herald*), without satisfying substantive and procedural due process, the latter by holding an evidentiary hearing to establish documented, on the record evidence substantiating the compelling interest and lack of alternative. Notably, *Gupta* continues the Supreme Court's conflation as sufficiently identical, if not coextensive, the Sixth Amendment and First Amendment rights of open courts; indeed the *Waller* test for closure under the Sixth Amendment was explicitly adopted by the Supreme Court as the equal of the *Press Enterprise* test for closure under the First Amendment.

objects; otherwise a court would be legislating, not adjudicating, asserting "jurisdiction" over the party in name only but not in any practical sense of actually letting him function as a party.

**Right of Free Speech**. But, as to the other 80% or so of the roughly 200 documents the contents of which are known to movants, *a fortiori* as to the 155 documents authored by Oberlander and Lerner and others working with or for them, the rules changed.

Where someone is in possession of information, *a fortiori* that which is core, protected speech, a fortissimo where it has all been obtained outside of court process, then any restriction is a prior restraint and this court is well aware and needs no recitation of the substantive law that it may not be enjoined or restricted in any way absent the strictest scrutiny and in particular absent full adjudicative due process hearings establishing the requisite facts to clear and convincing evidentiary standard. Carroll v. *Princess Anne*.

For example, in this case, there are documents filed on 98-CR-1101 by Mobargha and Beys in the contempt issue which are false or misleading and which, because they contain their self-confessed admissions against penal interest that they filed such with other federal officials, not just this court, are evidence of federal felonies, including substantive and conspiracy violations of §1001 and obstruction statutes[8], beside evidence that they are, like their client, taking advantage of (again, non-existent and illegal) "sealing" orders to perpetrate crime.

Prohibiting us from revealing these crimes is outside any authority this court could possibly claim under Article III, but even if it could claim the authority it could only prohibit it, whether it calls the prohibition "sealing" or "prior restraint," upon full adversarial due process.

---

[8] We are lawfully in possession of executive branch documentation of statements made by Sater's counsel to non-judiciary government officials which demonstrate that claims of threat or perceived threat to or by Sater are fraud and we respectfully demand this court properly docket everything as to the contempt proceedings that Mr. Oberlander in his October 5, 2012 request and Judge Cogan in his October 18, 2012 docket "order" said was within your jurisdiction to docket and "unseal," not his.

And obviously as to what we ourselves wrote, full prior restraint analysis must be had.

Yet this court now holds secret hearings as to which we are told we may not know what the arguments are, we may not know what the factual issues are, and if we try to introduce evidence on motion we'll be charged with the equivalent of contempt for "knowingly" ignoring

That's not a chill, that's a freeze.

That's the smoking gun which completes the portrait of a court *apparently* engaged in secret and collusive deals with Sater's lawyers to, just as they said, ignore all our argument, evidence, and appeals exactly the way it is doing, de facto, in terrorem, and de jure.

That's cause for you to step down. Forthwith.

### Conclusion

This court must recuse itself due to apparent bias. We reserve the right to amend this given the court's refusal to provide enough time and notice pursuant to the Fifth Amendment let alone local rules as to motion practice. It was necessary to file quickly to forestall a claim that we filed only in response to an adverse result in the Rule 11 hearing.

We join in and adopt and ratify as if our own the motion filed by Lerner in behalf of Oberlander and the motion filed by ThomsonReuters.

Dated: New York, New York
        November 19, 2012

        /s/ Frederick M. Oberlander
        Counsel for Lorienton Palmer