NO. 12-112

In the
Supreme Court of the United States

RICHARD ROE, JANE DOE, JOHN DOE II,

*Petitioners,*

v.

UNITED STATES OF AMERICA AND
JOHN DOE,

*Respondents.*

**On Petition for Writ of Certiorari to the
United States Court of Appeals
for the Second Circuit**

**REPLY BRIEF OF PETITIONERS**

PAUL D. CLEMENT
JEFFREY M. HARRIS
BANCROFT PLLC
1919 M Street, NW
Suite 470
Washington, DC 20036
(202) 234-0090

RICHARD E. LERNER
 *Counsel of Record*
255 West 36th Street
Suite 401
New York, NY 10018
(917) 584-4864
richardlerner@msn.com

*Counsel for Petitioners*

March 5, 2013

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES......................................... ii

REPLY BRIEF FOR PETITIONERS .........................1

I. Roe's Publication of the PSR is Core Speech Protected by the First Amendment .........................................................3

II. The District Court's Disregard of Victims' Rights Reinforces the Need To Vacate the Permanent Injunction .................12

CONCLUSION .......................................................13

ii

# TABLE OF AUTHORITIES

**Cases**

*Bartnicki v. Vopper*,
    532 U.S. 514 (2001) ......................................... 5, 6

*Chase Nat'l Bank v. City of Norwalk*,
    291 U.S. 431 (1934) ............................................ 7

*Citizens United v. FEC*,
    130 S.Ct. 876 (2010) ........................................... 9

*Florida Star v. B.J.F.*,
    491 U.S. 524 (1989) ............................................ 5

*Gentile v. State Bar of Nevada*,
    501 U.S. 1030 (1991) .......................................... 9

*Landmark Communications v. Virginia*,
    435 U.S. 829 (1978) ............................................ 7

*Nebraska Press Ass'n v. Stuart*,
    427 U.S. 539 (1976) ............................................ 4

*New York Times v. United States*,
    403 U.S. 713 (1971) ...................................*passim*

*Smith v. Daily Mail*,
    443 U.S. 97 (1979) ............................................. 4

*United States v. Aguilar*,
    515 U.S. 593 (1995) ............................................ 9

*Winter v. NRDC*,
    555 U.S. 7 (2008) ............................................. 13

**Statutes & Rule**

15 U.S.C. § 7245 .................................................... 10

18 U.S.C. § 3663A.................................................. 12

S.Ct. Rule 10(a).......................................................... 3

**Other Authority**

Restatement (Third) of Agency § 8.05 (2006) ............ 6

# REPLY BRIEF FOR PETITIONERS

Respondent John Doe has a long history of defrauding investors in his business ventures. In 1998, he pled guilty to participating in a "pump-and-dump" stock-trading scheme that bilked investors out of more than $40 million. That guilty plea should have signaled the end of Doe's business career and the possibility of restitution for the victims of his crimes. Not so. His entire criminal case was "sealed," leaving past victims and third parties unaware of his conviction.

Doe wasted little time in resuming his old tricks and defrauding new victims. By 2002, he had infiltrated a real estate venture and used it to launder tens of millions of dollars, skim millions more in cash, and once again defraud his investors and partners.

Petitioner Richard Roe is an attorney who represents many of Doe's victims. While preparing a civil RICO complaint against Doe, Roe received—unsolicited—documents from a whistleblower at Doe's company that provided extensive information about Doe's earlier crimes. Those documents included a presentence report ("PSR") from the 1998 case, which revealed that Doe was hiding his previous conviction from his partners in the new firm (an obviously "material" omission). In May 2010, Roe filed the RICO complaint on behalf of Doe's victims in U.S. District Court for the Southern District of New York, with portions of the PSR attached as an exhibit.

Instead of taking steps to help Doe's victims recover for their losses, two district courts quickly swung into action to squelch any public reference to the earlier criminal proceedings and to punish *Roe* for disclosing evidence of Doe's crimes. The S.D.N.Y. court sealed the civil RICO complaint four days after Roe filed it. And the E.D.N.Y. court in which Doe was secretly prosecuted issued a temporary restraining order barring Roe from disseminating the PSR and other documents—even though Roe was not a party to that case, and even though the court could not identify any actual sealing or other order that applied to Roe. The court subsequently converted the TRO into a permanent injunction, and the Second Circuit affirmed.

\* \* \*

The procedural history of this case is complicated, but the relevant legal principles are not. This Court has repeatedly held that when a "tipper" provides information to a "tippee" about a matter of public importance, the tippee has an unqualified First Amendment right to publish that information, even if the tipper initially acquired the information through unlawful means. That was true of *The New York Times*' publication of the top-secret Pentagon Papers, *see New York Times v. United States*, 403 U.S. 713 (1971) (*per curiam*), and the Court's holding applies *a fortiori* to the documents at issue here.

Put simply, a federal court has prohibited Roe from disclosing truthful information about a prominent businessman's criminal wrongdoing. The courts below have not only sanctioned an entirely secret criminal proceeding, but have treated the

secret proceeding as a self-executing injunction against the world that precludes Roe from disclosing it as part of an effort to vindicate his clients' rights through civil litigation. And the government considers Roe's actions as tantamount to contempt, even though it cannot identify any court order that Roe actually violated. Roe was not even a party to the secret criminal proceedings and did nothing more than what lawyers are supposed to do when they uncover evidence of misconduct.

This is all a remarkable, flagrant affront to the First Amendment's guarantee of the freedom of expression, and a stark departure from this Court's longstanding jurisprudence. This Court's intervention is clearly warranted. *See* S.Ct. Rule 10(a). Lawyers need to know whether the rules that protect First Amendment tippees apply to them. If so, the decision below is clearly wrong. If not, lawyers will be chilled. Either way, they deserve to know. The Court should summarily reverse the decision below and vacate the permanent injunction, or alternatively grant the petition.

## I. ROE'S PUBLICATION OF THE PSR IS CORE SPEECH PROTECTED BY THE FIRST AMENDMENT

The United States (at 11-14) and Doe (at 12-13) rely heavily on cases addressing whether the First Amendment grants a *right of access* to otherwise non-public PSRs. That authority is inapposite. Roe did not need to invoke the First Amendment as a sword to obtain access to Doe's PSR; he already had it, thanks to a whistleblower's unsolicited delivery of that document. JA 185-88, 196. The real First Amendment issue is whether a court can enjoin Roe's

*subsequent publication* of the PSR once it was in his possession. Under a long line of this Court's precedent, the answer to that question is an unequivocal "no."

**A.** It is a bedrock principle of First Amendment jurisprudence that "state action to punish the publication of truthful information seldom can satisfy constitutional standards." *Smith v. Daily Mail*, 443 U.S. 97, 102 (1979). If a person lawfully obtains "truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need . . . of the highest order." *Id.* at 103. And a *prior restraint* on publication is more odious still, as prior restraints "are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

These principles apply with full force even when the information was *initially* obtained unlawfully by a "tipper" or whistleblower. For example, in *New York Times*, 403 U.S. at 714, the government sought to enjoin two newspapers from publishing the "classified" Pentagon Papers. It was undisputed that these documents "were purloined from the Government's possession and that the newspapers received them with knowledge that they had been feloniously acquired." *Id.* at 754 (Harlan, J., dissenting). This Court nonetheless refused to enjoin the newspapers' subsequent *publication* of the documents, holding that the First Amendment fully protected such speech, despite the government's

contention that publication would threaten national security.  *Id.* at 713-14.

Similarly, *Bartnicki v. Vopper*, 532 U.S. 514, 517 (2001), involved the "intentional disclosure of an illegally intercepted telephone conversation about a public issue."  While the *source* of the information—the person who illegally intercepted it—could perhaps be held liable for his conduct, this did not diminish the First Amendment protection afforded to third-party *recipients* of the information.  That is, "a stranger's illegal conduct does not suffice to remove the First Amendment shield from speech about a matter of public concern."  *Id.* at 535; *see Florida Star v. B.J.F.*, 491 U.S. 524, 541 (1989) (First Amendment protects publication of "truthful information which [a newspaper] has lawfully obtained," even if such disclosure violates state law barring publication of rape victims' names).

**B.**  In defending the injunction barring Roe from disclosing the contents of Doe's PSR, the United States relies heavily on a purported finding that the whistleblower had "'wrongfully taken'" the PSR and had "'no legal right'" to possess it.  U.S. Br. 14-15 (quoting Pet.App.59a).  In fact, the district court made no such finding.  After a colloquy between counsel over whether the whistleblower had obtained Doe's PSR lawfully, the court stated that it would "reserve" judgment on this issue.  JA 268.[1]

---

[1] It is likely that the whistleblower's actions were lawful.  *See* Restatement (Third) of Agency § 8.05 (2006), cmt. c (agent may reveal "otherwise privileged information" regarding "the principal's illegal conduct.").

Remarkably, the courts below enjoined Roe without regard to whether the whistleblower obtained the PSR lawfully.

The correct rule is the opposite: Roe cannot be enjoined from disclosing the PSR even if the whistleblower obtained it unlawfully, and even if Roe were fully aware of this fact. The legality of *the whistleblower's* conduct is wholly irrelevant to the scope of *Roe's* First Amendment rights. *See New York Times*, 403 U.S. at 713, 754 (newspapers knew they were publishing "classified" documents that had been "feloniously acquired"); *Bartnicki*, 532 U.S. at 519 (defendants "'knew or had reason to know'" that the recording was obtained through an "illegal interception"). Black-letter law demands the vindication of Roe's First Amendment rights.

**C.** The United States asserts that Roe "'knowingly and intentionally flouted a Court order'" by disclosing the PSR. U.S. Br. 14 (quoting Pet.App.134a). Tellingly, however, the government—like the district court and the Second Circuit—fails to identify the "order" that Roe purportedly violated.

The reason for the omission is simple: no such order exists. At the time Roe submitted the PSR as an exhibit to his civil complaint against Doe, *there was no sealing order in place* in Doe's criminal case, much less an order that purported to apply to a complete stranger to that proceeding (like Roe). When an entire criminal case is shielded from the public, it eliminates the need for fastidiousness about what is sealed and who is bound. The district judge was not "able to find any order signed by me, which directed that this case be filed sealed." JA 697; *see*

JA 166 ("[T]here is no formal order … with respect to sealing.").

Even if such an order did exist, it could not bind Roe, who was a stranger to the criminal proceeding against Doe. Federal courts have jurisdiction to issue orders operating on the parties to the case and their agents; they do not have the power to enjoin strangers to the case or the world at large. *See Chase Nat'l Bank v. City of Norwalk*, 291 U.S. 431, 437 (1934) (Brandeis, J.) (injunction that extended to "all persons to whom notice of the injunction should come" violated "established principles of equity jurisprudence and procedure"). Indeed, even a *legislature* cannot enact a blanket rule barring third parties from publishing information about "sealed" judicial misconduct proceedings. *See Landmark Communications v. Virginia*, 435 U.S. 829, 837-46 (1978). It follows *a fortiori* that a court cannot—via an *unwritten* order—enjoin publication of "sealed" materials by anyone who happens to receive them, including strangers to the proceeding.[2]

In sum, the district court and the Second Circuit *assumed* that a sealing order existed (even though there is no record of one), *assumed* that such an order would have applied to Roe (even though he was not a party to the case), *assumed* that Roe was fully aware of this hypothetical sealing order, and *assumed* that the requisite factual findings for a prior restraint on

---

[2] *See* JA 702 (district court was "troubled" over "whether an order signed by a judge on one of those sealing envelopes … is binding upon any third-party person").

speech had been made in accordance with due process requirements. Each of those assumptions is highly implausible; the combination of all four is farfetched. The suggestion that Roe "flouted" a court order has a profoundly chilling effect on a lawyer, but is flatly contradicted by the record, and provides no basis for enjoining Roe's efforts to vindicate his clients' rights and "petition the Government for a redress of grievances."

Relatedly, the United States asserts that "Roe had *not* lawfully acquired the sealed material." U.S. Br. 14. But the district court made no such finding of criminal (or even civil) wrongdoing by Roe. Nor could it. The undisputed evidence showed that Roe's receipt of the PSR was "unsolicited" and that the whistleblower "volunteered" this information. JA 196. Roe's conduct was entirely lawful, and was no different from that of the recipients of confidential information in *New York Times*, *Bartnicki*, and *Florida Star*.

**D.** The government suggests (at 15) that Roe was subject to a heightened duty not to disclose the PSR because he is an attorney, as opposed to "a member of the press who acquires material from a source." But that suggestion is extremely problematic and only heightens the need for this Court's review.

This Court has "consistently rejected the proposition that the institutional press has any constitutional privilege beyond that of other speakers." *Citizens United v. FEC*, 130 S.Ct. 876, 905 (2010). As important as the institutional press is in bringing wrongdoing to light, the role of the bar in fearlessly seeking to redress wrongdoing is equally

vital and equally in need of protection from chilling. There is a reason the First Amendment explicitly and independently safeguards the right to petition along with the freedom of expression and freedom of the press.

To be sure, a lawyer as an officer of the court has special responsibilities when it comes to ensuring compliance with court orders in cases in which that lawyer is involved. For example, the extrajudicial "speech of lawyers representing clients *in pending cases* may be regulated under a less demanding standard." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1074 (1991) (emphasis added). Similarly, a judge cannot invoke First Amendment protection if he has "voluntarily assumed a duty of confidentiality" in pending cases. *United States v. Aguilar*, 515 U.S. 593, 605-06 (1995).

But those principles are inapposite here. Roe had no involvement whatsoever in Doe's criminal case— as an attorney or otherwise—and was not subject to any sealing or other order applicable to that case. Indeed, Roe did not even obtain the PSR through court process in the criminal proceeding; he received the PSR, unsolicited, from a whistleblower at Doe's company. JA 185-88, 196. And even if a lawyer has some special responsibility in handling documents prominently marked as subject to a sealing order, that is not the case here. The 49-page PSR contains only a single footnote explaining restrictions on redisclosure that apply to the *Bureau of Prisons*. JA 497.

To the extent Roe's status as an attorney is relevant at all, it only reinforces the need for this

Court's review. When lawyers obtain information revealing serious misconduct directed at their clients, they need to know whether they have a First Amendment right to vindicate their clients' rights, a self-executing obligation to return it to some government repository, or a need to remain silent. The answer suggested by this Court's precedents seems crystal clear, but the need for a clear answer could not be more pressing. When the federal government suggests that a lawyer may face criminal liability for engaging in conduct that would be clearly protected by the First Amendment if undertaken by anyone else, further percolation is not in order. The bar needs to know whether filing a civil RICO claim is zealous advocacy in the finest traditions of the profession or sanctionable, even criminal, misconduct.[3]

The government's suggestion that lawyers have diminished First Amendment protection would also lead to absurd results. At least one news magazine obtained Doe's "sealed" criminal complaint and published an article describing the contents of that complaint. Pet.App.73a-75a. It cannot possibly be right that the magazine's actions were laudable investigative journalism while Roe's similar actions were ethical breaches and criminal misconduct. Nor

---

[3] Indeed, attorneys have unique *obligations* to report evidence of criminal misconduct under, for example, the Sarbanes-Oxley Act, 15 U.S.C. § 7245. Yet, under the government's view, reporting criminal misconduct from a "sealed" case would be unprotected by the First Amendment, and perhaps itself a crime.

can it be right that the author would have had less First Amendment protection if he had a law degree, as many journalists do.

**E.** Finally, Doe incorrectly asserts (at 12) that it was necessary to enjoin disclosure of the PSR to protect his safety. The 49-page PSR contains exactly three references to Doe's "cooperation agreement," and provides no details about the nature or extent of Doe's cooperation. JA 532, 543-44. And his cooperation has *already* been disclosed to the public through an unsealed letter from the Department of Justice that refers to Doe's "cooperation agreement[]." JA 767-68; *see also* Pet.App.109a-110a (newspaper article stating that Doe cooperated with authorities). The government has also conceded that it "has no information that any person has sought to harm the defendant or his family." SA 66.

A purely speculative concern about Doe's "safety" thus cannot justify a court order barring publication of truthful information about his crimes. *See New York Times*, 403 U.S. at 714 (publication of Pentagon Papers protected by First Amendment, despite asserted threat to national security).

\* \* \*

In sum, Roe is identically situated in all material respects to a journalist who receives information from a whistleblower or other inside source. This Court has repeatedly held that—regardless of the legality of the original source's conduct—the First Amendment bars any attempt to muzzle the *recipient's* disclosure of that information. The permanent injunction barring Roe from disclosing the

contents of Doe's PSR is anathema to the First Amendment and must be vacated.

## II. THE DISTRICT COURT'S DISREGARD OF VICTIMS' RIGHTS REINFORCES THE NEED TO VACATE THE PERMANENT INJUNCTION

Because the district court conducted Doe's criminal proceedings in secret, the victims of Doe's pump-and-dump fraud were deprived of their rights under the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A. The MVRA *mandates* that full restitution be included in any sentence for racketeering crimes. Yet the district court failed to impose a restitution order requiring Doe to repay the millions of dollars he fraudulently obtained from his victims. *See* Nat'l Org. for Victim Assistance Br. 5-11.

Regardless of whether this issue warrants plenary review, the district court's disregard for the MVRA underscores the importance of vacating the permanent injunction. The victims of Doe's crimes, including a number of Holocaust survivors, have yet to recover any of their lost funds. The district court has left Doe's victims in an untenable position by *both* failing to comply with the MVRA *and* barring the victims' attorneys from relying on documents that would help them recover civil damages.

The balance of equities and the public interest are critical considerations in the analysis of whether to grant injunctive relief, *see Winter v. NRDC*, 555 U.S. 7, 26-32 (2008), and the district court gave short shrift to these factors by failing to consider how the

permanent injunction would negatively affect the many victims of Doe's fraud.

## CONCLUSION

The Court should summarily reverse the decision below and vacate the permanent injunction barring Roe from disclosing the contents of Doe's PSR. Alternatively, the Court should grant the petition.

Respectfully submitted,

| | |
|---|---|
| PAUL D. CLEMENT | RICHARD E. LERNER |
| JEFFREY M. HARRIS | *Counsel of Record* |
| BANCROFT PLLC | 255 West 36th Street |
| 1919 M Street, NW | Suite 401 |
| Suite 470 | New York, NY 10018 |
| Washington, DC 20036 | (917) 584-4864 |
| (202) 234-0090 | richardlerner@msn.com |

*Counsel for Petitioners*

March 5, 2013