# AFFIDAVIT OF JOSEPH GIANNINI

STATE OF NEW YORK  
COUNTY OF SUFFOLK } ss:

My name is Joseph Giannini. I reside at 90 Isle of Wight, East Hampton, New York. I swear to the following:

1. I was born in 1943 in Kings County, New York. In January 1966 I graduated from Hofstra University. On March 15, 1966 I enlisted in the U.S.M.C. While at Parris Island I applied to Officer Candidate School, was accepted, and in December 1966 was commissioned as a 2nd Lieutenant. I volunteered for Vietnam and did my tour as a Marine Infantry Officer with the First Battalion, Third Marines ("The Home of The Brave") from 1967-1968. I rotated home in July 1968, coincidentally the same month Robert Mueller arrived in country as a Marine Infantry Officer and joined the Second Battalion Fourth Marines ("The Magnificent Bastards"). I am a "Mustang," a Marine who rose through the ranks, from Private to Captain, and after returning to the United States as a Captain, I was assigned to train Navy SEALs.

2. In 1971, after leaving the U.S.M.C, I attended Brooklyn Law School on the G.I. Bill. In 1974, I was admitted to the New York Bar. For the next 42 years I practiced criminal defense law, federal and state, mostly in the New York City area.

3. During my last 12 years of practice, I also became a writer and producer. In 2004, I associated with LTV, Long Island Public Access Television, producing and hosting *East End Veterans*, and later *Gung Ho*, covering our endless wars and injustice everywhere, with special focus on government misconduct.

4. In June 2015 I had to retire due to service-connected disabilities – the most serious, Chronic Ischemic Coronary Heart Disease, diagnosed in 2013 as caused by my constant

exposure to Agent Orange in Vietnam (of course, the phrase Agent Orange was not part of our jargon when we served). I still write non-fiction short stories and produce *Gung Ho* on public television.

5. On May 21, 2018, I called Richard E. Lerner, Esq. to get a meeting with him and his client, Frederick M. Oberlander Esq. Until then I had never communicated with either. I wanted to talk to them about Felix Sater and a former client of mine, Daniel Persico Jr. My interest had been piqued by a petition for writ of certiorari they'd filed, which I had found online. Exh A. It covered *United States v. Coppa*, 00-CR-196 (EDNY) (Glasser, J.), a case where I had represented defendant Daniel Persico Jr. In *Coppa*, Sater, Salvatore Lauria, Gennady Klotsman, and others had "flipped," had become cooperators, more formally cooperating witnesses, thereafter working for the FBI and DOJ against the other defendants in return for the government's promise of leniency.

6. On May 22, 2018, I met with Mr. Oberlander and Mr. Lerner in East Hampton, New York. They told me that Sater had been claiming that (1) Daniel Persico Jr. first learned that Sater and Lauria had flipped in or about 2012; and that (2) he had only learned it because Mr. Oberlander and Mr. Lerner had illegally leaked sealed material to the media and had improperly disclosed same to Gerald Shargel Esq. because he had represented Persico in the *Coppa* case so would give them to Persico who would in revenge have Sater and Lauria killed.

7. Those claims are incredible. For more than two years, from arranging his voluntary surrender and appearing at his March 2, 2000 arraignment, through his February 26, 2002 guilty plea and May 8, 2002 surrender to the Bureau of Prisons at Fort Dix, I was the sole attorney of record for Daniel Persico Jr. It is inconceivable that he had somehow also engaged Mr. Shargel on the side and yet I never knew of it.

2

8. In the meeting, I repeated what I'd said on the phone. That both Daniel Persico Jr. and I knew, on March 2, 2000, the day of arraignment, our first court appearance, that Sater, Lauria, and Klotsman were cooperating. Within hours of that appearance, where I represented Persico, he was released on a million-dollar bond and we then read the Indictment together, circled the names of "unindicted co-conspirators," including Sater, Lauria, and Klotsman, and marked them "C/W," cooperating witness. It was obvious to me and Persico that they had "flipped." So, on March 2, 2000, they for all intents and purposes had been overtly outed by the DOJ, because they had been identified as unindicted co-conspirators in the indictment in circumstances which made it obvious.

9. This was confirmed on February 2, 2001, when in an open-court hearing before Judge Glasser, Sater was identified as a government cooperator. Exh. B at 26. The transcript shows I was present and participated. Exh. B at 4. To my best recollection, my client was present as well.

10. Because my client Daniel Persico Jr. and I knew Lauria was cooperating, I had a private investigator find him to learn whether he would testify if we went to trial. Lauria told my investigator he "wouldn't hurt Danny." My contemporaneous handwritten notes confirm my recollection. And while one would presume that if he didn't know already, by then, after my investigator found him, Lauria had to have known that Persico knew of his cooperation, here one doesn't have to presume, because Lauria's February 5, 2004 sentencing transcript confirms that he, his attorneys, and the FBI had been aware of my investigator's visit for years and confirms that they knew full well that Persico had obviously known of Lauria's cooperation, because it shows them telling Judge Glasser that Persico had had an investigator find Lauria and that it was

a concern because, they said, Persico had viewed Lauria's cooperation as the ultimate betrayal. Exh. C at 9,

11.     My notes further confirm that I had naturally then also reached out to the other cooperators to see if I could get the same assurance from them, first contacting Myles Mahlman Esq., Felix Sater's attorney, who did in fact give me the same assurance, then to the attorney for Klotsman, who did not respond.

12.     Believing confidentiality didn't bar it, I showed Mr. Oberlander and Mr. Lerner files relating to my defense of Daniel Persico Jr. They held case documents which had been either prepared and filed, or given me, by the government during the *Coppa* case. All were free of any protective or sealing order, or other restriction on their use. I gave Mr. Oberlander and Mr. Lerner the originals of four documents, which I signed and dated, and photocopies of my remaining files.

13.     One of the four original documents I gave them is Lauria's Cooperation Agreement of December 10, 1998, signed by Lauria, his attorney, AUSA Jonathan S. Sack, and Supervising Assistant United States Attorney Andrew Weissman. Another is a related Consent Order of December 10, 1998, "So Ordered" by the Hon. I. Leo Glasser and signed by the same individuals as signed the Cooperation Agreement. The other two are FBI 302 debriefing reports on Lauria and Klotsman. All of these were given to me by the government as 3500 disclosures in 2001, while my client Daniel J. Persico Jr. was still pleading not guilty. Exh. D is a true and correct set of the four originals I gave them, at, respectively, pages 1, 8, 11, and 23. Though they each bear government evidence stamps, I'm not surprised that they're not in the *Coppa* docket, as my client later entered a guilty plea, so the government never put them in evidence. But I am

4

surprised that the Consent Order is not on what I'm told is Lauria's docket, Exh. E, as it is an order of an Article III court.

14. I have reviewed Exh. F, which has filings by Sater and Lauria. The first is a publicly docketed letter, dated October 23, 2014, by Sater's attorneys Mobargha and Beys to Judge Cogan. Exh. F at 1. It asks for contempt charges against Mr. Oberlander and Mr. Lerner for attempting to cause the murder of Sater by exposing his cooperator status so other defendants would pay their clients (Kriss and Ejekam) an extortionate settlement lest they too be killed or caught in scandal. Exh. F. at 7. And, Mr. Oberlander and Mr. Lerner told me that, at a hearing a day later, on October 24, 2014, another Sater lawyer, Robert Wolf, successfully pleaded with Judge Cogan to let him read aloud that accusatory portion into the record because it involved attempted murder. It also includes a complaint filed by the same lawyers in New York Supreme Court against Jody Kriss, Mr. Lerner and Mr. Oberlander's client, in behalf of Salvatore Lauria, making similar allegations, *viz.* that Daniel Persico Jr. first learned in or about 2012 that Sater and Lauria were cooperators, because they were outed by Mr. Oberlander and Mr. Lerner (acting in behalf of Kriss) and that Persico, having supposedly only then just learned of their cooperation, tracked down Lauria and publicly threatened to kill him and Sater. Exh. F at 16, 30.

15. I have reviewed various documents that I have been told were publicly filed in the *Coppa* case and remain part of the public record, maintained by the National Archives for near 20 years, including papers filed by counsel for other *Coppa* defendants, for example Jeffrey Lichtman, who, representing defendant Daniel Lev, requested all exculpatory material on cooperating witness [sic] Felix Sater. Exh. G. at 15. Most significant is a letter dated November 21, 2001, from EDNY AUSA Eric Corngold confirming that Sater and Lauria were cooperating witnesses. Exh. G. at 2.

5

16. Based on my knowledge of the *Coppa* case, and my forty-two years' experience as a criminal lawyer, and my overall life experiences, I state with certainty that anyone who has been associated in any way with Sater's related case and represents to any investigators, prosecutors or courts that Daniel Persico Jr. first learned in or about 2012 that Sater and Lauria were cooperators is knowingly lying. Further, anyone who claims that Sater and Lauria were first "outed" by Mr. Oberlander and/or Mr. Lerner sometime in or after 2010 is knowingly lying. The truth is that (1) Daniel Persico Jr. (and I) knew this on March 2, 2000, because it was obvious from the content and nature of the Indictment; and (2) we were thereafter informed of this, by the government, in the February 2001 severance hearing, by the its acquiescence to describing Sater as a government cooperator and again later in 2001 by the explicit 3500 disclosures of Lauria's cooperation *supra*, which together merely served to confirm what Perisco (and I) had long known; and (3) the public was "told" at the same time, by the open court nature of that hearing and by the public filing of the Lichtman Brady motion and the Corngold 3500 letter to Ray.

17. But the following I can't explain. Exh. H has what I'm told is the *Coppa* docket as shown on PACER on December 14, 2010 and August 28, 2012. The headers show Daniel Persico Jr. as Defendant 3 and me as his counsel. Exh. H at 1. Exh. I is I'm told the *Coppa* docket as shown on PACER today. For some reason, my client and I have been "made to disappear" from the header. Exh I at 1. This could be an attempt to stop anyone from knowing that I, and not Gerald Shargel, Esq., represented Daniel Persico Jr. in *U.S. v. Coppa, et al.* Or it could be an attempt to stop anyone from proving that Sater's lawyers, or the government, could have easily checked the truth on PACER thus were, at best, recklessly indifferent in their accusations. Or it could be both.

18. Since 2002, the end of Daniel Persico Jr.'s case, only one person has contacted me about the case, a reporter from the Wall Street Journal, who called about six months ago asking if he could be put in touch with him. I declined to help him, though it would not likely have mattered because, as I had not then known at the time, Persico had already passed away.

19. For emphasis, at no time over did the FBI, DOJ, or Felix Sater or his counsel ever ask me about Daniel Persico Jr.

20. I gave the above-listed materials to Mr. Oberlander and Mr. Lerner to aid them in their legal fight against Sater and his attorneys. I stand ready to testify for them upon their request.

*****

May 29, 2018  
East Hampton, New York

*Joseph Giannini*

Sworn to before me this 29th day of May, 2018:

*Notary Public*

SANFORD I. POSNICK  
NOTARY PUBLIC, STATE OF NEW YORK  
Registration No. 01PO6372479  
Qualified in Suffolk County  
My Commission Expires March 19, 2022