UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                                                :

In The Matter Of,

**RICHARD E. LERNER**, an attorney admitted to    :   **ORDER**
practice before this Court,
                                                                                :   16-MC-2636 (AMD)

                                         Respondent.    :

------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

      The Committee on Grievances for the United States District Court for the Eastern District of New York (the "Committee") commenced this proceeding to determine whether the respondent committed ethical violations by participating in a scheme to publicize sealed documents from Felix Sater's criminal case. The Committee determined, by clear and convincing evidence, that he had. The respondent seeks to unseal the docket in its entirety.

      On November 20, 2020, the Committee granted in part the respondent's motion to unseal the docket. (ECF No. 52 at 1.) However, the Committee directed that certain documents remain sealed—documents that implicated the interests of third parties, that disclosed sensitive details about government cooperation and investigations, or that had been sealed or redacted in other proceedings. (*Id.* at 6, 20.) Having given all relevant parties the opportunity to assert their positions with respect to unsealing, and having reviewed the entire docket again, the Committee addresses whether there is a basis for any documents on this docket to remained sealed.

**BACKGROUND**

**I.     The Instant Motion**

On August 13, 2018, the Committee suspended the respondent from the practice of law in this Court for six months.  (ECF No. 26.)  The respondent appealed the decision to the United States Court of Appeals for the Second Circuit, and the Committee stayed his suspension pending the appeal.  (ECF Nos. 38, 39.)  Over a month later, the respondent moved for an order unsealing the docket and all documents that had been filed in this proceeding, as well as an order declaring that he was not subject to any "gag orders."  (ECF No. 41.)  The Committee denied his motion because his appeal to the Second Circuit divested the Court of jurisdiction.

On December 12, 2019, the Second Circuit issued a mandate remanding the action to allow the Committee to consider the respondent's motion to unseal the docket.  (ECF No. 45 at 2.)  The Second Circuit also directed the Committee to clarify its reasons for certifying the suspension order for immediate appeal under Federal Rule of Civil Procedure 54(b).  (*Id.*)

On remand, the Committee asked the respondent and counsel for the Committee for a detailed summary of the public status of each document.  (ECF Nos. 50, 51.)  The Committee then reviewed the entire docket as well as the parties' initial submissions regarding unsealing. On November 20, 2020, the Committee issued an order pursuant to *Lugosch v. Pyramid Company of Onondaga*, 435 F.3d 110, (2d Cir. 2006) unsealing those documents that either did not implicate the interests of any non-parties, or that had already been made public on other dockets.  (ECF No. 52 at 5,7.)  In that same order, however, the Committee directed that all documents on the docket that had been sealed or redacted in other proceedings, that revealed the details of government investigations and cooperation agreements, or that implicated the interests of third parties remain sealed pending submissions from relevant non-parties and the respondent. (*Id.* at 6.)  No one objected to unsealing the docket within the 60-day period allotted.

Accordingly, on March 26, 2021, the Committee directed that copies of its November 20, 2020 order be served on the United States Attorneys' Offices for the Eastern and Northern Districts of New York, as well as lawyers for Felix Sater, Robert S. Wolf, Jill Levi and Robert Barnes McFarlane. (ECF No. 62 at 2.)

In submissions on May 19, 2021 and February 3, 2022, the United States Attorney for the Eastern District of New York recommended that "very few documents should remain sealed," but requested that five documents remain sealed in their entirety, and that another 17 documents be filed with redactions because they referred to government investigations, details of Mr. Sater's cooperation with the government, or information derived from Mr. Sater's Pre-Sentence Report ("PSR"). (ECF No. 67 at 6-8; ECF No. 70 at 2.) On March 3, 2022, the respondent objected to the government's sealing request. (ECF No. 71.) To date, no other interested parties have filed objections to the respondent's motion to unseal the docket.[1]

## II. History of the Sealing Dispute

The sealing dispute before the Committee is over twelve years old. The documents the respondent seeks to unseal were either originally filed in Felix Sater's 1998 criminal case before Judge I. Leo Glasser, or contain information related to or derived from it. As Judge Glasser observed in a 2019 opinion, Sater's criminal case spawned "a titanic amount of litigation" pertaining "not to the crime for which he was sentenced . . . but to the law of sealing; that is, whether, and the extent to which the documents pertaining to the criminal proceedings should

---

[1] Frederick Oberlander, the respondent's client and another participant in the scheme to disseminate sealed materials from Sater's criminal case, is currently the subject of a parallel grievance proceeding before this Committee. *See In re Oberlander*, No. 16-MC-2637. He challenged the propriety of the Court's grievance proceedings against him on constitutional grounds, but has not challenged the government's sealing and redaction requests under the relevant legal standards. (*See* ECF Nos. 59, 60, 61.) The Committee addressed the majority of Mr. Oberlander's due process arguments in the October 24, 2018 order denying the respondent's Rule 60(b) motion for reconsideration. (ECF No. 34 at 2.)

remain unavailable to the public. Ever hydra-like, those filings spawned yet more filings, which themselves became subject to more unsealing requests." *United States v. Sater*, No. 98-CR-1101, 2019 WL 3288389, at *1 (E.D.N.Y. July 22, 2019).

To give some sense of just how massive this "hydra" of sealing litigation has become, there are at least 13 dockets in this District, the Southern District of New York, and the Second Circuit, that are in whole or in part consumed by litigation over the sealed documents in Felix Sater's criminal case. There is the criminal case itself, *United States v. Sater*, 98-CV-1101 before Judge Glasser, as well as the original civil RICO suit filed by Oberlander in the Southern District of New York, *Kriss et al. v. BayRock Group LLC et al.* No. 10-CV-3959, in which Oberlander attached sealed materials from Sater's criminal case to the publicly-filed complaint, before Judge Naomi Reice Buchwald ordered that the docket be sealed. Oberlander filed two additional cases in the Southern District—*Estate of Ernest Gottdiener, et al. v. Sater, et al.*, No. 13-CV-1824 and *Kriss, et al. v. Bayrock Group LLC, et al.*, No. 13-CV-3905—which were both before Judge Lorna Schofield. Judge Schofield dismissed the first case, and Oberlander voluntarily dismissed the second. (ECF No. 26 at 23.)

While litigation over the sealed documents in Sater's case originally took place on the criminal case docket, Judge Glasser eventually opened a derivative docket dedicated to making sealing determinations captioned *In the Matter of the Motion to Unseal Docket No. 98-1101*, 12-MC-150.

Oberlander's various appeals of Judge Glasser's sealing orders to the Second Circuit were docketed under the caption *United States of America v. Doe*, 10-2905, which appears as a direct appeal from Sater's criminal case, and *Roe v. United States of America*, 11-479, which in turn stems from Oberlander's petition for a writ of mandamus directing the district court to

4

unseal Sater's criminal docket. *See Roe v. U.S.*, 414 F. App'x 327, 328 (2d Cir. 2011). The *United States of America v. Doe* docket represents the consolidation of six separate appeals filed by Oberlander. The docket in *Roe v. United States of America* remains sealed by order of the Second Circuit. (*Id.*)

In 2011, in response to Oberlander's various appeals and ongoing refusal to destroy his copies of Sater's PSR, then Chief Judge Raymond Dearie, at the Second Circuit's direction, appointed Judge Brian M. Cogan as special master "to ensure the parties' compliance with [The Second Circuit's] orders . . . and any that have been, or may hereafter be, entered by Judge Glasser." *Roe v. United States*, 428 F. App'x 60, 63 (2d Cir. 2011). On August 22, 2012, after Sater asked Judge Cogan to hold the respondent and Oberlander in contempt for violating the Second Circuit's prior sealing orders, Judge Cogan opened two additional miscellaneous dockets, *In the Matter of the Motion for Civil Contempt by John Doe*, 12-MC-557, which was sealed at the time, and *In re Public Documents filed in 12-MC-557*, 16-MC-706, which was open to the public.

On April 21, 2017, the Second Circuit appointed Judge Pamela K. Chen as special master to review various motions to unseal the two Second Circuit dockets referenced above. (ECF No. 42-3 at 1.) To facilitate her review, Judge Chen opened two more dockets in this District. The first docket, *In Re the Appointment of Pamela K. Chen as Special Master¸*17-MC-1282, was sealed to everyone except for the government and Felix Sater. The second docket, *In Re Public Docket – the Appointment of Pamela K. Chen as Special Master*, 17-MC-1302, was available to the public, but many of the documents filed there were sealed to comply with prior sealing orders from the Second Circuit. (*Id.* at 5.)

Finally, after Sater filed disciplinary complaints against the respondent and Oberlander in July 2014, another two dockets were created dedicated to these disciplinary proceedings, *In Re Frederick Martin Oberlander*, 16-MC-2637, and *In Re Richard E. Learner¸* 16-MC-2636, both of which contain sealed material from Sater's criminal case.

Thus, the docket the respondent seeks to unseal is merely one of 13 heads of this unsealing litigation "hydra." Judges Glasser, Cogan and Chen have devoted significant time and effort to determining what materials from Sater's case should be unsealed, and their conclusions have been memorialized in multiple different orders, three of which are summarized below.

In 2013, after the Second Circuit affirmed Judge Glasser's permanent injunction on the dissemination of Sater's PSR and derivative materials, and remanded the case for additional proceedings regarding other sealed materials, Judge Glasser conducted "an exhaustive review" of Sater's criminal docket. This review included hearings in 2012—on October 9th and 23rd, and on November 16th, and in 2013—on January 18th and November 14th. *In the Matter of the Motion to Unseal Docket No. 98-1101*, 12-MC-150, ECF Nos. 42, 104. At the conclusion of these hearings, Judge Glasser "unsealed a large number of documents and determined that a smaller number should remain under seal, in whole or in part." *Sater*, 2019 WL 3288389, at *1; *see also In the Matter of Motion to Unseal Docket No. 98-1101*, 12-MC-150, ECF Nos. 42, 104. In a sealed order issued on March 13, 2013, Judge Glasser emphasized the need to keep the details of both Sater's PSR and his government cooperation secret. (ECF No. 16-3.)

In 2016, Judge Cogan conducted his own thorough review of the sealed documents on the civil contempt docket. *In re Motion for Civ. Contempt by John Doe*, No. 12-MC-0557, 2016 WL 3460368, at *1 (E.D.N.Y. June 22, 2016), *aff'd sub nom. Doe v. Lerner*, 688 F. App'x 49 (2d Cir. 2017). Like Judge Glasser, Judge Cogan determined that Sater's PSR and any information

sourced from it must remain sealed pursuant to *United States v. Charmer Indus., Inc.*, 711 F.2d 1164 (2d Cir. 1983). Judge Cogan also observed that many of the documents that were subject to the unsealing motions before him had been "sealed in the Supreme Court, the Second Circuit, or were sealed in the district court and upheld by the Second Circuit." *In re Motion for Civ. Contempt by John Doe*, 2016 WL 3460368, at *5. Judge Cogan concluded that he did "not have authority, sitting in the district court as Special Master, to disturb the decisions issued by a higher court." *Id.* He also added that "sealing [would never] be meaningful if a party could immediately thereafter move to unseal, thereby setting in motion (particularly in cases with litigious parties whose express purposes is to unseal information) a never-ending cycle of briefing and decisions from which to appeal." (*Id.*) At the conclusion of Judge Cogan's review, 34 documents on the civil contempt docket remained sealed or redacted. (*Id.* at 7.)

In 2017, after Judge Chen replaced Judge Cogan as special master, she too explicitly addressed the sealing of Felix Sater's criminal case materials. (*See* ECF No. 42-3.) In her 39-page report and recommendation, issued on July 5, 2017, adopted in its entirety by the Second Circuit, *United States v Sater*, No. 10-2905, ECF No. 494 (2d Cir. Feb. 9, 2018), Judge Chen concluded that the majority of the documents on the Second Circuit dockets could be unsealed in light of the wide dissemination of information relating to Sater's criminal case. (ECF No. 42-3 at 10.)

However, Judge Chen held that the materials from Sater's criminal case that were attached to the complaint in *Kriss v. Bayrock Group LLC*, No. 10-CV-3959, including Sater's cooperation and proffer agreements, were "not judicial documents as to which a right of access attached and that they were properly sealed in the SDNY Action." (*Id.* at 14-15.) Judge Chen allowed the first pages of the cooperation and proffer agreements to be unsealed because Judge Glasser had previously unsealed them. (*Id.* at 16.) Judge Chen rejected the "circular" argument of

7

the moving parties that Sater's proffer and cooperation agreements were judicial documents; "[s]urely a document has to be relevant to a proceeding other than one over its own unsealing in order to qualify as a judicial document to which the presumptive right of access attaches." (*Id.*) Judge Chen also reiterated that Sater's PSR was not subject to a right of access and that information sourced from it should remain sealed. (*Id.*) Finally, Judge Chen endorsed various redactions to other documents from or referencing Sater's case because they were necessary to protect the integrity of government investigations and ensure the safety of Sater and his family. (*Id.* at 20-23.)

These three sealing orders issued by Judges Glasser, Cogan and Chen are not the only orders addressing the sealing of documents derived from Sater's criminal case, but they are among the most comprehensive, and demonstrate the vast judicial resources that have already been expended evaluating the sealing issues now before the Committee.

## LEGAL STANDARD

"There is a presumption of a public right to view judicial documents." *Rogers v. Henry*, No. 16-CV-5271, 2017 WL 5495805, at *5 (E.D.N.Y. Sep. 12, 2017) (citation omitted). The right, however, "is not absolute." *Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 598 (1978). While there is a "need for federal courts to have a measure of accountability and for the public to have confidence in the administration of justice[,]" *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*"), "the decision as to access is one best left to the sound discretion of the trial court." *Nixon*, 435 U.S. at 599. The party opposing access has the burden of demonstrating the need for secrecy. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004).

The presumption of access is secured in "a strong form rooted in the First Amendment and a slightly weaker form based in federal common law." *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013). "Both the common law and the First Amendment require courts to

8

first determine whether the presumption of access applies to the documents at issue." *John Doe Contempt Order*, 2016 WL 3460368, at *2. "[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"). Instead, the document "must be relevant to the performance of the judicial function and useful in the judicial process . . . to be designated a judicial document." *Id*.

The common law presumption of access attaches immediately to documents designated as "judicial documents." *Amodeo I*, 44 F.3d at 146-47. The Court then balances the weight of the presumption of access against countervailing interests, including "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure." *Lugosch*, 435 F.3d at 120 (citation omitted). "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Amodeo II*, 71 F.3d at 1049. The common law presumption of access can be overcome if the party opposing disclosure demonstrates a sufficiently compelling countervailing. *See Lugosch,* 435 F.3d at 120.

While the presumption of access "rooted in the First Amendment" occurs "in a strong form," it does not attach to all judicial documents. *See John Doe Contempt Order*, 2016 WL 3460368, at *7 ("The public's First Amendment right of access applies only to certain documents."). "First, the public has a right to gain access to judicial records (1) that 'have historically been open to the press and general public,' and (2) where 'public access plays a significant positive role in the functioning of the particular process in question.'" *In re New York Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 409 (2d Cir. 2009)

9

(quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004)). Alternatively, courts consider whether the documents are "derived from or a necessary corollary of the capacity to attend the relevant proceedings." *Hartford Courant Co.*, 380 F.3d at 93. "Once the First Amendment right of access attaches, the proponent of sealing must overcome the presumption of access by demonstrating a substantial probability of harm to a compelling interest." *John Doe Contempt Order*, 2016 WL 3460368, at *3.

## DISCUSSION

### I. Sealing

The government requests that five documents, ECF Nos. 15-9, 15-10, 15-13, 16-3, and 30-8, remain sealed. In addition, the government asks that 21 documents be unsealed subject to certain redactions, and that four documents, which have already been redacted, be unsealed, so long as the current redactions remain in place. (ECF Nos. 67 at 7-8, 70 at 2.) The government also requests that those portions of its sealing submissions that describe sensitive details regarding the extent and nature of Mr. Sater's government cooperation be redacted. (ECF Nos. 67 at 4, 70 at 4.)

According to the government, the documents it seeks to preclude from public view fall into one of four categories: (1) documents that detail the nature of Sater's cooperation with the government; (2) documents that if made public would compromise the integrity of government investigations; (3) documents that reference Sater's PSR or otherwise contain informed derived from it; (4) documents that have been sealed pursuant to the order of another court. (ECF No. 67 at 6.)

The majority of the documents the government seeks to seal or redact are "judicial documents" to which the presumption of access applies. *Lugosch*, 435 F.3d at 119. Those documents include various complaints, briefs, declarations, hearing transcripts and orders either

filed in this proceeding or the "titanic amount of litigation" derived from the *Kriss et al. v. BayRock Group LLC et al.* matter. These documents are "relevant to the performance of the judicial function and useful in the judicial process." *Amodeo I*, 44 F.3d at 145.

Despite this presumption of access, the government's bases for sealing these judicial documents remain sound. The Committee finds that the government maintains its "unique interest in keeping documents relating to cooperation sealed, even after an investigation is complete." *John Doe Contempt Order*, 2016 WL 3460368, at *5. The release of the details of Mr. Sater's cooperation could cause potential future cooperators "to resist involvement where cooperation is desirable." *Amodeo II*, 71 F.3d at 1050. Accordingly, this "effect should be weighed against the presumption of access." *Id.*

A subset of the documents that the government seeks to seal are not judicial documents at all, and accordingly are not entitled to the same presumption of access. These documents include Mr. Sater's cooperation and proffer agreements, which are simply contracts between the cooperator and the government. *See Santobello v. New York*, 404 U.S. 257 (1971); *United States v. Rexach*, 896 F.2d 710 (2d Cir. 1990) *cert. denied*, 498, U.S. 969 (1990).

Mr. Sater's PSR was not filed on the docket in this proceeding, but many of the documents the government seeks to seal or redact contain information derived from the PSR. Judges Cogan and Glasser have determined on multiple occasions, and the Second Circuit has affirmed, that "any documents containing information sourced from the PSR, must remain sealed" given the highly sensitive nature of the information at issue. *John Doe Contempt Order*, 2016 WL 3460368, at *4; *see also Roe v. United States*, 428 F. App'x 60, 64-67 (noting Judges Glasser and Cogan's separate orders directing Oberlander and his associates to return to EDNY, or destroy, all copies of the PSR in their possession).

The First Amendment right of access does not attach to PSRs. *United States v. Alcantara*, 396 F.3d 189, 197 n.6 (2d Cir. 2005) ("Courts have generally held, however, that there is no First Amendment right of access to pre-sentence reports."). A "district court should not authorize disclosure of a presentence report to a third person in the absence of a compelling demonstration that disclosure of the report is required to meet the ends of justice." *United States v. Charmer Indus., Inc.*, 711 F.2d 1164, 1175 (2d Cir. 1983). No such showing has been made in this proceeding.

In its November 20, 2020 order, the Committee explained that it saw no basis for unsealing those documents that other courts and judges, including the Second Circuit and Judges Glasser, Chen and Cogan, had already sealed or redacted. (ECF No. 52 at 5.) The government maintains that these documents continue to implicate its interests, and there is no evidence that the circumstances underlying those orders have changed "such that the compelling interests either no longer exist, are no longer subject to a substantial risk of harm, or are no longer effectively protected by sealing." *John Doe Contempt Order*, 2016 WL 3460368, at *5.

The respondent argues that there is no basis for sealing the complaint in *Kriss et al. v. BayRock Group LLC et al.*, No. 10-CV-3959, the action which gave rise to this disciplinary proceeding, because the document was never sealed by any other court and because "it is the document upon which the claim of criminal extortion is based."[2] (ECF No. 71 at 2.) As an initial matter, the respondent is wrong that the document was never sealed by another court. Judge Buchwald in the Southern District of New York sealed the complaint four days after it was

---

[2] The "document upon which the claim of criminal extortion is based" is not the complaint in *Kriss et al. v. BayRock Group LLC et al.*, No. 10-CV-3959, ECF No. 1 (S.D.N.Y. May 10, 2010), but rather two letters between Mr. Oberlander and Brian Herman, Esq. evidencing criminal extortion. (*See* ECF Nos. 13-22, 13-24.) The government does not oppose the unsealing of either letter.

originally filed in 2010, as the respondent is surely aware, since he included Judge Buchwald's sealing order as an exhibit in his opposition to the Committee's Order to Show Cause. (*See* ECF No. 13-4); *see also United States v. Sater*, No. 98-CR-1101, 2019 WL 3288389, at *4 (E.D.N.Y. July 22, 2019) ("the complaint in *Kriss v. Bayrock Group LLC*, No. 10-CV-3959 (S.D.N.Y.) . . . remains partially under seal in the Southern District.").

Furthermore, the government has requested the document, filed as both ECF No. 13-2 and ECF No. 13-23 be redacted rather than sealed.[3] (ECF No. 70 at 2.) The complaint is 165 pages long, and the government has sought redaction of only 13 pages. *Id.* The government's proposed redactions cover materials that either describe the scope of Mr. Sater's government cooperation or refer to the PSR. Accordingly, the Committee finds that the government's redactions are both "essential to preserve higher values" and are "narrowly tailored to serve that interest." *Lugosch*, 435 F.3d 110, at 120.

According to the respondent, the "government's position as to the unsealing of the March 13, 2013 Glasser order (item 16-3) has been anxiously awaited because the direction that [related litigation takes] will be influenced by whether Felix Sater was actually sentenced in public." (ECF No. 71 at 1.) The question before the Committee is whether the document should remain sealed for the reasons that prompted other courts to seal it. (ECF No. 70 at 2.) To date, the document remains sealed on the docket in *United States v. Sater*, 98-CR-1101, ECF No. 221 (E.D.N.Y. Mar. 13, 2013). The Committee has reviewed the document, and confirmed that it

---

[3] The respondent argues that ECF No. 13-23 is not the same as ECF No. 13-2. (ECF No. 3.) The Committee has reviewed both documents. ECF No. 13-2 is a copy of the complaint filed in *Kriss et al. v. BayRock Group LLC et al.*, No. 10-CV-3959, ECF No. 1 (S.D.N.Y. May 10, 2010). ECF No. 13-23 contains the same document, but with redactions Oberlander proposed to Brian Herman, Esq. on October 18, 2010. Because the text obscured by all of the proposed redactions is still legible, the sealing analysis for the two documents is the same.

contains multiple details of Mr. Sater's cooperation. (*See* ECF No. 16-3 at 6-7.) Accordingly continued sealing is warranted.

## II. Rule 54(b) Certification

In its August 13, 2018 disciplinary order, the Committee deferred its ruling on the charge that the respondent violated New York Rule of Professional Conduct 3.4(a)(6) by disclosing sealed materials from Sater's criminal case and thus "knowingly engaging in illegal activity by contravening court orders" pending the outcome of criminal proceedings by the U.S. Attorney for the Northern District of New York. (ECF No. 26 at 37.)

In his August 27, 2018 motion for reconsideration of the order suspending him from practice, the respondent also requested that the Committee direct entry of a final judgment, pursuant to Federal Rule of Civil Procedure Rule 54(b), as to the charges on which the Committee had already ruled. (ECF No. 28 at 24.) The respondent pointed out that the Committee's deferral of judgment on the Rule 3.4(a)(6) charge could be a "possible impediment to appellate review based on the fact that a determination on all of the claims has not been reached." *Id.*

In its October 24, 2018 order denying the respondent's motion for reconsideration, the Committee granted the respondent's Rule 54(b) motion and directed entry of a "final judgment as to the claims that have been adjudicated" having determined that there was no just reason for further delay. (ECF No. 34 at 3.) When the Second Circuit remanded this action to the Committee so that it could consider the respondent's motion to unseal the docket, it also directed the Committee to clarify its reasons for certifying the suspension order for immediate appeal under Rule 54(b). (ECF No. 45 at 2.)

At the time the Committee first granted the respondent's request for Rule 54(b) certification, the U.S. Attorney's Office for the Northern District of New York was pursuing a criminal investigation of the respondent and Oberlander based on the conduct that is the subject of the Rule 3.4(a)(6) charge. However, that office recently informed the Committee that its investigation is complete. Thus, the respondent's request for Rule 54(b) certification is denied at this time. The Committee will address the respondent's Rule 3.4(a)(6) charge in a separate order to follow.

### III. "Gag Order"

Finally, the respondent demands "that there must be a declaration there is no gag order whatsoever on respondent's dissemination of any of the documents filed herein, regardless of whether they are or are not unsealed." (ECF No. 41 at 8.) The respondent is obligated to follow the law, and that includes abiding by orders issued by this Committee and other courts, many of which pertain to the documents that remain sealed on this docket. *See, e.g.*, *United States v. Sater*, 98-cr-1101, ECF No. 111 (E.D.N.Y. May 13, 2013) ("Unless and until Judge Glasser orders this information unsealed, it remains subject to the Second Circuit's injunction. It seems obvious that [Oberlander] is seeking to fatally undermine the purpose of the injunctions by publicizing information that would render them ineffective."); *Roe v. United States*, 428 F. App'x 60, 63 (2d Cir. 2011) (affirming Judge Glasser's permanent injunction prohibiting the dissemination of Sater's PSR and admonishing Oberlander for filling frivolous appeals).

The respondent's repeated attempts to disseminate sealed materials over the past 12 years have subjected him to ethical sanction and criminal investigation. If he does not abide by the well-developed law governing the sealing of documents, he will be subject to additional civil and criminal liability.

Judges Glasser, Cogan and Chen and the Second Circuit have adjudicated these sealing issues multiple times over the past 12 years. Every court that has reviewed an unsealing motion pertaining to Felix Sater's criminal case has upheld the ongoing sealing or redaction of those documents, which, if made public, would compromise the safety of third persons, the integrity of law enforcement investigations, and the protection of a cooperator's anonymity. *See, e.g., In re Applications to Unseal 98-CR-1101*, 568 F. App'x 68 (2d Cir. 2014). The Committee sees no compelling reason to arrive at a different conclusion.

## CONCLUSION

For the reasons explained above, the Clerk of Court is directed to unseal the documents in Exhibit A labeled "unseal." Those documents labeled "seal" in the result column are to remain sealed. The government is directed to file unsealed copies of those documents labeled "redact," with the referenced pages redacted, within 60 days. Finally, to the extent that any of the documents the Committee ordered unsealed in its November 20, 2020 order are still sealed, the Clerk of Court is directed to unseal those documents as well.

**SO ORDERED.**

                                                         s/Ann M. Donnelly
                                                         Hon. Ann M. Donnelly, U.S.D.J.
                                                         Chair of the Committee on Grievances
                                                         For the United States District Court
                                                         Eastern District of New York

Dated: Brooklyn, New York
         May 5, 2023

# EXHIBIT A[4]

| Docket | Date | ECF | Gov't Position | Result | Basis |
|---|---|---|---|---|---|
| ECF No. 1 | 10/19/2016 | 1 | Unseal | Unseal | |
| | | 1-1 at Ex. B | Unseal | Unseal | |
| | | 1-1 at Ex. E | Unseal (As Filed) | Unseal (As Filed) | |
| | | 1-1 at Ex. F | Unseal | Unseal | |
| ECF No. 6 | 12/20/2016 | 6 | Unseal | Unseal | |
| ECF No. 7 | 2/22/2017 | 7 | Unseal | Unseal | |
| ECF No. 11 | 8/28/2017 | 11 | Unseal | Unseal | |
| ECF No. 12 | 9/6/2017 | 12-1 | Unseal | Unseal | |
| | | 12-2 | Redact (2) | Redact | Sealed by other court; Details of cooperation |
| | | 12-3 | Redact (2) | Redact | Sealed by other court; Details of cooperation |
| | | 12-5 | Redact (2-19) | Redact | Sealed by other court; Details of cooperation |
| | | 12-6 | Redact (2-18) | Redact | Sealed by other court; Details of cooperation |
| | | 12-8 | Unseal | Unseal | |
| | | 12-14 | Unseal (As Filed) | Unseal (As Filed) | |
| ECF No. 13 | 9/6/2017 | 13-2 | Redact (2, 18, 20, 22, 38-39, 41-44, 46, 48) | Redact | Sealed by other court; PSR |
| | | 13-13 | Redact (16-17) | Redact | Sealed by other court; PSR |
| | | 13-22 | Unseal | Unseal | |
| | | 13-23 | Redact (2, 20, 23, 25, 30, 41-42, 44-47, 49-51) | Redact | Sealed by other court; PSR |
| ECF No. 14 | 9/6/2017 | 14-1 | Redact (30, 50, 56) | Redact | Sealed by other court; PSR |
| | | 14-6 | Unseal | Unseal | |
| | | 14-8 | Redact (12-13, 43, 56) | Redact | Sealed by other court; PSR |

---

[4] On March 2, 2022, the respondent requested that the government's February 16, letter (ECF No. 70) be unsealed in unredacted form, and that his 165-page submission be unsealed, too. Those requests are denied. The redacted portions of the government's submission include highly sensitive information, and sealing is warranted. The respondent's request that his own lengthy submission be unsealed is also denied, because, to the Committee's knowledge, he has not formally served the request on the government or any interested parties.

| Docket | Date | ECF | Gov't Position | Result | Basis |
|---|---|---|---|---|---|
| | | 14-16 | Redact (10, 14, 27-28) | Redact | Sealed by other court; PSR |
| | | 14-18 | Unseal | Unseal | |
| ECF No. 15 | 9/6/2017 | 15-1 | Unseal (As Filed) | Unseal (As Filed) | |
| | | 15-8 | Redact (5-8) | Redact | Sealed by other court; Integrity of investigations |
| | | 15-9 | Seal | Seal | Sealed by other court |
| | | 15-10 | Seal | Seal | Sealed by other court |
| | | 15-12 | Redact (1-3, 5) | Redact | Sealed by other court; Integrity of investigations |
| | | 15-13 | Seal | Seal | Integrity of investigation |
| | | 15-15 | Unseal | Unseal | |
| ECF No. 16 | 9/6/2017 | 16-3 | Seal | Seal | Sealed by other court; Details of Cooperation |
| | | 16-5 | Unseal | Unseal | |
| ECF No. 17 | 9/6/2017 | 17-2 | No position | Unseal | |
| | | 17-13 | Unseal | Unseal | |
| | | 17-15 | Unseal | Unseal | |
| ECF No. 18 | 9/6/2017 | 18 | Redact (83-84) | Redact | Details of cooperation |
| ECF No. 19 | 9/6/2017 | 19 | Redact (8-10, 33) | Redact | PSR |
| ECF No. 20 | 9/6/2017 | 20 | Redact (9) | Redact | Details of cooperation |
| ECF No. 21 | 9/7/2017 | 21-1 | Unseal | Unseal | |
| ECF No. 25 | 6/22/2018 | 25-1 | Unseal | Unseal | |
| ECF No. 26 | 8/13/2018 | 26 | Unseal | Unseal | |
| ECF No. 28 | 8/27/2018 | 28 | Redact (14) | Redact | Details of cooperation |
| ECF No. 29 | 8/29/2018 | 29-2 | Redact (18) | Redact | Details of cooperation |
| ECF No. 30 | 9/7/2018 | 30-1 | Unseal | Unseal | |
| | | 30-2 | Redact (3-20) | Redact | Sealed by other court |
| | | 30-3 | Redact (3) | Redact | Sealed by other court; Details of Cooperation |
| | | 30-4 | Redact (3) | Redact | Sealed by other court; Details of Cooperation |

| Docket | Date | ECF | Gov't Position | Result | Basis |
|---|---|---|---|---|---|
| | | 30-5 | Redact (3-19) | Redact | Sealed by other court; Details of Cooperation |
| | | 30-8 | Seal | Seal | Sealed by other court |
| | | 30-9 | Unseal (As Filed) | Unseal (As Filed) | |
| ECF No. 31 | 9/12/2018 | 31-1 | Unseal | Unseal | |
| ECF No. 32 | 9/13/2018 | 32 | Unseal | Unseal | |
| ECF No. 39 | 11/26/2018 | 39-1 | Unseal | Unseal | |
| ECF No. 48 | 2/12/2020 | 48-1 | Unseal | Unseal | |
| ECF No. 67 | 5/19/2021 | 67 | Seal | Seal | Details of Cooperation |
| ECF No. 68 | 5/19/2021 | 68 | Unseal (As Filed) | Unseal (As Filed) | |
| ECF No. 70 | 2/16/2022 | 70 | Seal | Seal | Details of Cooperation |