UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
In The Matter Of,                                            :
                                                             :
**RICHARD E. LERNER**, an attorney admitted to    :    **ORDER**
practice before this Court,
                                                             :    16-MC-2636 (AMD)
                    Respondent.                              :
                                                             :
                                                             :
------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

The Committee on Grievances for the United States District Court for the Eastern District of New York (the "Committee") commenced this proceeding to determine whether the respondent committed ethical violations by participating in a scheme to publicize sealed documents from Felix Sater's 1998 criminal case. On August 13, 2018, the Committee found that the respondent violated the following New York Rules of Professional Conduct: Rule 1.16(b) (requiring withdrawal of representation), 3.3(f)(2) (discourteous conduct); Rule 8.4(a) (violations of the rules of professional conduct); Rule 8.4(d) (conduct prejudicial to the administration of justice); and Rule 8.4(h) (conduct reflecting adversely on lawyer's fitness.) (ECF No. 26 at 1, 25.)[1] The Committee concluded that the respondent should be suspended for six months. (*Id.* at 43.)

The Committee also found by clear and convincing evidence that the respondent violated Rule 3.4(a)(6) for attempting to obtain a settlement by threatening illegal conduct (*id.* at 37–41); however, the Committee deferred decision on whether the respondent violated this rule by

---

[1] The Committee found that the evidence did not support violations of Rules 3.1 (Frivolous Conduct) or 3.2 (Dilatory Tactics). (*Id.* at 29–31.)

contravening court orders and disclosing certain sealed materials until a criminal investigation by the U.S. Attorney's Office for the Northern District of New York (the "Northern District") concluded (*id.* at 25). That investigation is now over. For the following reasons, the Committee finds the respondent contravened court orders and improperly disclosed sealed materials in violation of Rule 3.4(a)(6).

## BACKGROUND

The facts of this long-running disciplinary matter are detailed in the Committee's 2018 decision,[2] familiarity with which is assumed, and will not be repeated except as necessary to explain the Committee's decision on the open matter.[3]

In December 1998, Felix Sater pled guilty before the Honorable I. Leo Glasser to an information charging him with violating the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"). (ECF No. 26 at 4.) As part of his plea, Sater entered into a cooperation agreement with the U.S. Attorney's Office for the Eastern District of New York (the "Eastern District"). (*Id.*) Sater assisted the government in its investigation for more than ten years. (*Id.*) Because of the sensitive nature of this investigation — and the risk to Sater because of his cooperation — Judge Glasser sealed the action and the entire docket. (*Id.*) Sater was sentenced in October 2009. (*Id.*)

---

[2] This matter is related to a separate disciplinary action, based on this same set of facts, in which Frederick Oberlander is the respondent. *See In re Oberlander*, No. 16-MC-2637 (the "Oberlander Action"). Oberlander was Richard Lerner's client and participated in disseminating the Sealed Materials from Sater's criminal case.

[3] The Committee has issued five opinions in this matter, including: (i) an August 13, 2018 order finding certain ethical violations (ECF No. 26); (ii) an October 24, 2018 order denying reconsideration (ECF No. 34); (iii) a November 20, 2020 order on the respondent's motion to unseal (ECF No. 52); (iv) a March 16, 2021 collateral order on the motion to unseal (ECF No. 62); and (v) a May 9, 2023 final order to unseal (ECF No. 72).

Sater joined Bayrock Group LLC, a real estate development firm, in 2002. (*Id.*) Joshua Bernstein worked at Bayrock as a financial analyst from November 2006 until he was fired September 2008. (*Id.* at 4–5) During this time, Bernstein maintained a hard drive with a copy of all Bayrock files; those files included emails and documents that Sater had sent to his attorney in connection with the sealed criminal proceedings before Judge Glasser: (i) Sater's cooperation agreement, (ii) a December 10, 1998 Department of Justice financial statement, (iii) two proffer agreements, and (iv) a June 28, 2004 presentence investigation report (collectively, the "Sealed Materials"). (*Id*. at 5.) Before he left the company, Bernstein gave Oberlander copies of the Sealed Materials. (*Id.*)

Oberlander sued Sater in the Southern District of New York for civil RICO violations in May 2010, alleging that Sater and his former business associates, through Bayrock, engaged in a RICO conspiracy involving tax evasion, money laundering, embezzlement, and fraud. (*Id.*) Oberlander attached portions of the Sealed Materials as exhibits to the complaint, including five pages from the presentence investigation report, the proffer agreements, and the cooperation agreement. (*Id.* at 5–6.) The complaint also referred to information from the Sealed Materials, including details about Sater's cooperation with the government. The case was assigned to the Honorable Naomi Reice Buchwald. (*Id.* at 6.) *See also Kriss et al v. BayRock Group LLC et al*, No. 10-CV-3959 (S.D.N.Y.).

On May 13, 2010, Judge Buchwald directed that "no further dissemination" of Oberlander's complaint or the sealed information appended thereto could be made without the Court's permission. (ECF No. 13-3 at 1.) Judge Buchwald also directed that Oberlander immediately inform any individuals who had received a copy of the complaint that they were not to disseminate the complaint or the Sealed Materials. (*Id.*) The next day, Judge Buchwald

sealed the complaint and directed Oberlander to file a redacted version of the original complaint. (ECF No. 13-4 at 2.)

On May 18, 2010, Sater moved for a preliminary injunction before Judge Glasser for the return of the Sealed Materials. (ECF No. 13-5.) Shortly thereafter, Oberlander hired the respondent to represent him in connection with the proceedings before Judge Glasser. (ECF No. 19 at 10.) Judge Glasser enjoined Oberlander and his clients from disseminating the Sealed Materials pending a hearing on the motion. (ECF No. 13-5 at 1–2.) At that hearing, on June 14, 2010, Judge Glasser emphasized that Sater's case had been under seal since its inception, that the Sealed Materials stated explicitly that they were sealed, and that Oberlander was aware that they were sealed. (ECF No. 13-9 at 5:12–6:19, 8:1-4.) Judge Glasser found that attaching the Sealed Materials to the Southern District complaint "was a disclosure of information which was reckless and significantly endangered the life of the person to whom that information related" (*id.* at 11:13-15); he adjourned the hearing until June 21, 2010 (*id.* at 15:6-11). The respondent agreed that "there's an awful lot of information in [Sater's] cooperation agreement which is very sensitive." (*Id.* at 8:10-13.)

One June 21, 2010, Judge Glasser issued a permanent injunction, restraining Oberlander from disseminating the Sealed Materials and directing him to return the Sealed Materials to the U.S. Attorney's Office. (ECF No. 13-10 at 88:2–4, 91:25–92:7.) Oberlander did not comply with that order. Accordingly, on July 20, 2010, Judge Glasser issued a further temporary restraining order against the dissemination of any copies of the presentence investigation report. (ECF No. 13-17 at 26:1–27:15.)[4]

---

[4] The respondent claimed falsely that Judge Glasser's earlier order applied only to the "original" copy of the PSR that Oberlander obtained from Bernstein. (ECF No. 13-17 at 15:2–16:7.)

4

In the ensuing months, Oberlander, represented by the respondent, filed multiple appeals in the Second Circuit, and still held on to copies of the Sealed Materials, as the respondent conceded at a February 14, 2011 argument before the Second Circuit. (ECF No. 14-3 at 24:1-3.) The Second Circuit enjoined Oberlander from publicly distributing or revealing in any way any of the contents of documents that were subject to sealing orders in the appellate proceedings or in any related proceedings before the Eastern and Southern Districts. (ECF No. 14-4 at 1.)

At the Second Circuit's direction, then-Chief Judge Raymond Dearie appointed the Honorable Brian M. Cogan as special master "with the limited mandate of implementing and overseeing compliance with our orders and the orders previously entered by Judge Glasser," and to "to ensure the parties' compliance with [the Second Circuit's] orders . . . and any that have been, or may hereafter be, entered by Judge Glasser." *Roe v. United States,* 428 F. App'x 60, 63–65 (2d Cir. 2011). At an April 1, 2011 hearing before Judge Cogan, the respondent revealed that Oberlander had still not destroyed or returned electronic and papers copies of the Sealed Materials. (ECF No. 14-9 at 11:5–12:5.) Judge Cogan issued oral and written orders directing Oberlander to destroy or return any remaining electronic or paper copies of the Sealed Materials without prejudice to his ability to seek the documents if the Second Circuit vacated any of the various sealing orders. (ECF No. 14-9 at 14:3-6; ECF No. 14-10 at 1.)

On May 13, 2011, Judge Cogan denied Oberlander's request to release the following information from the Sealed Materials: (1) Sater's identity in connection with the criminal proceedings; (2) the nature of the predicate acts underlying Sater's RICO conviction; and (3) Sater's sentence of probation and $25,000 fine. (ECF No. 14-21 at 3–4.) Judge Cogan observed that while information "available to the public" was not covered by the Second Circuit's injunction; Oberlander could not "extrapolat[e] from sealed documents . . . [which] could easily

5

be combined with and thereby tainted by [the respondent's] knowledge of non-public, sealed information." (*Id.* at 2.) Judge Cogan reviewed the specific information that the respondent wanted released and concluded that "[i]t seems obvious that [the respondent] is seeking to fatally undermine the purpose of the injunctions by publishing information that would render them ineffective." (*Id.* at 3–4.)

On June 29, 2011, the Second Circuit affirmed Judge Glasser's June 21, 2010 order forbidding the respondent from disseminating the presentence investigation report. (ECF No. 14-27 at 1–2, 6.)[5] The court warned Oberlander that "any further attempts to re-litigate the issues decided by this order, or other future filings of a frivolous nature, may result in sanctions . . . ." (*Id.* at 2, 6.)

On February 15, 2012, Judge Cogan ordered Oberlander and the respondent to show why they should not be held in contempt for violating the Second Circuit's February 14, 2011 order by revealing their identities in a February 5, 2012 New York Times article entitled "By Revealing Man's Past, Lawyer Tests Court Secrecy." (ECF No. 26 at 16–17.)[6] Oberlander moved to quash or vacate the order to show cause, and made numerous baseless and inflammatory statements about Judge Glasser, Judge Cogan, and the federal judiciary. (ECF No. 15-5.)[7] On February 27, 2012, Judge Cogan referred the matter to the U.S. Attorney's Office to determine whether to prosecute Oberlander and the respondent for criminal contempt. The U.S. Attorney's Office for the Eastern District recused itself and referred the matter to the U.S.

---

[5] The Second Circuit remanded in part to allow Judge Glasser to issue a "final determination" as to whether the respondent should be enjoined from disclosing the Sealed Materials outside of the presentence investigation report. (ECF No. 14-27 at 2.)

[6] On July 31, 2012, the Miami Herald published an article entitled "High court reveals secret deal of Trump developer's crimes;" the article named Sater and appeared to reference information that had been redacted from the publicly filed petition. (ECF No. 19 at 33–34.)

[7] These statements are detailed in the Court's August 13, 2018 Order. (*See* ECF No. 26 at 17–18.)

Attorney's Office for the Northern District. (ECF No. 15-7.) The Northern District has concluded that investigation without filing charges.[8]

On July 23, 2014, Sater's counsel filed a disciplinary complaint against the respondent. (ECF No. 1 at 1.) As noted above, on August 13, 2018, the Committee found that the respondent violated Rules 1.16(b), 3.3(f)(2), 8.4(a), 8.4(d), and 8.4(h) of the New York Rules of Professional conduct, and reserved judgment on the question of whether the respondent violated Rule 3.4(a)(6) for contravening court orders and disclosing the Sealed Materials. (ECF No. 26 at 43.

The Committee denied the respondent's motion for reconsideration on October 24, 2018, (ECF No. 34.) The respondent appealed this decision to the Second Circuit (ECF No. 31) and moved to stay the Committee's one-year sanction pending the appeal (ECF No. 37), which the Committee granted on November 7, 2018 (ECF No. 38).

**LEGAL STANDARD**

The Committee is authorized to discipline an attorney if, after giving the attorney notice and an opportunity to respond, it finds by clear and convincing evidence that "[i]n connection with activities with this court," the attorney "engaged in conduct violative of the New York State Rules of Professional Conduct as adopted from time to time by the Appellate Divisions of the State of New York." Local Rule 1.5(b)(5). Discipline "may consist of a letter of reprimand or admonition, censure, suspension, or an order striking the name of the attorney from the roll of attorneys to the bar of this Court." Local Rule 1.5(c)(1).

---

[8] That investigation was the subject of an appeal to the Second Circuit. *Oberlander v. United States (In re Grand Jury Proceedings)*, 971 F.3d 40 (2d Cir. 2020).

7

## DISCUSSION

Rule 3.4(a)(6) prohibits attorneys from "knowingly engag[ing] in . . . illegal conduct or conduct contrary to these Rules." The Committee charged the respondent with violating this rule "by knowingly engaging in illegal conduct by contravening court orders, disclosing the Sealed Materials, and attempting to obtain a settlement by threatening further illegal conduct." (ECF No. 3 at 6.)

The Committee finds that the respondent violated Rule 3.4(a)(6) when he knowingly assisted Oberlander in contravening court orders by failing to destroy or return the presentence investigation report and publicly distributing or revealing the contents of the Sealed Materials. First, as Judge Glasser pointed out, the materials were sealed in 1998, when Sater pled guilty. Moreover, Judge Glasser, Judge Cogan and the Second Circuit ordered the respondent and Oberlander to return or destroy the presentence investigation report and to refrain from publicizing the Sealed Materials:

- On June 21, 2010, Judge Glasser permanently enjoined Oberlander and the respondent from disseminating the PSR and its contents and ordered the respondent to return the PSR to the U.S. Attorney's Office, an order that he repeated on July 20, 2010, after it was revealed that Oberlander had disobeyed the June 21st order.

- On February 14, 2011 the Second Circuit enjoined Oberlander and the respondent from publicly distributing or revealing the contents of documents subject to sealing orders in the appellate proceedings or in any related proceedings before the EDNY and SDNY.

- On April 4 and April 11, 2011, Judge Cogan ordered Oberlander and the respondent to destroy or return any remaining electronic or paper copies of the PSR and other sealed documents.

- On May 13, 2011, Judge Cogan ordered that the respondent and Oberlander could not "extrapolate from sealed documents … [that which] could easily be combined with and thereby tainted by [the respondent's] knowledge of non-public sealed information."

8

- On June 29, 2011, the Second Circuit affirmed Judge Glasser's June 21, 2010 Permanent Injunction and admonished the respondent and Oberlander that "any further attempts to re-litigate the issues decided by this order, or other future filings of a frivolous nature, may result in sanctions . . . ."

The respondent and Oberlander repeatedly violated or threatened to violate these orders, as detailed in the Committee's August 13, 2018 Order:

- Oberlander ignored Judge Glasser's June, 2010 order and retained the Sealed Materials, which prompted Judge Glasser to repeat the order in July, 2010; Oberlander also defied this directive.

- In the October 18, 2010 demand letter to Sater and other SDNY defendants, Oberlander wrote, "At this time, plaintiffs will very favorably consider settling the entirety of all claims known and unknown for their actual damages of $35,000,000 . . . . It is the least amount which plaintiffs would be willing to accept for a quick settlement that avoids the dissemination."

- In the November 9, 2010 demand letter to Sater's counsel, Oberlander wrote, "If you wish Mr. Sater's activities lawfully kept quiet to any extent, stand still, stop filing motions and get out of the way so Plaintiffs can try to resolve the case before everything uploads to PACER and goes public."

- In that same letter, Oberlander wrote, "No power on this earth will much longer prevent as much lawful and legal worldwide dissemination of this Complaint and every document attached thereto or referenced therein as the public and press doing the dissemination think its value justifies."

- The respondent admitted at the February 14, 2011 Second Circuit oral argument that Oberlander still possessed electronic copies of the PSR.

- Oberlander had not yet destroyed or returned electronic and paper copies of the original PSR and other Sealed Materials when he and the respondent appeared before Judge Cogan in April 2011.

- On February 6, 2012, *The New York Times* published an article entitled "By Revealing Man's Past, Lawyer Tests Court Secrecy," that revealed both the respondent's and Oberlander's identities, in violation of the Second Circuit's order.

- Shortly after *The New York Times* article was released, several other articles surfaced, including one from *The Miami Herald* that published Sater's name and photograph, and discussed the contents of the Sealed Materials.

The record establishes convincingly that the respondent violated Rule 3.4(a)(6). He and Oberlander persisted in their refusal to return or destroy the presentence investigation report in contravention of multiple court orders, and disseminated the Sealed Materials. The respondent has expressed no remorse whatever for his conduct.

Accordingly, the Committee finds by clear and convincing evidence that the respondent violated Rule 3.4(a)(6). The Committee previously found that the respondent should be suspended for six months for the violations identified in its 2018 order; in view of the seriousness of the violation of Rule 3.4(a)(6), the Committee concludes that an additional year suspension is warranted, for a total of eighteen months.

**SO ORDERED.**

                                                  s/Ann M. Donnelly
                                                  _____
                                                  Hon. Ann M. Donnelly, U.S.D.J.
                                                  Chair of the Committee on Grievances
                                                  For the United States District Court
                                                  Eastern District of New York

Dated: Brooklyn, New York
         June 13, 2024