No. 10A797

IN THE

# Supreme Court of the United States

▶▶◀◀

RICHARD ROE, JANE DOE, JOHN DOE II,

*Petitioners,*

v.

UNITED STATES OF AMERICA,

*Respondent,*

v.

JOHN DOE,

*Respondent.*

---

*United States Court of Appeals for the Second Circuit
Docket Nos. 10-2905-cr, 11-479-cr, 11-1408-cr,
11-1411-cr, 11-1666-cr, 11-2425-cr*

---

**Motion by Petitioner "Richard Roe"**

**(1) To Order the Docketing and Public Availability of the Petition for Writ of Certiorari in Redacted Form as Provided Herewith**

**(2) To Caption the Case With the True Name of Richard Roe**

---

Richard E. Lerner
WILSON ELSER MOSKOWITZ EDELMAN
  & DICKER LLP
*Counsel of Record for Petitioner
"Richard Roe"*
150 East 42nd Street
New York, New York 10017
212-915-5419

June 1, 2012

## Table of Contents

|   |   | Page |
|---|---|---|
| Table of Authorities | | ii |
| I. | Statement of Relief Requested and Introduction | 1 |
| II. | By Order, Roe's Petition Was Filed as "Sealed" | 2 |
| III. | The Information Redacted | 2 |
| IV. | The Information not Redacted | 2 |
| V. | Roe Requests that the Caption be Changed to His True Name | 5 |
| VI. | Maximum Public Access to the Petition is Compelled to Further The Ends of Justice and the Expressly Mandated Intent of Congress | 6 |
| Conclusion | | 13 |

# Table of Authorities

**Cases**                                                                                                      **Page**

*Alemite Mfg Co. v. Staff,* 42 F.2d 832 ............................................................................................. 6

*Carroll v. President & Commissioners of Princess Anne,* 393 U.S. 175 (1968) ........................... 6

*Chase National Bank v. City of Norwalk,* 291 U.S. 431 (1934) ...................................................... 6

*Citizens United v. FEC,* 558 U.S. 50 (2010) .................................................................................. 10

*Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469 (1975) ................................................................... 3

*Dolan v. U.S.,* 130 S.Ct. 2533 ............................................................................................................ 8

*Ex Parte United States,* 242 U.S. 27 (1916) ............................................................................... 8, 11

*Florida Star v. BJF,* 491 U.S. 524 (1989) ........................................................................................ 3

*Gambale v. Deutsche Bank AG,* 377 F.3d 133 (2d Cir. 2004) ......................................................... 3

*Gentile v. State Bar of Nevada,* 501 U.S. 1030 (1991) .................................................................. 10

*Grosjean v. American Press,* 297 U.S. 233 (1936) ........................................................................ 11

*Matter of Arieda v. Arieda,* 74 A.D.3d 1432 ................................................................................... 5

*Matter of Heintz v. Heintz,* 28 A.D.3d 1154 (Div. 4th Dep't 2006) ................................................ 5

*Nixon v. Warner,* 435 U.S. 589 (1978) ............................................................................................. 6

*Press-Enterprise Co. v. Superior Court of Cal,* 478 U.S.1 (1986) ................................................. 6

*Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555 (1980) ....................................................... 6

*Smith v. Daily Mail Publishing Co.,* 443 U.S. 97 (1979) ................................................................ 3

*SmithKline Beecham Corp. v. Pentech Pharms., Inc.,* 261 F.Supp. 2d 1002 (N.D. Ill.2003) ........ 3

**Statutes**

*Mandatory Victims Restitution Act,* 18 U.S.C. § 3663A ................................................................ 7

*Crime Victims' Rights Act,* 18 U.S.C. §3771 ............................................................................... 7, 8

5067144v.1

**To:** The Honorable Justices of the Supreme Court of the United States

I, Richard E. Lerner, an attorney admitted to practice before this Court, state under penalty of perjury, pursuant 28 U.S.C. §1746, that the following statements are true, based on my knowledge and my review of the files maintained in my representation of petitioner Richard Roe.

**I.     Statement of Relief Requested and Introduction**

1.   Roe herewith submits a proposed redacted version of his petition for writ of certiorari to the Court of Appeals for the Second Circuit, respectfully requesting it be made publicly available by this Court. Additionally, Roe respectfully requests that the case be captioned in his true name.

2.   In sections II, III, and IV, Roe lists the redactions and explains why certain information has been redacted and other information has not. In section V, Roe requests the caption of the case be changed to his name. In section VI, in the context of the public right of access, Roe demonstrates that the public interest in this case is insurmountable, as there can be no compelling or countervailing interest mitigating against public availability of the redacted petition in light of the following:

3.   It would be extraordinary to seal any petition, especially where, as here, such sealing would be predicated upon nonexistent sealing orders of the district court. Without access to the petition, *amici* could not weigh in, though "[A]n *amicus curiae* brief that brings to the attention of the Court relevant matter not already brought to its attention by the parties may be of considerable help to the Court." Rule 37. And this is no ordinary petition. Doe's criminal case has been secret for 14 years. His past victims lost at least $40,000,000 to his first fraud; his current victims have lost some $500,000,000 to his second fraud – *viz*., his concealment of his RICO conviction. Attorney Roe has been enjoined from telling Doe's victims and from vindicating the rights of his clients. He has been ordered to stand mute while Doe continues these frauds. Without public access to this petition, Doe's victims cannot know that their rights were violated, cannot intervene, and cannot submit *amici* briefs. But with access, *amici*, victims, and

Case 1:16-mc-02636-AMD Document 1589 \*SEALED\* 02/28/25 09/06/17 Page 5 of 16 PageID #: 5784
Case 1:16-mc-02636-AMD Document 1589 \*SEALED\* Filed 02/28/25 Page 5 of 16 PageID #: 1802

2

the public will learn that there are secret criminal trials conducted in United States courts and that this Court has been asked to outlaw them. This Court cannot decide this issue in secrecy. **When courts of record fail to act on the record, this Court of last resort must**.

## II. By Order, Roe's Petition Was Filed as "Sealed"

4. On February 14, 2011, the Second Circuit ordered that any appeals Roe filed in this Court be denominated "Sealed." JA 1285. Roe filed his petition, so denominated, on May 10, 2012. The Court accepted it on May 14, 2012 and directed him to file this motion and redacted petition.

## III. The Information Redacted

5. In the appendix, these items, actually or allegedly under seal below, were redacted:

| | | |
|---|---|---|
| 5.1. | Second Circuit order of January 28, 2011 | App. 29a |
| 5.2. | Second Circuit order of February 4, 2011 | App. 30a |
| 5.3. | Second Circuit order of February 8, 2011 | App. 33a |
| 5.4. | Second Circuit order of February 9, 2011 | App. 35a |
| 5.5. | Second Circuit order of February 10, 2011 | App. 37a |
| 5.6. | ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ | App. 118a |
| 5.7. | Scheduling order of March 23, 2011, District Court, EDNY | App. 131a |

6. In the petition itself, information that could only be known or inferred from the preceding redacted documents, or from the PSR, criminal complaint, information, cooperation, and proffer agreements which are the subject res of the underlying case, has been redacted.

## IV. The Information not Redacted

7. *The orders appealed from are not sealed, and so were not redacted.* Immediately after issuing their summary orders of February 14, 2011 and June 29, 2011, the Second Circuit posted them on its website, where they have been publicly available for a year.[1] Both were published, reported within days, and have been publicly available on Westlaw, Lexis, Leagle,

---

[1] See http://www.ca2.uscourts.gov/opinions.htm, then click "Search" in "Opinions and Summary Orders" and enter docket number 10-2905.

Case 1:16-mc-02636-AMD Document 1589 *SEALED* Filed 02/28/25 Page 6 of 16 PageID #: 5785
Case 1:11-mc-00366-AMD Document 159 Filed 09/06/17 Page 3 of 10 PageID #: 1803

3

and vLex for a year.[2] They are on blogs such as the Second Circuit Public Defender's. And the press has them.

8. Because they are actually public, found even by Google search, and have been for so long, *a fortiori* given this Court's Rule 14(d)[3] requiring their indirect publication by citation in the petition, the orders cannot be considered sealed,[4] so were not redacted from the appendix. Since those orders and the information they contain are public, information in the petition which was derived therefrom was not redacted.

9. ***Information in documents obtained publicly was not redacted.*** That Doe pled guilty to racketeering charges for defrauding investors of $40,000,000 is a matter of public record, as the government issued a press release on ▇▇▇▇▇▇▇ so stating. App. 86-96. The Second Circuit noted in its June 29 order that the press release is publicly available to Roe to confirm Doe's conviction. That press release, available in ▇▇▇▇▇▇▇, is in the appendix, and has not been redacted. *Id.*

10. ***Information in documents not subject to sealing orders and obtained without court process was not redacted.*** The petition refers to a conversation Roe's client recorded

---

[2] For example, the February 14, 2011 order is at 2011 WL 494282 and 2011 U.S. App. LEXIS 2903. The June 29, 2011 order is at 2011 WL 2559016, and 2011 U.S. App. LEXIS 13335. The PACER public docket's links to those orders were recently disabled, but the Second Circuit reissued the June 29 order on December 12, 2011, in duplicate, as a mandate, and the link to that order is active, and has been for six months, so the June 29 order is in fact available on PACER.

[3] "A petition for a writ of certiorari shall contain…'**Citations of the official *and unofficial*** reports of the opinions and orders entered in the case by courts…'" [Emph. Add.]

[4] Once a document is released by a court to the public it may be freely disseminated. See *Florida Star v. BJF*, 491 U.S. 524 (1989); *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975); *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97 (1979). Indeed, Second Circuit precedent, *Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004), prohibits sealing a document once it has been disseminated, especially by publication on Westlaw and Lexis:

> But however confidential it [a settlement amount] may have been beforehand, subsequent to publication it was confidential no longer. *It now resides on the highly accessible databases of Westlaw and Lexis and has apparently been disseminated prominently elsewhere.* We simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again. The genie is out of the bottle ... we have not the means to put the genie back. [Footnotes omitted; Emph. Add.]

See also *SmithKline Beecham Corp. v. Pentech Pharms., Inc.*, 261 F.Supp.2d 1002, 1008 (N.D.Ill.2003) (Posner, J., sitting by designation) (refusing to seal portions of an agreement containing confidential information already disclosed in the court's opinion.)

Case 1:16-mc-02636-AMD Document 589 *SEALED* Filed 02/28/25 Page 7 of 16 PageID #: 5786
Case 1:16-mc-02636-AMD Document 589 Filed 02/28/25 Page 7 of 16 PageID #: 1804

4

lawfully on which senior officers of Doe's real estate firm admit that Doe skimmed millions from the firm as part of a money laundering and tax evasion scheme. That recording is not sealed and was obtained without court process. Thus, though the PSR has information that Doe was defrauding the government of taxes, such information is not exclusive to the PSR, so it has not been redacted.

11. ***Information evidencing judicial or prosecutorial misconduct was not redacted.*** Information necessary to understand the petition and the argument that the PSR contains information of public concern – *viz.* evidence of prosecutorial and judicial misconduct – has not been redacted. For example, ███████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████

12. Neither the government nor Doe can have a cognizable interest requiring redaction of references to the February 10, 2011 *sua sponte* Second Circuit order enjoining Roe from telling anyone, expressly including Congress, of what he deems judicial and prosecutorial misconduct, reference to that order has not been redacted. Because the fact that a *United States court has for the first time in our history issued a hyper-injunction*[5] *criminalizing a citizen's*

---

[5] Orders that purport to gag one from even telling another that the gag order has been imposed have been the subject of a great deal of debate in the Parliament of the United Kingdom. Such orders are called "super-injunctions." Orders which purport to gag one from even reporting to Parliament that such an order has been issued have been called "hyper-injunctions." See "'Hyper-Injunction' Stops You Talking to MP," The Telegraph, March 21, 2011, http://www.telegraph.co.uk/news/uknews/law-and-order/8394566/Hyper-injunction-stops-you-talking-to-MP.html;

*reporting of official misconduct is of unprecedented constitutional gravity*, this has not been redacted.

13. Never in American history, before this order of has a United States court threatened an American citizen with criminal prosecution for reporting to Congress – the sole constitutional check and balance over the courts – evidence of judicial misconduct, or anything else. There has apparently been only one other hyper-injunction in modern times,[6] and it was soundly condemned by Parliament when it came to light.[7]

## V. Roe Requests that the Caption be Changed to His True Name.

14. By the Second Circuit's disclosure in its public June 29, 2011 decision that , assigned to Roe's identity is now a public fact, , a search of finds figured it out and reported this case on , identifying Roe by name. App. 139.

15. A man's reputation is his most precious possession, yet Roe has been deprived of his name, by the Second Circuit's treatment of him as anonymous. This is repellent to him, as the Second Circuit's decision rebukes "Roe" for "flouting" the district court's "sealing" orders, even though:

---

"Got Secrets You Want to Keep? Get a Hyper-Injunction," The Guardian, http://www.guardian.co.uk/law/2011/mar/21/secrets-to-keep-hyper-injunction.

[6] That hyper-injunction involved a whistleblower's report that the water tanks of a passenger ship regularly traveling in American waters had been painted with toxic chemicals, which report resulted in the shipping company's obtaining a hyper-injunction prohibiting the whistleblower from telling anyone, **even Parliament**, of the case, the injunction, or the health risk. *See* references in fn. 5.

[7] No surprise, given that the last time an English judge enjoined a citizen, or rather a *subject*, from petitioning the legislature for redress, he and the Attorney General were impeached. Chief Judge North had issued an opinion approving Charles II's "Proclamation against Tumultuous Petitioning," assisting the Attorney General in drafting it. As a result, Parliament Resolved: "That the Evidence this day given to this house against sir Francis North, Chief-Justice of the Common-Please, is sufficient ground for this house to proceed upon an Impeachment against him for high Crimes and Misdemeanors." November 24, 1680. From Parliament's subsequent response to this, its enactment of the English Bill of Rights in 1683, we trace our constitutionally codified First Amendment right to petition.

16. The district court acknowledged on the record that **no sealing order was ever issued in the John Doe case**. (JA166-167, 697). Apparently, he just told a clerk to seal the case, without conducting a hearing and making the requisite record findings, capable of appellate review, prior to sealing the docket. *See Press-Enterprise Co. v. Superior Court of Cal*, 478 U.S. 1 (1986), and, generally, the *Richmond*[8] line of cases.

17. No sealing order could have bound Roe, who was not a party or privy to *U.S. v. Doe* when any "oral" or "implicit" sealing order might have been issued. *Chase National Bank v. City of Norwalk*, 291 U.S. 431 (1934), citing *Alemite Mfg Co. v. Staff*, 42 F.2d 832. No order operates *contra mundum*. So even if an order had said, "No one who comes into possession of documents filed in this court may speak of them," it would have been void as to Roe, *pro tanto brutum fulmen*. *A fortiori*, as a prior restraint, it would be unenforceable as to Roe for failure to comply with First Amendment due process requirements of an adversarial hearing. *Carroll v. President & Commissioners of Princess Anne*, 393 U.S. 175 (1968).

18. Roe asks recaptioning, that he may prove the rightness of his cause in his true name.

**VI. Maximum Public Access to the Petition is Compelled to Further The Ends of Justice and the Expressly Mandated Intent of Congress**

19. The public enjoys presumptive rights of access to judicial dockets, records, and proceedings. The petition for writ of certiorari is a record as to which there is such a presumptive right of access. As such it should fall within the second of these two classes of documents (and in any event must fall within the first):[9]

20. *A presumptive common-law right* of access to all dockets, records, and proceedings (with exceptions such as grand jury proceedings), which may be overcome only upon a sufficient evidentiary showing of a higher **countervailing** interest.

---

[8] *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980).
[9] See *Press-Enterprise v. Superior Court*, 478 U.S. 1 (1986) (experience and logic pre-test to find First Amendment right of access); *Nixon v. Warner*, 435 U.S. 589 (1978) (common-law right of access); and the *Richmond* cases.

21. ***A presumptive First Amendment right*** of access to that subset of the above which experience and logic show are subject to such a right, which may be overcome only upon a sufficient evidentiary showing of a higher **compelling** interest.

22. Here, it matters not which category the petition is deemed to fall within, as the public import of the issues in this case is **insurmountable**, even before considering the lack of reviewable record findings below, and the lack of evidence of the existence of a countervailing, let alone compelling, interest that would outweigh the right of access. For example, no evidence was proffered, let alone subject to cross-examination, as to a risk to Doe's safety. (And it is hard to see how there could be any danger when his conviction and cooperation have been publicly known for a decade. See App. 87 at fn.2, and App. 102). The district court **said** there was risk, apparently fact-finding by judicial fiat, not evidence, and the Second Circuit found no error in that bald statement. This Court cannot validate such egregious repudiation of its *Richmond* cases by depriving the public of access.

23. But this Court is obligated to another constituency besides the public: Concealment of an entire criminal case, especially pursuant to non-existent sealing orders, violates Congressionally mandated crime victims' rights, which did not even exist until after the Reagan-era *Richmond* cases.

24. For example, the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. §3771, effective in 2004, affords victims rights, to notice of, and to attend, public court proceedings involving the crime; to confer with the Government attorney; and importantly, to timely restitution as provided by law, to petition the district court to enforce those rights, and to mandamus the courts of appeals if necessary.

25. In synergy with the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. §3663A, effective in 1996 – which requires the court award full restitution and requires victims be notified in advance of sentencing of proposed restitution and allowed to participate in its

determination – these laws comprise a regime of rights rendered worthless in cases hidden from the public and the victims.

26. Here, the government and district court took advantage of the concealment of Doe's case, secretly awarding an illegal sentence, failing to order restitution, though Doe's cooperation agreement acknowledged he would be sentenced to a mandatory restitution order. The district court's failure to follow mandatory sentencing law was illegal. *Ex Parte United States*, 242 U.S. 27 (1916). *Dolan v. U.S.*, 130 S.Ct. 2533 (2010), confirms that the mandate of the MVRA – *viz.*, that the court **shall** order restitution notwithstanding any other provision of law – means what it says.

27. Petitioner most respectfully avers that the CVRA applies to this Court, and therefore that this Court has a statutory duty pursuant to 18 U.S.C. §3771 to ensure that Doe's victims are given notice of this proceeding. Hence, by virtue of 18 U.S.C. § 3771, there must be, at the very least, public docketing of the redacted petition. We submit, however, that this Court may find that it has a further statutory duty to ensure that Doe's victims are informed of this petition by the DOJ.[10]

28. Nor does this end with notifying victims. In response to the press coverage this case is receiving, a member of New York's congressional delegation wrote to Roe expressing concern for what appear to be violations of his and his clients' First Amendment rights, and requesting that Roe provide, by personal visit as well as documentation, all information on the matter as would not violate court orders. And given the recent experience of Professor (and former Federal

---

[10] Compare 18 U.S.C. § 3771 (a) subsections (2) and (4). Under subsection (2), Doe's victims have a right to notice of *any* public court proceeding. Presumably, the instant petition for a writ of certiorari is a court proceeding. Under subsection (4), in contrast, Doe's victims had the right to be heard at any public proceeding in the "district court" involving release, plea, sentencing or parole. We submit that under subsection (2), this Court may be statutorily required, pursuant to section (b) (1), to ensure that Doe's victims are notified of this proceeding. It states, "In any court proceeding involving an offense against a crime victim, the court *shall* ensure that the crime victim is afforded the rights described in subsection (a)." (Emph. Add.) Subsection (c) makes it the obligation of the DOJ to use its best efforts to notify Doe's victims. We submit that, in order to "ensure" that Doe's victims are informed of this proceeding, this Court may be required to direct the DOJ to notify Doe's victims of this proceeding.

District Judge) Paul Cassell, there seems little point in seeking "permission" from the Second Circuit to tell Congress the truth.[11] Professor Cassell was a co-author of the appeal brief and reply brief submitted in this matter to the Second Circuit – hence, has knowledge of the facts he wished to tell Congress about this case.[12]

29. Moreover, the sealing and prior restraint orders on Roe and his clients infringe on their rights of assembly and petition, not only through their private lawsuit(s), which have been frozen, but by assembly, by collaboration with organizations and individuals who would be concerned about the issues in this case, and who may well wish to submit to this Court amicus briefs in Roe's support. For example:

30. **Victims' rights organizations.** The word "mandatory" in the *Mandatory* Victims Restitution Act means just that. Yet Doe was given only probation, and a $25,000 fine. Why?

31. **Investment protection organizations.** Organizations committed to protection of investors should be deeply concerned that federal courts would maintain the docket of a RICO stock fraudfeasor for 14 years, emboldening him, to defraud investors, as he has, by the concealment of his conviction, a *per se* material fact. Roe's RICO complaint shows that Doe committed hundreds of millions of dollars of this concealment fraud, with rippling insolvencies and bankruptcies in the wake, leaving possibly a half billion dollars of loss. Yet in none of the courts where these issues are being litigated is it even known that at the center of it all is a convicted RICO stock fraudfeasor.

---

[11] On April 26, 2012, Professor Cassell testified before Congress on a proposed Victims Rights Amendment. In advance of testifying, Professor Cassell submitted prepared remarks about the case at bar to the United States Attorney for the Eastern District of New York for comment. What he received in reply was a warning that there were sealing orders, that Professor Cassell should take care not to violate them, and that he should get pre-clearance of his remarks from Judge Cogan of the Eastern District of New York, to whom the Second Circuit had delegated authority in its February 14th order. Professor Cassell accordingly asked Judge Cogan if his proposed remarks would violate any orders. Judge Cogan replied that he did not believe he had the authority to issue an opinion on the matter. This was detailed by Professor Cassell in a letter to Congress. The letter is most readily available on the website of the University of Utah, School of Law, where Professor Cassell teaches victim rights law. See http://today.law.utah.edu/wp-content/uploads/2012/04/cassell-transmit-supplemental-letter1.pdf

[12] See *id.*

32. **Bar associations, civil rights, and free speech advocates.** Had the employee who gave Roe the documents showing Doe's secret criminal case given them instead to *The New York Times*, Roe suspects the lower courts would have immediately recognized no prior restrain could issue. This is more than suspicion: the transcript of February 14, 2011 oral argument in the Second Circuit shows Judge Pooler opining that Roe did not have the same rights to disseminate information about a criminal proceeding as did the organized media, and shows Judge Cabranes asking the government for assurance before issuing orders enjoining Roe's speech that he wouldn't also be enjoining the speech of anyone from organized media.

33. Apparently relying on the fact that Roe is an attorney, the district court, then the circuit court, said he had an obligation to not use the documents. Bar associations should be interested in arguing that attorneys' First Amendment rights are equal to that of the media and other citizens.[13] And it would be interesting to hear their views on whether Roe, an officer of the court, was obligated to use this information on behalf of his clients, and whether – consistent with his duties to his clients – he had an obligation to report the judicial and prosecutorial conduct to appropriate ethics panels.

34. Bluntly, the lower courts in this case have held that the First Amendment analysis this Court has applied to leaked "secret" documents that originated in the executive and legislative branches should be different from the analysis applied to leaked "secret" documents that originated in the judicial branch. They have held that, though the Pentagon Papers could not be gagged – notwithstanding that they concerned military secrets, and were arguably stolen – the documents at issue here **could** be gagged, without First Amendment due process, regardless of

---

[13] See *Citizens United v. FEC*, 558 U.S. 50 (2010). Roe acknowledges the special case where the **extra-judicial** speech of an attorney to a party in an ongoing **criminal** jury trial might influence the jury pool. *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991). However, in this case, Roe was not counsel of record for any party to *U.S. v. Doe* action, nor was there any possibility that his or his clients' speech could have interfered with Doe's case, as he had pled guilty and been sentenced long before Roe learned of his secret case and illegal sentence. In any event, prohibiting Roe from suing on account of the fraud in concealing Doe's conviction is prohibiting **judicial speech**.

their content, simply because they originated in the courts and had been sealed, in this case with orders written in invisible ink.[14]

35. **Judicial oversight organizations.** Such organizations may be concerned that there was no one protecting the public's right to know what transpired during Doe's sentencing, that because of his cooperation, Doe was allowed to be sentenced under a pseudonym, ensuring he would have a virtually clean criminal record, and was allowed not to pay restitution. Because all this was done in secret, there was no one in that courtroom looking out for the interests of the public or Doe's victims, though 18 U.S.C. § 3771(a) (2) required the district judge to do so.

36. **Advocates of government transparency.** "Everything secret degenerates, even the administration of justice ...." Lord Acton. The petition shows that some three decades ago the Second Circuit embarked on this path of secret criminal cases, a path which has degenerated to the point that an attorney, Roe, would be threatened with charges of criminal contempt if he were to tell his Congressman, or anyone else, that a federal judge failed to impose upon a RICO fraudfeasor the sentence mandated by Congress.[15]

---

[14] The information concerned will cast members of the judiciary in a poor light, but it is core speech, and Roe trusts this Court will hold that an attorney has the same right to criticize a judge before whom he is not appearing as any public official. In *Grosjean v. American Press*, 297 U.S. 233 (1936), this Court held that "[f]or more than a century prior to the adoption of the [First Amendment] – and, indeed, for many years thereafter – history discloses a persistent effort on the part of the British government to prevent or abridge the free expression of any opinion which seemed to criticize or exhibit in an unfavorable light, however truly, *the agencies and operations of the government*." 297 U.S. at 245 [Emph. Add.). "Judge Cooley has laid down the test to be applied – 'The evils to be prevented were not the censorship of the press merely, but any action of the government by means of which it might prevent such free and general discussion of public matters as seems absolutely essential to prepare the people for an intelligent exercise of their rights as citizens.' 2 Cooley's Constitutional Limitations, 8th ed., p. 886." 297 U.S. 249-250.
The gag orders imposed upon Roe prevent the discussion in public of what he believes, and what has been briefly shown in the petition for a writ of certiorari to be, the maladministration of justice. It is also true that Roe has presented his arguments to the District Court and Circuit Court with brutal candor; but an attorney's right to speak freely does not end at the courthouse steps. Nor may an attorney be punished for criticizing a judge, or "undermining" a judge's authority with such harsh criticism, particularly where such criticism is founded in fact and in law.

[15] *Ex Parte United States*, 242 U.S. 27 (1916), held it unlawful, the usurpation of the powers of the executive branch and the legislative branch, for a judge to not impose the sentence mandated by duly enacted legislation.

37. **The Media.** Roe has been contacted by members of the media and the public, who have deduced his true identity, based upon the information contained in the Second Circuit's June 29, 2011 decision.[16] However, Roe is unable to speak freely with them, and thus the public remains ignorant of the fact that a convicted RICO fraudfeasor has continued to defraud investors, at least by his concealment. Based upon the information contained in the June 29, 2011 decision, and other publicly available information, *The Miami Herald* and others have moved to unseal John Doe's entire docket. Their motion was given a separate Eastern District docket number, 12-CR-150, the captioned, "In the Matter of the Motion to Unseal Docket No. 98-1101." The Miami Herald then moved before E.D.N.Y. Chief Judge Carol Amon to unseal Doe's case, using Doe's real name, which it had deduced from public information. That motion was scheduled to be heard on April 20, 2012, but has been adjourned *sine die*. Clearly, this is a matter of great public concern. *The New York Times* also published an article about the case on February 6, 2012, entitled "By Revealing a Man's Past, Lawyer Tests Court Secrecy." The article identified Richard Roe by his true name and stated that *The New York Times* had determined Doe's identity from public documents but was withholding it for the time being.

38. In short, everyone knows what went on here, and who Doe is, and that this has been kept in such secrecy for so long is shameful. The secrecy must end, we submit, with the public docketing of the redacted petition.

---

[16] The June 29, 2011 decision of the Second Circuit identifies Roe as the attorney who filed a civil "RICO" case on "May 10, 2010" that was assigned to Judge Naomi Reice "Buchwald." If one puts those three search terms into Google or Pacer, one is led straightaway to the docket of the civil RICO case filed by Roe in the Southern District of New York, where the docket identifies Roe by his true name. Additionally, Doe's own counsel piblicy filed documents with Judge Buchwald that identified "Richard Roe" as the plaintiffs' attorney therein.

13

## Conclusion

WHEREFORE, it is respectfully requested that the Court publicly docket the redacted petition, and change the caption of the case to identify "Richard Roe" by his true name.

Dated:  New York, New York
        June 1, 2012

> Respectfully submitted,
>
> WILSON, ELSER, MOSKOWITZ,
>   EDELMAN & DICKER LLP
>
> By: _____
>     Richard E. Lerner
> 150 East 42nd Street
> New York, New York 10017
> (212) 915-5419